ACCEPTED
07-15-00104-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
8/25/2015 3:03:14 PM
Vivian Long, Clerk

## NO. 07-15-00104-CR

## IN THE COURT OF APPEALS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
8/25/2015 3:03:14 PM

VIVIAN LONG
CLERK

## FOR THE SEVENTH JUDICIAL DISTRICT

## AMARILLO, TEXAS

### DRAKE JORDAN FINCH
### APPELLANT
### VS.

### THE STATE OF TEXAS
### APPELLEE

**APPEAL FROM CAUSE NUMBER** CR-14E-072 FROM THE 222ND
JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY,
THE HONORABLE ROLAND SAUL PRESIDING

### BRIEF FOR THE STATE

*THE STATE REQUESTS ORAL ARGUMENT IF APPELLANT'S
REQUEST IS GRANTED*

**Jim English**
**Criminal District Attorney**
**State Bar No. 06625280**
**235 E. Third, Room 401**
**Hereford, Texas    79045**
**Telephone: (806) 364-3700**
**Facsimile:   (806) 363-7039**
**Email: JEnglish@deafsmithcounty.gov**

No. 07-15-00104-CR

IN THE

COURT OF APPEALS

SEVENTH JUDICIAL DISTRICT

AMARILLO, TEXAS

---

DRAKE JORDAN FINCH

APPELLANT,

V.

THE STATE OF TEXAS

APPELLEE

---

BRIEF FOR STATE

**TO THE HONORABLE SEVENTH COURT OF APPEALS:**

The State of Texas, the prosecuting authority in Cause No. CR-14E-072 in the 222nd District Court of Deaf Smith County, Texas, the Honorable Roland Saul, Judge presiding, respectfully submits this Brief in reply to the Brief of Appellant, appealing the Judgment of conviction and sentence. Pursuant to Rule 3.2 of the Texas Rules of Appellate Procedure, the parties will be referred to as Appellant and State. Citation to the Clerk's Record will be "CR" and a page number, while the citation to the Reporter's Record will be "RR" and a volume page and number.

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS.................................................................................ii

INDEX OF AUTHORITIES.....................................................................iii, iv

SUMMARY OF THE ARGUMENT.............................................................v

RESPONSE TO APPELLANT'S POINT OF ERROR NUMBER ONE.......1

RESPONSE TO APPELLANT'S POINT OF ERROR NUMBER TWO......12

CONCLUSION AND PRAYER....................................................................13

CERTIFICATE OF COMPLIANCE............................................................14

CERTIFICATE OF SERVICE....................................................................14

# INDEX OF AUTHORITIES

**PAGE**

Almanza v. State, 686 S.W. 2d 157, 171 (Tex. Crim. App. 1984)...................8

Brooks v. State, 382 S.W. 3d 601 (Tex. App. - Amarillo 2012, pet. ref'd.).....2, 6, 7

Cook v. State, 902 S.W. 2d 471 (Tex. Crim. App. 1995)................................2

Duron v. State, 956 S.W. 2d 547, 550-551 (Tex. Crim. App. 1997)...............2

Harrison v. State, 76 S.W. 3d 537, 539 (Tex. App.-Corpus Christi 2002, no pet.)....................................................................................................2

Hutch v. State, 922 S.W. 2d 166, 171 (Tex. Crim. App. 1996).......................8

Kirkpatrick v. State, 279 S.W. 3d 324, 328 (Tex. Crim. App. 2009)...............2

Middleton v. State, 125 S.W. 3d 450, 453 (Tex. Crim. App. 2003)................8

Ngo v. State, 175 S.W. 3d 738, 743, 744 (Tex. Crim. App. 2005)..................8

Patterson v. State, 769 S.W. 2d 938, 941(Tex. Crim. App. 1989)...................3, 4

State v. Moff, 154 S.W. 3d 599, 601(Tex. Crim. App. 2004).........................2

Taylor v. State, 332 S.W. 3d 483, 490 (Tex. Crim. App. 2011).......................9

Teal v. State, 230 S.W. 3d 172, 179 (Tex. Crim. App. 2007).........................2

**STATUTES**

TEX. CODE CRIM. PROC. ANN. Art. 1.14 (b)...............................................1, 3

TEX. CODE CRIM. PROC. ANN. Art. 21.11....................................................3

TEX. CODE CRIM. PROC. ANN. Art. 21.19....................................................3

TEX. CODE CRIM. PROC. ANN. Art. 36.19....................................................8

TEX. PENAL CODE ANN. Sec. 22.02 (b)......................................................4, 7

## SUMMARY OF THE ARGUMENT

The State submits the indictment sufficiently charged Appellant with the first-degree felony offense of Aggravated Assault with a Deadly Weapon on a Household Member, and his sentence of forty (40) years confinement was within the range of punishment. The State further submits Appellant has failed to preserve error by failing to object to the indictment prior to trial.

In the alternative, if this Court finds jury charge error, Appellant has not suffered egregious harm because it is clear that any actual harm suffered by Appellant was minimal after a thorough review of the evidence, the argument of counsel, the jury charge and the entire record of the trial.

# ARGUMENT AND AUTHORITIES

**State's Reply to Point of Error One**

**Because the indictment charged an aggravated assault with a deadly weapon on a household member and/or Appellant failed to object before the date of trial to the alleged defect in the indictment, the judgment of aggravated assault with a deadly weapon on a household member is not void, and the sentence is not illegal.**

Appellant first contends the judgment convicting him of first-degree felony aggravated assault is void because the indictment only charged him with a second-degree felony aggravated assault. Under Appellant's analysis, it follows that the trial court's charge authorized punishment outside the range of punishment for the offense charged and is, therefore, void.

The State asserts that the indictment provided the trial court and Appellant notice with sufficient clarity to charge the first-degree felony offense of aggravated assault with a deadly weapon on a household member. Moreover, if Appellant was confused about the charged offense, he had a duty to object before the date of trial

1

for purposes of article 1.14(b).[1]  Since Appellant did not do so, he has forfeited any right to object to any alleged indictment defects on appeal.

*Underlying Law and Analysis*

Whether an indictment is sufficient is a question of law that appellate courts review de novo.[2]  To constitute an indictment, the Texas Constitution requires that an indictment allege that 1) a person, 2) committed an offense.[3]   The proper test to determine if a charging instrument alleges "an offense" is whether the allegations are clear enough that one can identify the offense alleged.[4]  Therefore, so long as the charging instrument provides sufficient clarity and specificity to identify the penal statute under which the State intends to prosecute, it is sufficient  to  confer  jurisdiction and to serve as the basis for a valid conviction in the absence of a motion to quash.[5] An indictment must contain the elements of the offense charged, fairly inform the defendant of charges he must prepare to meet, and enable the defendant to plead acquittal or conviction in bar to

---

[1] TEX. CODE CRIM. PROC. ANN. Art. 1.14 (b).

[2] State v. Moff, 154 S.W. 3d 599, 601(Tex. Crim. App. 2004).

[3] Cook v. State, 902 S.W. 2d 471, (Tex. Crim. App. 1995);
Teal v. State, 230 S.W. 3d 172, 179 (Tex. Crim. App. 2007).

[4] Teal at 180.

[5] Duron v. State, 956 S.W. 2d 547, 550-551 (Tex. Crim. App. 1997).

2

future prosecution for the same offense.[6] Courts must now look to an indictment as a whole, not just to its specific formal requisites requisites.[7]

Article 21.11 of the Texas Code of Criminal Procedure provides:

"An indictment shall be deemed sufficient which charges commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant; and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment;..."[8]

Article 21.19 provides:

An indictment shall not be held insufficient, nor shall a trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant.[9]

Article 1.14(b) provides, in pertinent part:

"If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in

---

[6] Harrison v. State, 76 S.W. 3d 537, 539 (Tex. App.-Corpus Christi 2002, no pet.); Brooks v. State, 382 S.W. 3d 601, 605 (Tex. App. - Amarillo, 2012, pet. ref'd.).

[7] Kirkpatrick v. State, 279 S.W. 3d 324, 328 (Tex. Crim. App. 2009).

[8] TEX. CODE CRIM. PROC. ANN. Art. 21.11.

[9] TEX. CODE CRIM. PROC. ANN Art. 21.19.

any other postconviction proceeding."[10] The Court of Criminal Appeals has explained the difference between what is meant by the "use of a deadly weapon" and the "exhibition of a deadly weapon."[11] The Court went on to explain that one can "use" a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it.[12]

Aggravated Assault is a second-degree felony unless the indictment provides a defendant with sufficient notice that section 22.02 (b) of the Texas Penal Code applies, and the evidence proves beyond a reasonable doubt that the allegations are true. Under these circumstances, a defendant can be convicted of a first-degree felony aggravated assault.

Appellant was indicted on May 28, 2014, for aggravated assault with a deadly weapon on a household member, the relevant portions of which included the following:

> "did then and there intentionally, knowingly or recklessly cause serious bodily injury to Ruth Simms by striking her or by causing her head to strike an object or by shaking her, and the defendant did then and there use or exhibit a deadly weapon, to-wit: his hand or an unknown object, during the commission of said assault, and the said Ruth Simms was a member of the defendant's household, as described by Section 71.005 of the Texas Family Code..."[13]

---

[10] TEX. CODE CRIM. PROC. ANN Art. 1.14(b).

[11] Patterson v. State, 769 S.W. 2d 938, 941 (Tex. Crim. App. 1989).

[12] Id. at 941.

[13] CR, 6,9.

In the present case, it is undeniable that the elements of section 22.02 (b) (1) were included in the indictment. By simply alleging the victim was a household member in the context of an aggravated assault indictment, the State submits Appellant was given sufficient notice that he was being charged with a first-degree felony aggravated assault. Alleging the victim was a household member in a second-degree felony aggravated assault case serves no purpose since it is unnecessary to obtain a conviction and does not enhance the punishment range. On the contrary, it is essential when charging a defendant with a first-degree felony aggravated assault. It is apparent that by alleging in the indictment the use of a deadly weapon and an assault which caused serious bodily injury on a household member, the State intended to charge the first-degree felony of aggravated assault with a deadly weapon on a household member.

After reviewing the record, the following observations can be made: 1) during voir dire, the State explained, without objection from Appellant, that Appellant was charged with the first-degree felony offense of aggravated assault with a punishment range of five to ninety-nine years or life and an optional fine not to exceed $10,000;[14] 2) during opening statements, the State outlined its intent to prove Appellant beat

---

[14] RR, Vol. 3, 24-25.

5

the victim causing her to suffer serious bodily injury and asked the jury to find Appellant guilty of the charged offense;[15] 3) the court's charge outlined the elements of the first-degree felony offense of aggravated assault with a deadly weapon on a household member and two lesser included second-degree felony offenses of aggravated assault;[16] 4) Appellant did not object to the indictment or the jury charge on guilt or punishment; and 5) Appellant did not object to the punishment verdict.

When the indictment is read in context and in consideration of the subject matter before the trial court, it is clear Appellant knew he was charged with the first-degree felony of aggravated assault with a deadly weapon on a household member.[17] Nothing in the record indicates that Appellant was misled or confused or that Appellant lacked notice of the allegations against him. If Appellant had any question about what charge he had been asked to defend against or the range of punishment for said offense, Appellant had ample opportunity, and, in fact, a duty to file an objection with the court. In the instant case, Appellant never raised an objection to the indictment or otherwise brought to the attention of the trial court at any time any alleged defect.

---

[15] RR, Vol. 4, 12-18.

[16] CR, 65-66.

[17] Brooks v. State, 382 S.W. 3d 601, 606 (Tex. App.-Amarillo 2012, pet. ref'd.).

Appellant focuses on the word "exhibit" in the indictment to conclude that the State only charged him with a second-degree felony aggravated assault. Appellant conveniently overlooks the language in the indictment that he "used" a deadly weapon to cause serious bodily injury to a household member. Appellant's analysis is faulty because he fails to read the entire indictment in context. Instead, Appellant reads the indictment in a hypertechnical manner which this Court has previously condemned.[18]  Appellant attempts to avoid harmful case precedent by claiming there was no defect of form or substance in the indictment all the while arguing a substantive defect in the indictment failed to charge a first-degree felony offense of aggravated assault under article 22.02 (b) (1) of the Texas Penal Code.[19]  Appellant's issue on appeal is an attempt to avoid the results of failing to object at trial or file a motion to quash. Having failed to properly object, Appellant has waived any such objection and failed to preserve his issue for appeal.

Under point of error one, Appellant alludes to a defect in the court's charge on guilt as contributing to the alleged illegal sentence he received.[20] The State submits that since the indictment sufficiently charged Appellant with a first-degree

---

[18] Brooks v. State, 382 S.W. 3d 601, 607 (Tex. App. - Amarillo 2012, pet. ref'd.).

[19] Appellant's brief at 14-15.

[20] Appellant's brief at 17-18.

7

aggravated assault and Appellant forfeited his right to object to the charging language in the indictment, Appellant has also forfeited his right to complain about the jury charge which tracked the language in the indictment. However, if this Court believes there was jury charge error, the State submits there was no egregious harm to Appellant.

*Egregious Error Analysis*

An appellate court's first duty in evaluating a jury charge issue is to determine whether error exists.[21] If error is found, the appellate court must determine whether the error caused sufficient harm to require reversal.[22] The degree of harm necessary for reversal depends on whether the Appellant preserved the error by objection.[23]

If no objection was made at trial, reversal is proper only if the error is so egregious and created such harm that it might be fairly said the defendant did not have a fair and impartial trial.[24] Egregious harm is a difficult standard to prove and such determination must be done on a case by case basis.[25] The actual degree of

---

[21] Ngo v. State, 175 S.W. 3d 738-743-744 (Tex. Crim. App. 2005).

[22] Middleton v. State, 125 S.W. 3d 450, 453 (Tex. Crim. App. 2003).

[23] TEX. CODE CRIM. PROC. ANN Art. 36.19; Ngo, 175 S.W. 3d at 743.

[24] Almanza v. State, 686 S.W. 2d 157, 171 (Tex. Crim. App. 1984).

[25] Hutch v. State, 922 S.W. 2d 166, 171 (Tex. Crim. App. 1996).

harm must be assayed in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole.[26] Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defense theory, or make a case for conviction clearly and significantly more persuasive.[27]

The State asserts that there was no error in the jury charge because the charge was based on a proper indictment and/or Appellant failed to object to the indictment before the date of trial. However, if this Court finds otherwise, the State believes the egregious error standard will apply because Appellant stated at trial that he had no objection to the jury charge.[28]

The entire jury charge should be reviewed when determining the actual degree of harm. In the instant case, the jury charge included an application paragraph for the first-degree felony offense of aggravated assault with a deadly weapon on a household member (paragraph 4) and two application paragraphs for the lesser

---

[26] Almanza, 686 S.W. 2d at 171.

[27] Taylor v. State, 332 S.W. 3d 483, 490 (Tex. Crim. App. 2011).

[28] RR, Vol. 5, 123-124.

included second-degree felony offenses of aggravated assault (paragraphs 5 and 6).[29] In each of the application paragraphs, the jury was required to find Appellant caused physical injury to Ruth Simms by striking her, by causing her head to strike an object, or by shaking her. To find the alleged manner and means, the jury necessarily had to find a deadly weapon was used, not merely exhibited.

The lesser included application paragraphs included an option where the jury could have found Appellant guilty of the second-degree felony offense of aggravated assault by causing serious bodily injury without the use or exhibition of a deadly weapon and an option where the jury could have found Appellant guilty of aggravated assault by causing only bodily injury by using or exhibiting a deadly weapon. By finding Appellant guilty of the first degree felony alleged in the indictment, it is clear the jury found serious bodily injury was caused by using a deadly weapon on a household member.

In opening, the State advised the jury that the evidence would show Appellant severely beat the victim causing a subdural hematoma.[30] The State informed the jury that the emergency room physician, Dr. Michael Peterson, would testify that the

---

[29] CR 65-66.

[30] RR Vol. 4, 12, 17.

injuries he observed could have been caused by striking, by causing her head to strike an object or by shaking, and that a hand or an object can be a deadly weapon if used to cause a subdural hematoma.[31] Appellant admitted in opening that the victim was severely injured but suggested to the jury that due to a sloppy police investigation, it was possible that someone else committed the crime.[32]

In closing, the State argued the evidence proved beyond a reasonable doubt that Appellant was guilty of the crime he was charged with in the indictment and that a deadly weapon was used in the commission of the offense.[33] The State further argued the subdural hematoma and the injuries to the victim's face were caused either by Appellant's hand or an unknown object.[34] The defense argued Appellant did not commit the offense, and the evidence was insufficient to prove Appellant was guilty.[35] The defense never argued that a deadly weapon was not used, that the victim did not suffer serious bodily injury, or that Appellant

---

[31] RR Vol. 4, 16.

[32] RR, Vol. 4, 19-21.

[33] RR, Vol. 5, 135, 149, 150-152.

[34] RR, Vol. 5, 150-151.

[35] RR, Vol. 5, 143, 147.

was only guilty of one of the lesser included offenses described in the jury charge.

A review of the entire jury charge, the state of the evidence, the argument of counsel and other relevant information revealed by the record shows that egregious harm was not committed by including the words "or exhibit" in the jury charge. The alleged error did not affect the defensive theory, and it did not deprive Appellant of a valuable right. It was incumbent upon Appellant to object to any defect, and his failure to do so prevents him from arguing this point on appeal. Point of Error One should be overruled.

**State's Reply to Point of Error Two**

**Egregious harm did not occur because the verdict was properly based on an indictment that charged Appellant with aggravated assault with a deadly weapon on a household member and/or Appellant failed to object to the alleged defect in the indictment before the date of the trial.**

Appellant contends the charge on punishment was egregiously harmful because it authorized a punishment in excess of that for a second-degree felony.[36] This argument is predicated upon Appellant's erroneous conclusion that the indictment only charged Appellant with a second-degree felony aggravated assault.

---

[36] Appellant's brief at 25-27

12

The State refers this Court to the arguments under reply to point of error number one that the indictment was sufficient to charge Appellant with a first-degree felony aggravated assault and/or appellant has failed to preserve error because of his failure to object to any alleged defect prior to trial. The State contends that having shown the indictment sufficiently charged Appellant with a first-degree felony aggravated assault, Appellant's basic premise is incorrect. Therefore, Appellant has not suffered egregious harm, and Appellant's Point of Error Two should be overruled.

## CONCLUSION AND PRAYER

The State contends Appellant was sufficiently charged with the first-degree felony offense of Aggravated Assault with a Deadly Weapon on a Household Member. The State further contends Appellant has failed to preserve error regarding any defects in the indictment by failing to object to the indictment prior to trial. Finally, the State submits Appellant did not suffer egregious harm in the punishment charge because the charge properly set forth the punishment range for a first-degree felony.

Respectfully submitted,

/s/ Jim English
Jim English
Criminal District Attorney
Deaf Smith County, Texas
235 E. 3rd Rm. 401
Hereford, Texas 79045
Phone: 806-364-3700
Email:JEnglish@deafsmithcounty.texas.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4 (i) (3), I hereby certify that this Brief contains 3149 words.

/s/ Jim English
Jim English

## CERTIFICATE OF SERVICE

This is to certify that on this 25th day of August, 2015 a true and correct copy of the State's Brief was mailed to John Bennett, Attorney for Appellant, PO Box 19144, Amarillo, Texas 79114.

/s/ Jim English
Jim English



**CIPRIANO RAMON ALMANZA, JR., Appellant v. THE STATE OF TEXAS, Appellee**

**No. 242-83**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*686 S.W.2d 157*; *1984 Tex. Crim. App. LEXIS 593*

**February 8, 1984**

**SUBSEQUENT HISTORY:** **[\*\*1]** On Rehearing February 27, 1985, Reported at: *686 S.W.2d 157 at 160.*

**PRIOR HISTORY:** Petition for Discretionary Review from the Court of Appeal, Second Supreme Judicial District [Tarrant County].

**JUDGES:** En Banc. Teague, Judge. Miller, Judge, concurs. Clinton, Judge, dissents.

**OPINION BY:** TEAGUE

**OPINION**

[\*159] OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

The Fort Worth Court of Appeals stated the following in *Almanza v. State, 645 S.W.2d 885* (Tex.App. -- Ft.Worth 1983):

Although many recent opinions have off-handedly dismissed the changing of 'and' in the indictment to 'or' in the court's charge, such approach is dangerous and usually fatal in matters where *aggravation* or *jurisdiction* is involved. In the instant cause of *aggravated rape* the indictment *joined* the allegation of threats of death to the standard form allegation of rape by the word *and*. In the court's charge,

[however], the aggravation feature was *disjoined* from rape by the word *or*. Such constitutes fundamental error. *Messenger v. State, 638 S.W.2d 883 (Tex.Cr.App.1982).*

The cause is reversed and remanded to the trial court for further proceedings under [\*\*2] this indictment.

The State has filed a petition for discretionary review with this Court, asking us to make the determination whether the above decision of the Court of Appeals is correct. We have concluded, after the respective parties favored this Court with well written supplemental briefs, as well as making outstanding oral arguments, that the decision of the Court of Appeals is in all things correct.

The State's petition for discretionary review was improvidently granted. It is therefore ordered dismissed.

**CONCUR BY:** MILLER

**CONCUR**

Miller, Judge

Although there is merit in the dissenting opinion of

Page 2

686 S.W.2d 157, *159; 1984 Tex. Crim. App. LEXIS 593, **2

Judge Clinton, I concur with the decision of the majority to dismiss the State's petition in this case as improvidently granted because the issue of the relationship between fundamental error in the court's charge and error in the court's charge as contemplated by *Article 36.19, V.A.C.C.P.*, has not been thoroughly briefed or argued by either the State or the defense. Historically the advocacy system has served the judiciary well in charting the course of criminal jurisprudence in this state. If we are going to redefine fundamental error vis-a-vis the court's charge to the **[**3]** jury, as perhaps we should, then let us do so when the issue is properly joined, either on motion for rehearing in this case or in a future case before the court. Because the dissent would raise and address the issue *sua sponte* in this case, I concur in dismissing the State's petition.

**DISSENT BY:** CLINTON

**DISSENT**

DISSENTING OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge

One reason for granting the petition in this cause was to examine seriously a claim of "harmless fundamental error" in the **[*160]** charge of the court to the jury, and we ought to pursue that examination to a just end.

Beginning with Old Code Articles 594-603 and decisions construing them, [1] I have tracked developments in the law of fundamental error in a court's charge through legislative amendments of 1897 [2] and 1913 [3] and judicial opinions thereafter -- more thoroughly than before. [4] That research and conclusions drawn from it are contained in an opinion which has been circulated to all other members of this Court and presented in conference. However, it is much too long for publication as usual. Accordingly that opinion is being handed down

as an appendix to this one, but will **[**4]** not be published.

1 E.g., *Bishop v. The State, 43 Tex. 390 (1875)*.
2 Acts 1897, 25th Leg., ch. 21, p. 17.
3 Acts 1913, 33rd Leg., ch. 138, p. 278.
4 See *Doyle v. State, 631 S.W.2d 732, 741-744* (Tex.Cr.App., 1982) (Concurring Opinion on Motion for Rehearing); *Wilson v. State, 625 S.W.2d 331, 334-335* (Tex.Cr.App., 1981) (Concurring Opinion on Motion for Rehearing) and *Sattiewhite v. State, 600 S.W.2d 277, 279-285* (Tex.Cr.App., 1979) (Opinion on Motion for Rehearing).

Several lessons are taught by those historical developments that have been chronicled in my unpublished opinion concerning error in a charge of a trial court to a jury. One is that an alleged error not properly raised and preserved according to Articles 36.14, 36.15 or 36.16, V.A.C.C.P. will not be considered on appeal *unless* it presents "fundamental error." Another is that when claimed error has been properly raised, preserved and brought up on appeal, the judgment shall not be reversed *unless* the error **[**5]** "was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial," Article 36.19, *id.* A third is that utilizing the tests of Article 36.19 to find "fundamental error" when an objection was *not* made before the charge was read to the jury, as is now so often done on appeal, may not be sound.

Accordingly, I do not agree that we improvidently granted the State's petition for discretionary review. Still, a majority will not redefine the fundamental error doctrine as it applies to a charge of a trial court to a jury.

Therefore, I dissent.



**DANIEL EVERETT BROOKS, APPELLANT v. THE STATE OF TEXAS, APPELLEE**

**NO. 07-11-00353-CR, 07-11-0354-CR**

**COURT OF APPEALS OF TEXAS, SEVENTH DISTRICT, AMARILLO**

*382 S.W.3d 601*; *2012 Tex. App. LEXIS 7908*

**September 18, 2012, Decided**

**NOTICE:** PUBLISH.

**SUBSEQUENT HISTORY:** Rehearing overruled by, Reconsideration denied by, En banc *Brooks v. State, 2012 Tex. App. LEXIS 8834 (Tex. App. Amarillo, Oct. 23, 2012)*
Petition for discretionary review refused by *In re Brooks, 2013 Tex. Crim. App. LEXIS 2 (Tex. Crim. App., Jan. 9, 2013)*

**PRIOR HISTORY:** [**1]
FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY; NO. CR-11H-099, CR-11H-100; HONORABLE ROLAND D. SAUL, JUDGE.

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Accusatory Instruments > Indictments > Appellate Review*
*Criminal Law & Procedure > Accusatory Instruments > Indictments > Contents > General Overview*
*Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > Conclusions of Law*
[HN1] Construction of an indictment is a matter of law that an appellate court reviews de novo.

*Criminal Law & Procedure > Accusatory Instruments >*

*Indictments > Contents > Requirements*
[HN2] See *Tex. Const. art. V, § 12*.

*Criminal Law & Procedure > Accusatory Instruments > Indictments > Contents > Waiver*
[HN3] See *Tex. Code Crim. Proc. Ann. art. 1.14(b) (2005)*.

*Criminal Law & Procedure > Accusatory Instruments > Indictments > Contents > Requirements*
[HN4] An indictment must contain the elements of the offense charged, fairly inform the defendant of charges he must prepare to meet, and enable the defendant to plead acquittal or conviction in bar to future prosecution for the same offense.

*Criminal Law & Procedure > Accusatory Instruments > Indictments > Contents > Sufficiency*
[HN5] An indictment which alleges all of the requisite elements of the particular offense in question will not be found to be deficient simply because it fails to precisely track the language of the statute. A court should construe the indictment in the context and subject matter in which the words are employed. Finally, the construction of an indictment be done by reading the indictment as a whole and by practical rather than technical considerations.

*Criminal Law & Procedure > Accusatory Instruments >*

*Indictments > Contents > Sufficiency*

[HN6] In interpreting the changes to *Tex. Const. art. V, § 12* and *Tex. Code Crim. Proc. Ann. art. 1.14(b)* (2005) regarding whether the indictment in question charges an offense, the question is whether the allegations in it are clear enough that one can identify the offense alleged. Stated another way, can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged.

*Criminal Law & Procedure > Accusatory Instruments > Indictments > Contents > Sufficiency*

[HN7] Texas courts have long-recognized the sensible proposition that incorrect grammar, bad spelling, bad hand writing, the use of words not technically in their correct sense or places will none of them make an indictment bad unless same causes the thing intended to be charged, to lack sense or certainty. Indeed, the Court of Appeals of Texas has recognized this "sensible proposition" when it concluded that appellant was given specific notice by an indictment in which a comma placed after the last name in a series separated it from the verb following.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > General Overview*

[HN8] *Tex. Penal Code Ann. § 22.021(a)(2)(A)* provides two methods of demonstrating conduct that elevates the offense to an aggravated offense: (ii) by acts or words that places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person; (iii) by acts or words occurring in the presence of the victim threatens to cause the death, serious bodily injury, or kidnapping of any person.

**COUNSEL:** John Bennett, Attorney at Law, Amarillo, TX.

Chris Strowd, Assistant Criminal District Attorney, Hereford, TX.

**JUDGES:** PANEL A. Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION BY:** Mackey K. Hancock

**OPINION**

[*602] Appellant, Daniel Everett Brooks, appeals his convictions for felony assault[1] in trial court number CR-11H-099, appellate cause No. 07-11-00353-CR. Appellant also appeals his conviction for sexual assault[2] in Count I of trial court number CR-11H-100 and aggravated sexual assault[3] in Count II of trial court number CR-11H-100, appellate cause No. 07-11-00354-CR. After hearing the evidence regarding punishment, the jury assessed appellant's punishment at ten years for the felony assault, twenty years for the sexual assault, and fifty years for the aggravated sexual assault. Appellant has perfected his appeal and by six issues contends that 1) the judgment of conviction for aggravated sexual assault is void, 2) appellant's right to a jury trial on the charge of sexual assault was violated, 3) appellant suffered egregious harm when the trial court's charge to the jury was for the offense of aggravated sexual assault, 4) appellant suffered egregious harm because the jury charge permitted a guilty verdict on an [**2] invalid theory of guilt, 5) the judgment in No. 07-11-00354-CR allowed an improper cumulating of the fines assessed, and 6) the evidence was insufficient to support the order for appellant to pay the fees of his court appointed attorney. We affirm the judgment as hereinafter modified.

1 See *TEX. PENAL CODE ANN. § 22.01(a)(1) & (b)(2)(A)* (West 2011).
2 Id. *§ 22.011(a)(1)(A)* (West 2011).
3 Id. *§ 22.021(a)(2)(A)(ii), (iii)* (West Supp. 2012).

Factual and Procedural Background

Appellant was indicted by two separate indictments that alleged he committed the offense of felony assault in No. 07-11-00353-CR and two counts of aggravated sexual assault in No. 07-11-00354-CR.[4] The incident that led to the indictments occurred between 11:30 P.M. on August 14, 2010, and approximately 6:30 A.M. on August 15, 2010. The State initially indicted appellant in two indictments. One alleged the offense felony assault in original [*603] indictment CR-101-105 and two counts of aggravated sexual assault in original indictment CR-101-106, both indictments having been returned on September 22, 2010. Appellant filed a waiver of arraignment in trial court number CR-101-106[5] and entered a plea of "Not Guilty" to the indictment. [**3] The waiver of arraignment in CR-101-106 signed by appellant and filed with the court stated, "[Appellant] and

his attorney do hereby acknowledge awareness and understanding of the charge(s) against [Appellant], to-wit: aggravated sexual assault."

> 4   We will refer to the cases by their appellate court numbers throughout this opinion. Appellant's issues relate to his convictions for sexual assault and aggravated sexual assault in cause No. 07-11-00354-CR.
> 5   CR-101-106 was the original indictment alleging two counts of aggravated sexual assault.

The trial court conducted pretrial hearings on February 2, 2011, and on March 10, 2011. Of import to our later discussion is the fact that, at neither hearing did appellant complain about the indictments that were then pending against him. Subsequently, on August 2, 2011, the State reindicted appellant and filed two new indictments alleging the same offenses. As pertinent to this opinion, the indictment in No. 07-11-00354-CR alleged in relevant parts:

> C0UNT I   Daniel Everett Brooks on or about the 15th day of August, 2010, did then and there intentionally or knowingly cause the penetration of the anus of R.E. by a wooden handle, without the consent of **[\*\*4]** R.E., and the defendant did then and there by acts or words threaten to cause or place, R.E. in fear that death or serious bodily injury would be imminently inflicted on R.E., and said acts or words occurred in the presence of R.E.
>
> COUNT II
>
> And it is further presented in and to said Court that on the 15th day of August, 2010, the [appellant] did then and there intentionally or knowingly cause the penetration of the sexual organ of R.E. by [appellant's] sexual organ, without the consent of R.E., and the [appellant] did then and there by acts or words threaten to cause or place, R.E. in fear that death or serious bodily injury would be imminently inflicted on R.E., and said acts or words occurred in the presence of R.E.

The caption on the indictment at issue states that the offenses in Count I and Count II of the indictment are aggravated sexual assault. At a pretrial hearing on August 11, 2011, at the State's request and with appellant's agreement, the trial court carried forward all of the previously entered orders on the motions filed in the original cause numbers. The case then commenced to trial on August 15, 2011.

During voir dire, both the State and appellant discussed the nature **[\*\*5]** of the case. The record reveals that the prospective jury was told that the charges against appellant were two counts of aggravated sexual assault and a separate indictment for felony assault. Appellant's trial counsel went into some detail regarding the first count of aggravated sexual assault. After the jury was selected and appellant had entered a plea of "Not guilty" to the indictments, the State presented its opening statement. In this opening statement, the State again outlined the evidence it intended to present to prove appellant guilty of two counts of aggravated sexual assault. During appellant's opening statement, trial counsel presented a theory that what occurred was consensual. At no time did appellant's trial counsel object that the indictment only charged appellant with the offense of sexual assault.

**[\*604]** At the conclusion of the evidence, the trial court prepared its charge to the jury. The court's charge sets forth the charges of two counts of aggravated sexual assault with the lesser included offense of sexual assault as to each count. The record reveals that appellant did not object to the submission of the charge on the two offenses of aggravated sexual assault. During **[\*\*6]** closing argument, appellant's trial counsel argued that the case was one of consensual sexual contact.

After hearing the evidence, the jury convicted appellant of sexual assault in Count I of the indictment and aggravated sexual assault in Count II of the indictment. Further, the jury also convicted appellant of felony assault. After hearing the evidence regarding punishment, the jury sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice, (ID-TDCJ) for a period of ten years in 07-11-00353-CR, twenty years in Count I of 07-11-00354-CR, and fifty years in Count II of 07-11-00354-CR. In each sentence, the jury assessed a fine of $10,000. The trial court entered judgment in each case to include the $10,000 fine. No motion for new trial

was filed by appellant. Appellant gave notice of appeal, and this appeal follows.

Through six issues, appellant contests his convictions. Appellant contends that the indictment in Count II of No. 07-11-00354-CR charges only the offense of sexual assault and therefore, through four issues, asserts that the judgment is void. In the alternative, he contends that because the jury returned a verdict of guilt [**7] "as alleged in the indictment," his right to a jury trial was violated. In the further alternative, he maintains he suffered egregious harm by the submission to the jury of aggravated sexual assault. And, finally, in the further alternative, he argues that the jury charge caused egregious harm to appellant by permitting a guilty verdict on an invalid theory of guilt. Appellant's fifth issue contends that the judgment in No. 07-11-00354-CR improperly cumulates the fines. Appellant's sixth issue contends the evidence was insufficient to sustain the requirement that appellant pay for his appointed attorney. We will modify the judgment in cause No. 07-11-00354-CR and affirm the judgments of the trial court as modified.

Indictment

Appellant's first three issues all revolve around the central contention that Count II of the indictment in No. 07-11-00354-CR could be read to charge only sexual assault. We will review these three issues together. Initially, we observe that appellant is adamant that he is not challenging the sufficiency of the indictment. Rather, he challenges the verdict rendered by the jury upon the charge submitted by the trial court. In essence, appellant's first contention [**8] is that the judgment convicting him of a first-degree felony of aggravated sexual assault is void because the indictment only charged him with sexual assault. It follows, under appellant's analysis, that the trial court's charge authorized punishment outside the range of punishment for the offense charged and is, accordingly, void. However, from the perspective of the Court, we must first review the indictment in question to ascertain to what charge appellant was asked to answer.

Standard of Review

[HN1] Construction of an indictment is a matter of law that we review *de novo*. See *State v. Moff, 154 S.W.3d 599, 601 (Tex.Crim.App. 2004)*.

Applicable Law

The requirements for an indictment are located in *Article V, section 12 of the Texas Constitution*:

> [*605] [HN2] An indictment is a written instrument presented to a court by a grand jury charging a person with commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments, including their contents, amendments, sufficiency and requisites are provided by law. The presentment of an indictment or information [**9] to a court invests the court with jurisdiction of the case.

*TEX. CONST. art. V, § 12*. In addition to the constitutional requirement regarding an indictment, the Texas Code of Criminal Procedure provides, in pertinent part:

> [HN3] If the defendant does not object to a defect, error, or irregularity of form or substance in the indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and may not raise the objection on appeal or in any postconviction proceeding. . . .

See *TEX. CODE CRIM. PROC. ANN. art. 1.14(b)* (West 2005).[6]

> 6    Further reference to the Texas Code of Criminal Procedure Ann. will be by reference to "Article   ," "article   ," or "art.   ."

Analysis

These provisions of the law have been the subject of numerous cases before the appellate courts in Texas. From these cases, we can glean some guidance. In *Harrison v. State, 76 S.W.3d 537, 539 (Tex.App.--Corpus Christi 2002, no pet.)*, the Corpus Christi court pointed out that [HN4] an indictment must contain the elements of the offense charged, fairly inform the defendant of charges he must prepare to meet, and enable the defendant to plead [**10] acquittal or conviction in bar to future prosecution for the same offense. How, then, do

we view the language of Count II of the indictment in No.-07-11-00354-CR?

Appellant specifically challenges the following portion of the indictment:

> "[appellant] did then and there by acts or words threaten to cause or place, R.E. in fear that death or serious bodily injury would be imminently inflicted on R.E., and said acts or words occurred in the presence of R.E.

He contends that we must take a very technical view and, therefore, because of the perceived grammatical error in the placement of a comma, we must conclude that the indictment charged only sexual assault and not aggravated sexual assault. The State, on the other hand, simply says that this is a belated objection to the indictment that has been waived because the same was not made before the trial commenced. See *art. 1.14(b)*.

Even before the amendments to *Article V, section 12 of the Texas Constitution* in 1985 and the amendment to *article 1.14(b)*, in *Oliver v. State, 692 S.W.2d 712, 714 (Tex.Crim.App. 1985)*, the Texas Court of Criminal Appeals stated that [HN5] "an indictment which alleges all of the requisite elements of the particular offense **[**11]** in question will not be found to be deficient simply because it fails to precisely track the language of the statute." The court went on to point out that we should construe the indictment in the context and subject matter in which the words are employed. Id. Finally, the court directed that the construction of an indictment be done by reading the indictment as a whole and by practical rather than technical considerations. Id.

**[*606]** What does it mean to construe an indictment in the context and subject matter in which the words are employed? Id. First, in the case of *Teal v. State, 230 S.W.3d 172, 173 (Tex.Crim.App. 2007)*, the Texas Court of Criminal Appeals dealt with a case which attempted to charge the felony offense of hindering apprehension under *section 38.05 of the Texas Penal Code*; yet the indictment failed to allege that appellant knew that the person whose apprehension he hindered was a fugitive for a felony offense. Teal contended that the indictment only alleged a misdemeanor offense. Id. In writing for the court, Judge Cochran summed up the court's position [HN6] in interpreting the changes to *Article V, section 12*

*of the Texas Constitution* and *article 1.14(b)* regarding whether the **[**12]** indictment in question charges an offense: the question is "whether the allegations in it are clear enough that one can identify the offense alleged." *Id. at 180*. The court then added, "Stated another way: Can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged?" Id. The court then analyzed the indictment and pointed out that, although the indictment was missing the required *mens rea*--that appellant knew the person he was assisting was a felony fugitive--the indictment clearly stated that the subject was a fugitive for the offense of failure to register as a sex offender, which is a felony. *Id. at 182*. The court concluded that the indictment, while defective in certain aspects, was clearly sufficient to charge an offense and that "one could fairly conclude from the face of the charging instrument that the State intended to charge a felony offense." Id. After finding that, in the case before it, the indictment when read as a whole was sufficient to vest the district court with subject matter jurisdiction and give the defendant notice of the offense the State intended to prosecute defendant **[**13]** for, the court pointed out that, if appellant was unsure of the offense, he should have challenged the indictment before trial commenced. Id.

Following Teal, the Texas Court of Criminal Appeals again addressed a situation where indictments purported to charge a felony but, on the face of the indictments, only alleged misdemeanor offenses. See *Kirkpatrick v. State, 279 S.W.3d 324, 326 (Tex.Crim.App. 2009)*. In Kirkpatrick, the court considered the general question of whether the indictments at issue were sufficient to allege a felony offense and thereby vest the district court with jurisdiction.[7] Id. In analyzing the facts, as pertinent to the questions presented, the court pointed out that appellant in the case had been put on notice of the intent by the State to charge a felony. *Id. at 329*. Specifically, the face of each indictment contained the heading: "Indictment--Tampering with a Governmental Record 3rd Degree Felony, --*TPC § 37.10(a).*" Id. Therefore, according to the court, the appellant had adequate notice that she was charged with a felony. Id. If she had been confused about the charge, appellant could **[*607]** have, and should have, objected to the defective indictment before the date **[**14]** of trial. Id.

7    The Court of Criminal Appeals granted the State's petition for discretionary review on three

grounds.

1) Did the Court of Appeals err by concluding that the district court did not have subject-matter jurisdiction?

2) Where an offense can be charged as either a felony or a misdemeanor, does the return of the indictment into a court with subject-matter jurisdiction of only the felony offense indicate the State's intent to charge the felony offense?

3) Is ambiguity or confusion about the particular offense that has been charged [sic] the type of objection to an indictment that must be raised by a defendant prior to the date of trial?

When we analyze the indictment under consideration in light of the opinions of the Texas Court of Criminal Appeals, we make the following observations: 1) the indictments were intended to charge the offenses of aggravated sexual assault, 2) the caption of the indictments contained language that indicated Counts I and II were charging appellant with the crime of aggravated sexual assault, 3) appellant filed a waiver of arraignment to the original indictment acknowledging that he was indicted for the offense of aggravated sexual assault in Counts **[**15]** I and II of the prior indictment, 4) the subsequent indictment did not materially change the charge, 5) the face of the reindictment again reflected that appellant was charged with two counts of aggravated sexual assault, 6) at the pretrial hearing on the new indictments on August 11, 2011, by the agreement of both parties, all previous rulings and motions were carried forward to the reindicted cause numbers, to include appellant's acknowledgement that he was charged with two counts of aggravated sexual assault, 7) during voir dire, the State explained, without objection from appellant, that appellant was charged with the offense of aggravated sexual assault, 8) during opening statements, the State outlined its proposed evidence and ended with asking the jury to convict appellant of two counts of aggravated sexual assault, 9) the court's charge outlined the elements of the offense of aggravated sexual assault

as to both Count I and II of the indictment, and 10) appellant did not object to the charge. When this indictment is read in context and in consideration of the subject matter before the trial court, it is clear that appellant knew that he was charged with two counts of aggravated **[**16]** sexual assault. See *Oliver, 692 S.W.2d at 714*. Appellant invites this Court to read the indictment at issue in a hypertechnical manner without considering the context or subject matter of the indictment. Id. Further, it is equally clear that, if appellant had any question about what charge he had been asked to defend against, it was incumbent on appellant to file an objection with the court. See *Kirkpatrick, 279 S.W.3d at 329*. Having failed to do so, appellant has waived any such objection. *Art. 1.14(b)*. Appellant's issue is simply an attempt to avoid the results of failing to object or filing a motion to quash. Accordingly, we reach the conclusion that the indictment in question in No. 07-11-00354-CR charged appellant with two counts of aggravated sexual assault.

Appellant relies on the case of *Thomason v. State, 892 S.W.2d 8 (Tex.Crim.App. 1994)*, for the proposition that when an indictment facially charges a complete offense the intent of the State to charge a different offense is immaterial. *Id. at 11*. Thomason dealt with an indictment alleging felony theft of at least $20,000; however, the indictment contained no language that would aggregate the theft. *Id. at 9*. The evidence produced **[**17]** at trial showed that appellant had procured a total of ten checks, eight of which were in excess of *$20,000. Id. at 10*. At the conclusion of the State's case in chief, appellant filed a request to require the State to elect which check it sought to obtain a conviction on, and the trial court denied the request. Id. The Texas Court of Criminal Appeals subsequently reversed the judgment and remanded the case for the intermediate appellate court to consider appellant's remaining issues. *Id. at 12*.

When considering the Thomason case in the Kirkpatrick opinion, the Texas Court of Criminal Appeals pointed out that Thomason was factually distinguishable for two reasons, only one of which is important **[*608]** to our consideration. *Kirkpatrick, 279 S.W.3d at 327*. The court pointed out that appellant in Thomason had directed the trial court's attention to the error by his motion to require the State to elect which check it desired to convict appellant on. Id. In Kirkpatrick, this fact was enough to distinguish Thomason from the case before the court. Id.

For the same reasons, the facts of *Thomason* are distinguishable from the case before the Court and, Thomason does not dictate the result appellant would **[**18]** have us reach.

Further, appellant cites this Court to *Harris v. State, 359 S.W.3d 625, 629 (Tex.Crim.App. 2011)*, and *Pruett v. State, 685 S.W.2d 411, 413 (Tex.App.--Austin 1985, pet. ref'd)*, for the proposition that we must view this indictment in light of the rules of grammar in making our determination about what the indictment charges. However, appellant takes these cases further than their respective holdings would indicate. First, *Harris* is a statutory construction case and, while on its face it does seem to stand for the proposition appellant cites it for, the fact that it is involving the question of interpretation of a statute distinguishes it from our situation. Harris holds that in construing a statute, we must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Harris, 359 S.W.3d at 629* (quoting *Boykin v. State, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991)).* Boykin makes clear that the reason we must focus our attention in a statutory construction case on the precise language and literal text of the statute is because the Texas Constitution delegates the lawmaking function to the Legislature while assigning the law interpreting **[**19]** function to the Judiciary. *Boykin, 818 S.W.2d at 785* (citing *Tex. Const. art. II, § 1*). The case before us is not a statutory construction case; accordingly, appellant's citation to Harris is not controlling. Regarding appellant's reliance on Pruett, we note that *Pruett* was a pre-1985 Constitutional amendment case and, in the final analysis, even without the amendment to *Article V, § 12 of the Constitution*, the court held that when applying the rules of grammar and making a common sense reading of the charging instrument, the information was not fundamentally defective. See *Pruett, 685 S.W.2d at 413*. Accordingly, we do not find these cases to carry the day as appellant would direct.

To the contrary, [HN7] Texas courts have long-recognized "the sensible proposition that incorrect grammar, bad spelling, bad hand writing, the use of words not technically in their correct sense or places will none of them make an indictment bad unless same causes the thing intended to be charged, to lack sense or certainty." *Westbrook v. State, 88 Tex. Crim. 466, 227 S.W. 1104, 1105 (Tex.Crim.App. 1921)*. Indeed, this Court has recognized this "sensible proposition" when it

concluded that appellant was given specific notice by an **[**20]** indictment in which a comma placed after the last name in a series separated it from the verb following. *Childress v. State, 807 S.W.2d 424, 431 (Tex.App.--Amarillo 1991, no writ)* (citing *Westbrook, 227 S.W. at 1105*); see *Hogue v. State, 711 S.W.2d 9, 14 (Tex.Crim.App. 1986)*, cert. denied, *479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 329 (1986)* ("fail[ing] to see how the wording of the indictment, although not grammatically correct, misled or confused appellant"); *Malagon v. State, No. 05-97-01530-CR, 1999 Tex. App. LEXIS 6924, *12-13 (Tex. App.--Dallas Sept. 13, 1999, no pet.)* (observing, simply, that "[a] misplaced comma does not alone nullify an indictment"). Nothing in the record before us indicates that appellant was misled or confused by the misplaced comma or that, as a result of it, appellant lacked notice of the allegations against him.

**[*609]** Having determined that appellant was charged by indictment in No. 07-11-00354-CR with the offense of aggravated sexual assault, we overrule appellant's first issue. The verdict of the jury-guilty as charged in the indictment-convicted appellant of the offense of aggravated sexual assault, and the punishment assessed was within the range of punishment **[**21]** for the convicted offense.

Because of our holding regarding the reading of the indictment, appellant's right to a jury trial upon the return of a verdict of guilty as charged in the indictment was met because the indictment did charge appellant with aggravated sexual assault. Appellant's second issue is overruled.

Appellant next contends that he suffered egregious harm by the submission to the jury of the offense of aggravated sexual assault. This argument is predicated upon appellant's erroneous assumption that the indictment did not charge that offense. Again, having determined that the indictment in No. 07-11-00354-CR was sufficient to charge that offense, appellant's basic premise is incorrect and, therefore, appellant has not suffered any egregious harm. Appellant's third issue is overruled.

Invalid Theory of Guilt

Appellant's fourth issue contends that he suffered egregious harm because the court's charge permitted him to be convicted on an invalid theory of guilt. Here, he offers an alternative reading based on comma placement:

the jury charge, which mirrors the language of the indictment, *may* be read to allege one manner of committing aggravated sexual assault, but it should also **[**22]** be read to allege conduct that is not defined as a criminal act. Appellant further posits that since the verdict was a general verdict, and even if we have read the indictment to charge aggravated sexual assault, a valid theory of guilt, there is no way to ascertain whether appellant was convicted under a valid theory of guilt. This leads appellant to contend that we must reverse the judgment and remand the case for another trial.

Appellant couches his fourth issue as "a further alternative to Issue One." Issue one contended that the indictment in question only charged the offense of sexual assault and not the offense of aggravated sexual assault. For the reasons stated in the section regarding the indictment, we have previously found that the indictment in question did allege the offense of aggravated sexual assault. His fourth issue is founded on the reading of the language in the jury charge that, based on his interpretation of the comma placement, permitted him to be convicted of aggravated sexual assault if the jury found that appellant placed the victim in the requisite fear or "threaten[ed] to cause" such fear, the latter not being a valid theory of guilt. However, appellant's **[**23]** alternate reading is also grounded in a hypertechnical construction, based upon a perceived error in the placement of a comma. We have previously rejected appellant's general approach.

[HN8] *Texas Penal Code section 22.021(a)(2)(A)*, as applicable in this case, provides two methods of demonstrating conduct that elevates the offense to an aggravated offense:

> (ii) by acts or words that places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person;

> (iii) by acts or words occurring in the presence of the victim threatens to cause the death, serious bodily injury, or kidnapping of any person.

See *TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(ii),(iii)*. In a rather clumsy manner, the jury charge appears to combine the two methods of alleging the **[*610]** aggravating conduct by tracking the language of the indictment: "did then and there by acts or words threaten to cause or place, R.E. in fear that death or serious bodily injury would be imminently inflicted on" her. While this may not be a model of drafting, we remain convinced that the charge, as did the indictment, alleges the requirements of *subsections (ii)* and *(iii)*. See id.

To support appellant's position, **[**24]** he cites the Court to *Hammock v. State, 211 S.W.3d 874, 876 (Tex.App.--Texarkana 2006, no pet.)*. Hammock involved an accusation that the defendant possessed certain chemicals with intent to manufacture methamphetamine. *Id. at 875*. The indictment at issue listed the chemicals that the defendant was accused of possessing. Id. However, of the six chemicals alleged, the possession of only three was criminalized. *Id. at 876*. The charge submitted all of the chemicals at issue and explicitly allowed conviction on a finding that appellant possessed chemicals the possession of which were not criminalized. Id. Only if we accept appellant's proposed reading of the jury charge are we facing a *Hammock* issue. We have already rejected that proposition. Accordingly, appellant's fourth issue is overruled.

Cumulating of Fines

Appellant's fifth issue contends that the judgment in No. 07-11-00354-CR improperly cumulates the fines. The record reflects that appellant was convicted of felony assault in No. 07-11-00353-CR and sentenced to confinement for ten years in the ID-TDCJ and to pay a fine of $10,000. Additionally, in No. 07-11-00354-CR, the record reflects that appellant was found guilty in Count I of **[**25]** sexual assault and sentenced to 20 years confinement and a fine of $10,000. Further, the record reflects that appellant was found guilty of aggravated sexual assault in Count II and sentenced to 50 years confinement in the ID-TDCJ and a fine of $10,000. The sentences are to be served concurrently, yet appellant is ordered to pay all of the fines. The State has candidly admitted that the fines in No. 07-11-00354-CR have been improperly cumulated and, as such, should be omitted. Accordingly, we will modify the judgment in No. 07-11-00354-CR to delete the fines.

Attorney's Fees

Appellant's last issue contends that there was no evidence upon which to support the order that appellant pay for his appointed attorney, as required by the judgment in appellate cause No. 07-11-00354-CR. Here,

the State again candidly admits that the evidence does not support the order for appellant to repay his appointed attorney's fees. Accordingly, we will modify the judgment in cause No. 07-11-00354-CR to delete the payment of the attorney's fees by appellant.

Conclusion

Having overruled all of appellant's first four issues and having modified the judgment in cause No. 07-11-00354-CR to omit the cumulated fines **[**26]** and the order for appellant to pay his appointed attorney's fees, we affirm the judgments of the trial court as modified.

Mackey K. Hancock

Justice

Publish.



**LARRY NEIL COOK, Appellant v. THE STATE OF TEXAS, Appellee**

**No. 0375-94**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*902 S.W.2d 471*; *1995 Tex. Crim. App. LEXIS 78*

**June 28, 1995, Delivered**

**SUBSEQUENT HISTORY:** **[\*\*1]** As Corrected July 3, 1995. Second Correction September 14, 1995.

**PRIOR HISTORY:** Petition for Discretionary Review from the Fourth Court of Appeals. 186th. Judicial District Court of Bexar County, TX.

**COUNSEL:** For Appellant: Russell Sablatura, Mark Stevens, J. Charles Bunk, Vincnet D. Callahan, San Antonio, Tx.

For Appellee: Steven C. Hilbig, D.A. & Chris DeMartino, A. J. Dimaline & Barbara Hervey, D. A's. San Antonio, Tx. Robert Huttash, State's Attorney, Austin, Tx.

**JUDGES:** Baird, Judge --- Clinton, Judge concurring opinion --- Maloney, Judge concurring opinion joined by Mansfield, Judge --- Mansfield, Judge joins with note --- Meyers, Judge dissenting opinion --- Judges White & Keller dissent

**OPINION BY:** BAIRD

**OPINION**

**[\*474]** *OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

Appellant was convicted by a jury of theft over $ 20,000.00. *Tex. Penal Code Ann. § 31.03*. Appellant pled "true" to the enhancement allegation and the trial judge assessed punishment at ten years confinement and ordered restitution in the amount of $ 6,000.00. *Tex. Penal Code Ann. § 12.33*. The Court of Appeals affirmed. *Cook v. State,* No. 04-93-00111-CR (Tex.App.--San Antonio, January 5, 1994) (Not published). We granted appellant's petition for discretionary review to determine whether the **[\*\*2]** charging instrument was so deficient as to not invest the trial court with jurisdiction. Tex. R. App. P. 200(c)(5). We will reverse.

I.

We set out the charging instrument below:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, duly organized, empaneled and sworn as such at the March term, A.D., 1991, of the 186th Judicial District Court of said County, in said Court, at said term, do present in and to said Court that in the County and State aforesaid, and anterior to the presentment of this indictment, and on or about the

1ST day of June 1987, hereinafter referred to as defendant, with intent to deprive the owner, namely:

Page 2

902 S.W.2d 471, *474; 1995 Tex. Crim. App. LEXIS 78, **2

ELIZABETH K. PRICE, of property, namely: LAWFUL CURRENCY OF THE UNITED STATES OF AMERICA said property, said property being other than real property which had A VALUE of Twenty Thousand Dollars ($ 20,000.00) or more, without the effective consent of the owner;

Before the commission of the offense alleged above, on the 24th day of June, A.D., 1977, in Cause no. CR 3-77-35, in the UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS AT DALLAS, the Defendant was convicted of the felony **[**3]** of FRAUD IN OFFER OF SALE OF SECURITIES AND MAIL FRAUD.

[Signed by Grand Jury Foreperson]

On direct appeal, appellant contended his conviction was void because the charging instrument was constitutionally deficient because it omitted appellant's name and omitted the *actus reus* of the offense. The Court of Appeals, with one justice dissenting, affirmed. *Cook, supra.* Relying upon *Studer v. State, 799 S.W.2d 263 (Tex.Cr.App. 1990)*, the Court held appellant waived the error by failing to object to the charging instrument prior to trial. *Cook*, slip op. pg. 3. Addressing appellant's constitutional argument, the court explained:

Only by the most hypertechnical of arguments can it be said that the instrument is not an "indictment." If

appellant had been acquitted, no appellate court would hold that the state could retry him because the instrument was not an indictment and therefore the trial court never acquired jurisdiction. In what sense then can it be said, after a conviction, that the instrument was not an indictment and the trial court did not acquire jurisdiction? For jeopardy **[*475]** purposes, it is plain that [appellant] has been convicted and punishment has **[**4]** been assessed for the offense of theft over $ 20,000 from [complainant] on June 1, 1987.

*Id.*, at 3-4.

We granted appellant's petition for discretionary review to determine whether a charging instrument which fails to charge "a person" still constitutes an indictment as contemplated by art. V, § 12(b).

II.

A.

The Texas Constitution guarantees to defendants the right to indictment by a grand jury for all felony offenses. 1 *Tex.Const. art. I, § 10. See also,* James C. Harrington, *Our Texas Bill of Rights*, 31 (Texas Civil Rights Project 1991). Art. I, § 10 provides in pertinent part:

Rights of accused in criminal prosecutions

In all criminal prosecutions the accused ... shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof ? and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary ... .

1 Almost twenty-five years ago we considered whether the requirement of an indictment was jurisdictional or a right that could be waived. *King v. State, 473 S.W.2d 43, 47 (Tex.Cr.App. 1971).* In

Page 3

902 S.W.2d 471, *475; 1995 Tex. Crim. App. LEXIS 78, **4

today's common parlance, the constitutional requirement of an indictment may be referred to as a fundamental systemic requirement, which is a right or requirement "so important that [its] implementation is mandatory." *Marin v. State, 851 S.W.2d 275, 280 (Tex.Cr.App. 1993)*. The author of the dissent, who also authored *Marin,* contends that *King* holds an indictment is not a fundamental systemic requirement because it is subject to waiver. Post at , n. 3; slip op. pg. 4, n.3. But this conclusion is derived from a misreading of *King* where we held art. I, § 10 is not violated by a defendant's waiver of an indictment under art. 1.141. *Id., 473 S.W.2d at 51.* However, we further explained that "*a felony information acts in lieu of or as a substitute for an indictment and its validity is therefore essential to the court's jurisdiction.*" *Id., at 51-52* (emphasis added). *See also, Lackey v. State, 574 S.W.2d 97, 100 (Tex.Cr.App. 1978).* Consequently, *King* holds that art. 1.141 merely allows the substitution of one type of charging instrument for another, but does not otherwise affect the fundamental systemic requirement that a valid charging instrument be presented in order to vest the trial court with jurisdiction.

[**5]

The *constitutional* requirement that felony offenses be prosecuted by indictment is firmly established. *See, King v. State, 473 S.W.2d 43, 47-49 (Tex.Cr.App. 1971)* ("The requirement that felonies be prosecuted by indictment has been followed in Texas since the outbreak of the revolution against Mexico."); *Hollingsworth v. State, 87 Tex. Crim. 399, 221 S.W. 978, 979 (Tex.Cr.App. 1920); overruled in part, King, supra; Kinley v. State, 29 Texas Ct. App. 532, 16 S.W. 339, 340 (App. 1891); and, Graham v. State, 43 Tex. 550 (Tex. 1875). See also, Ex parte Preston, 833 S.W.2d 515, 522 (Tex.Cr.App. 1992)* (Clinton, J., concurring); *and, Acosta v. State, 650 S.W.2d 827, 830 (Tex.Cr.App. 1983)* (Onion, P.J., concurring).

An indictment serves two functions. First, it provides notice of the offense in order to allow a defendant to prepare a defense. *Saathoff v. State, 891 S.W.2d 264, 266 (Tex.Cr.App. 1995); Evans v. State, 623 S.W.2d 924, 925 (Tex.Cr.App. 1981); Benoit v. State, 561 S.W.2d 810, 813 (Tex.Cr.App. 1977); Wilson v. State, 520 S.W.2d 377, 379 (Tex.Cr.App. 1975); and, Zweig v. State, 74 Tex. Crim.* 306, 171 S.W. [**6] 747, 753 (Tex.Cr.App. 1914) (Op on reh'g). *See also,* 1 G. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis,* 39 (Texas Legislative Counsel 1977). Second, an indictment serves a jurisdictional function. *Labelle v. State, 720 S.W.2d 101, 106 (Tex.Cr.App. 1986); Thompson v. State, 697 S.W.2d 413, 415 (Tex.Cr.App. 1985); and, Drumm v. State, 560 S.W.2d 944, 946-947 (Tex.Cr.App. 1977).* The filing of an indictment is essential to vest the trial court with jurisdiction over a felony offense. *See, King, 473 S.W.2d at 47-49; Ex carte Krarup, 422 S.W.2d 173, 174 (Tex.Cr.App. 1967); Melancon v. State, 367 S.W.2d 690, 692 (Tex.Cr.App. 1963); Kennedy v. State, 161 Tex. Crim. 303, 276 S.W.2d 291, 294 (Tex.Cr.App. 1954)* (Op. on reh'g); *Hollingsworth, 221 S.W. at 979; Turpin v. State, 86 Tex. Crim. 96, 215 S.W. 455, 456 (Tex.Cr.App. 1919); Turman v. State, 81 Tex. Crim. 320, 196 S.W. 181 (Tex.Cr.App. 1917); and, Lott v. State, 18 Texas Ct. App. 627* [*476] *(1885).* Jurisdiction vests only upon the filing of a valid indictment in the appropriate court. *Tex.Const. Art. V, § 12(b). See also, Crawford v. State, 624* [**7] *S.W.2d 906, 907 (Tex.Cr.App. 1981);* And, *Garcia v. Dial, 596 S.W.2d 524, 527 (Tex.Cr.App. 1980).*

B.

Prior to 1985, this Court consistently held that "substantive" defects in the charging instrument failed to vest the trial court with jurisdiction and, therefore, a conviction on a substantively defective charging instrument could be challenged for the first time on appeal. *Studer, 799 S.W.2d at 267; Thompson, 697 S.W.2d at 415; Green v. State, 571 S.W.2d 13, 14-15 (Tex.Cr.App. 1978); Ex parte Garcia, 544 S.W.2d 432, 432-433 (Tex.Cr.App. 1976); American Plant Food Corp. v. State, 508 S.W.2d 598, 603 (Tex.Cr.App. 1974); Pospishel v. State, 95 Tex. Crim. 625, 255 S.W. 738 (Tex.Cr.App. 1923); and, Woodard v. State, 86 Tex. Crim. 632, 218 S.W. 760 (Tex.Cr.App. 1920).* This rule developed over more than a century of decisions in which we interpreted art. I, § 10 to create a "constitutional" requirement that a charging instrument allege all elements of the offense in order to constitute an indictment. *See, Brasfield v. State, 600 S.W.2d 288, 301-302 (Tex.Cr.App. 1980)* (Op. on reh'g); *and, Williams v. The State, 12 Texas Ct. App. 395, 400-401* (Court [**8] of Appeals 1882). *See also,* George E. Dix, *Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform,* 38 Baylor L. Rev. 1, at

Page 4

902 S.W.2d 471, *476; 1995 Tex. Crim. App. LEXIS 78, **8

13-22 (1986). Accordingly, where the charging instrument omitted an element of the offense the indictment was void and the trial court lacked jurisdiction. *See e.g., Gengnagel v. State, 748 S.W.2d 227, 229 (Tex.Cr.App. 1988)*; *Thompson, 697 S.W.2d at 415*; *Ex parte Luddington, 614 S.W.2d 427, 428 (Tex.Cr.App. 1981)*; *Brown v. State, 558 S.W.2d 471, 472 (Tex.Cr.App. 1977)*; *Ex parte Cannon, 546 S.W.2d 266, 273-274 (Tex.Cr.App. 1975)*; *Jones v. State, 388 S.W.2d 716 (Tex.Cr.App. 1965)*; *and*, *Scott v. State, 171 Tex. Crim. 53, 344 S.W.2d 457 (Tex.Cr.App. 1961)*.

C.

Frustrated with the common practice of defendants withholding substantive defects at trial and then raising them on appeal in order to vitiate the conviction, the Texas Legislature in 1985 proposed an amendment to *art. V, § 12 of the Texas Constitution* which authorized the Legislature to prescribe by statute the effects of substantive defects in the charging instrument. The amendment provided:

> An indictment is a written instrument **[**9]** presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments, including their contents, amendment, sufficiency and requisites are provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

Art. V, § 12(b). In tandem with the constitutional amendment, the Legislature also drafted implementing legislation in the form of an amendment to Tex. Code Crim. Proc. Ann. art. 1.14. Art. 1.14(b) provided in pertinent part:

> If the defendant does not object to a defect, error, or irregularity of form or substance in the indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and may no raise the objection

on appeal or in any other postconviction proceeding. ...

Art. 1.14(b) automatically took effect upon the voters approval of the amendment to art. V, § 12. *Studer,* **[**10]** *799 S.W.2d at 266, n. 3.*

The amendment to art. V, § 12 was notable on two grounds. First, by granting to the Legislature the authority to prescribe legislation regulating the procedures and contents of charging instruments, the amendment reversed a century of precedent regarding the constitutional implications of charging instrument defects. *Studer, 799 S.W.2d at 289-290* (Clinton, J., concurring).

**[*477]** Second, the amendment provided, for the first time in our history, a *constitutional* definition of an indictment. Art. V, § 12(b) defines an "indictment" as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." Art. V, § 12(b). Therefore, to comprise an indictment within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense. Art. V, § 12(b). *See also, Luken v. State, 780 S.W.2d 264, 267 (Tex.Cr.App. 1989)*; And Robert R. Barton, Since 1985, Can An Indictment or Information Be "Fundamentally" Defective for Failing to Charge an Offense?, *25 St. Mary's L.J. 217, 225-226 (1993)*.

III.

In *Studer,* we addressed the second prong of the constitutional **[**11]** definition, namely, the requirement that a charging instrument charge the commission of an offense. [2] Following his conviction on a plea of *nolo contendere,* Studer contended for the first time on appeal that his conviction was void because the information omitted an element of the offense. *799 S.W.2d 263 at 264-265.*

> 2    In addressing appellant's ground for review, we couched the issue as follows: "Does the wording ... 'An indictment or information is a written instrument ... charging a person with the commission of an offense' mean it is an instrument that *alleges all the constituent elements of an offense* or something else (specifically something less)." *Id., 799 S.W.2d at 266* (emphasis in original).

Page 5

902 S.W.2d 471, *477; 1995 Tex. Crim. App. LEXIS 78, **11

In a thorough analysis of the legislative history of art. V, § 12(b) and art. 1.14(b) we observed the intent behind the amendments was not to "change what constitutes a substance defect, but rather only its effect" if not raised prior to trial. *Id., at 268.* Thus, a substantive defect in the charging **[**12]** instrument remains a defect and renders the charging instrument subject to a motion to quash. However, we further noted that because the omission of an element of the offense was "still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element." *Ibid.* Accordingly, we concluded that a charging instrument is not required to allege every element of the offense in order to allege "the commission of an offense" as required by art. V, § 12(b). *Id., at 272.*

From *Studer* it follows that with regard to the second prong of the definition for an indictment, a substantively defective indictment is sufficient to vest the trial court with jurisdiction. And in the wake of *Studer,* we have consistently held a charging instrument is not constitutionally void despite the omission of one or more elements of the offense. *Rodriguez, 799 S.W.2d 301, 303 (Tex.Cr.App. 1990)* (indictment for evading arrest failed to allege defendant knew complainant was police officer who was attempting to arrest him); *Ex parte Morris, 800 S.W.2d 225, 227 (Tex.Cr.App. 1990)* (forgery indictment failed to allege that writing **[**13]** purported to be act of another who did not authorize act); And, *Ex parte Gibson, 800 S.W.2d 548, 551 (Tex.Cr.App. 1990)* (indictment failed to allege date of offense). *See also, State v. Murk, 815 S.W.2d 556, 558 (Tex.Cr.App. 1991).*

IV.

Today we are called upon to decide the question unanswered by *Studer:* does a charging instrument constitute an indictment within the constitutional definition of art. V, § 12(b) if it completely fails to charge "a person"?

While art. V, § 12(b), through its implementing legislation, art. 1.14(b), "de-constitutionalized" the requirement that an indictment allege every element of the offense, the amendment nevertheless provided a definition for an "indictment" which had heretofore been defined only statutorily. Thus, art. V, § 12(b) established constitutional requisites for a charging instrument to constitute an indictment. To constitute an indictment, the charging instrument must charge: (1) a person, and (2) the commission of an offense. It is clear, however, that if the charging instrument fails to charge a person, then it is not an indictment as required by art. V, § 12(b) and art. I, § 10.

The conclusion that art. V, § 12(b) **[**14]** establishes constitutional requisites for an **[*478]** indictment is supported by construing art. V, § 12(b) and art. I, § 10 in accordance with standard rules of constitutional interpretation. As a first step, we attempt to effectuate the intent of the framers of a constitutional amendment, and the voters who approved that amendment. *Studer, 799 S.W.2d at 272*; *City of El Paso v. El Paso Community College District, 729 S.W.2d 296, 298 (Tex. 1986)*; *Gragg v. Cayuga Independent School Dist., 539 S.W.2d 861, 866 (Tex. 1976)*; *and, Farrar v. Board v. Trustees of Employees Retirement System of Texas, 150 Tex. 572, 243 S.W.2d 688, 692 (Tex. 1952).* While art. V, § 12(b) was clearly intended to eliminate the requirement that an indictment charge every element of an offense, it is equally apparent that neither the Legislature nor the voters intended to abrogate the constitutional right to a charging instrument sufficient to constitute an indictment. *Studer, 799 S.W.2d at 272, n. 12* ("The right to indictment by a grand jury ... has not been abolished ... ."). *See also,* Dix, 38 Baylor L. Rev. at 26, 28-34 (1986) (legislative history indicates legislators did not intend to eliminate **[**15]** necessity of an indictment). Consequently, art. V, § 12(b) cannot be read to dispense with the necessity of filing an "indictment" in the trial court in order to vest the court with jurisdiction and provide notice to the defendant.

When construing constitutional provisions, we are required to interpret the Constitution as a whole, rather than piecemeal. *Oakley v. State, 830 S.W.2d 107, 110 (Tex.Cr.App. 1992)*; *and, Pierson v. State, 147 Tex. Crim. 15, 177 S.W.2d 975, 977 (Tex.Cr.App. 1944).* Thus, constitutional provisions are not to be examined in isolation from comparable provisions. In *Oakley* we explained:

> ... the Constitution must be read as a whole so as to give effect to each and every provision. ... No part of the Constitution should be given a construction which is repugnant to express authority contained in another part, if it is possible to harmonize the provisions by any reasonable construction.

Page 6

902 S.W.2d 471, *478; 1995 Tex. Crim. App. LEXIS 78, **15

*Id., 830 S.W.2d at 110* (citations omitted). *See, also, Clapp v. State, 639 S.W.2d 949, 951 (Tex.Cr.App. 1982); Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627, 634 (Tex. 1939); Collingsworth County v. Allred,* **[**16]** *120 Tex. 473, 40 S.W.2d 13, 17 (Tex. 1931)*; and, *Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130, 137 (Tex. 1931)*. Because art. V, § 12(b) and art. I, § 10 address similar subjects, we are compelled to examine each provision in context and attempt to give effect to both unless they are irreconcilable. *Clapp, 639 S.W.2d at 951-952.* Comparing art. V, § 12(b) and art. I, § 10, we find they are complementary rather then conflicting. Art. V, § 12(b) should be read in context to art. I, § 10: the latter established the right to an indictment, and the former establishes the constitutional definition for what constitutes an indictment. Although art. V, § 12(b) subsequently authorizes the Legislature to prescribe the requisites and sufficiency of indictments, we do not read this grant of authority so broadly as to authorize the Legislature to prescribe rules which undermine the constitutional definition of an indictment because this would render art. V, § 12(b) internally inconsistent. *See, Gallagher v. State, 690 S.W.2d 587, 591-592 (Tex.Cr.App. 1985)* ("Constitutional provisions will not be construed to be ambiguous or contradictory if such construction is possible."); **[**17]** *and, Clapp, 639 S.W.2d at 951.* ("... courts should avoid a construction (of constitutional provisions) which renders any provision meaningless or inoperative and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory.") Since "the language used (in a constitutional provision) must be presumed to have been carefully selected," we do not believe the Legislature would provide a constitutional definition of an indictment and then subsequently authorize itself to prescribe statutory rules which undermine that definition. *Gallagher, 690 S.W.2d at 592.*

Moreover, a construction of art. V, § 12(b) which places the constitutional definition of an indictment within the purview of art. 1.14(b) is problematic because it subjects a constitutional provision to statutory authority. It is fundamental to constitutional and statutory construction that the Legislature lacks the authority to enact a statute **[*479]** which conflicts with a provision of the Constitution. In *Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269 (Tex. 1944)*, the Texas Supreme Court expressed this proposition as follows:

The power to make laws **[**18]** is vested through the Constitution in the Legislature. ... However, the Legislature does not have the power to enact any law contrary to the provisions of the Constitution. If any law or part thereof, undertakes to nullify the protection furnished by the Constitution, such law, or part thereof, that conflicts with the Constitution is void.

*Id., 179 S.W.2d at 273. See also, Maher v. Lasater, 163 Tex. 356, 354 S.W.2d 923, 924-925 (Tex.1962); City of Fort Worth v. Howerton, 149 Tex. 614, 236 S.W.2d 615, 618 (Tex.1951); Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022, 1024 (Tex. 1943); Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265, 274 (Tex. 1932); Cameron v. Connally, 117 Tex. 159, 299 S.W. 221, 223 (1927); Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S.W. 528, 532 (Tex.1912); and, 12A Tex.Jur.3d, Constitutional Law, § 6.* "Certainly, a statute cannot override the Constitution." *Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147, 155 (Tex. 1942)*. Thus, as Judge Clinton stated in his concurring opinion in *Studer:* "[The] meaning and import of Article V, § 12(b), insofar as it defines 'indictment or information,' **[**19]** is a question for this Court. The Legislature is free to prescribe 'contents ... sufficiency, and requisites,' [of an indictment] *but only within constitutional parameters."* [3] *Id., 799 S.W.2d at 293* (Clinton, J., concurring). *See also,* Dix, 38 Baylor L.Rev. at 40-41.

3    All emphasis is supplied by author unless otherwise indicated.

Finally, although we attempt to construe a constitutional provision according to its literal language, we are nonetheless obliged to avoid a construction which renders an absurd or unreasonable result. *16 Am.Jur.2d, Constitutional Law, § 112*, p. 464. *See also, In re Thoma, 873 S.W.2d 477, 489 (Tex.Rev.Trib. 1994); and, Cramer, 167 S.W.2d at 155* ("...constitutional and statutory provisions will not be so construed or interpreted as to lead to absurd conclusions ... if any other construction or interpretation can reasonably be indulged in ..."). For instance, in *DeDonato v. State, 819 S.W.2d 164 (Tex.Cr.App. 1994)*, Judge Maloney observed that with **[**20]** regard to the art. V, § 12's provision relating to court jurisdiction,

Page 7

902 S.W.2d 471, *479; 1995 Tex. Crim. App. LEXIS 78, **20

...a literal reading of article V, § 12(b) could lead to absurd results. If the mere presentment of an indictment could vest jurisdiction in any court, then, absent an objection from the defendant, a capital murder case could be properly tried in a county court. I cannot believe that such a result was the legislature's or the voter's intent.

*Id., at 168* (Maloney, J., concurring, joined by Baird and Benavides, JJ.). *See also, Marin, 851 S.W.2d at 279* ("[A] person may not be tried in Texas for a felony offense by the County Court at Law, even if he consents.").

Similarly, we do not believe a reasonable construction of art. V, § 12(b) permits the conclusion that the constitutional definition of an indictment falls within the purview of art. 1.14(b) because this construction clearly leads to an absurd result. If art. V, § 12(b) subjects *all* requisites of an indictment to the scope of art. 1.14(b), and hence, to waiver, then we can conceive of no point at which a charging instrument is so deficient as to *not* constitute an indictment. Clearly, this construction of art. V, § 12(b) **[**21]** would permit a blank sheet of paper to suffice for a valid indictment. We do not believe the Legislature or the voters could have intended this result when approving art. V, § 12(b). Nor do we believe this construction of art. V, § 12(b) comports with the right to an indictment guaranteed by art. I, § 10.

We therefore hold that the definition of an indictment provided by art. V, § 12(b) establishes *constitutional* requisites for an indictment. Art. V, § 12(b) does not authorize the Legislature to statutorily change these fundamental requirements. *See, Howerton, 236 S.W.2d at 618*; *and, Dendy, 179 S.W.2d at 273.* Accordingly, to constitute an indictment as required by art. I, § 10 and art. V, § 12(b), a charging instrument must at least charge "*a person*," with **[*480]** the commission of an offense. [4] If the charging instrument fails to charge "a person" then it is not an indictment and does not vest the trial court with jurisdiction. [5] Moreover, because a valid indictment is essential for jurisdiction, it is not subject to waiver. *Crawford, 624 S.W.2d at 907*; *and, Lackey v. State, 574 S.W.2d 97, 100 (Tex.Cr.App. 1978).*

[4] Perhaps one could argue that the instant charging instrument, by simply stating "the

defendant," charged "a person." However, such a construction would effectively nullify the constitutional definition of art. V, § 12(b). Rather, we believe art. V, § 12(b) requires that an indictment charge a particular person. This interpretation is consistent with the statutory definition of an indictment provided by *Tex. Code Crim. Proc. Ann. art. 21.01*: "An indictment is the written statement of a grand jury accusing a person *therein named* of some act or omission which, by law, is declared to be an offense."

[**22]

[5] We pause to note that we are not addressing a situation where the charging instrument alleges an incorrect name, *see*, *Tex. Code Crim. Proc. Ann. arts. 26.07* and *26.09* (accused is obliged to state true name when charging instrument is read at arraignment), or where the person's name is unknown and the charging instrument alleges only a physical description, Mt *Tex. Code Crim. Proc. Ann. art. 21.07* ("... When the name of the person is unknown to the grand jury, that fact shall be stated, and if it be the accused, a reasonably accurate description of him shall be given in the indictment."). In such cases, the charging instrument is an indictment within the meaning of art. V, § 12(b) because whether erroneously or through a lack of information, the indictment still charges "a person."

V.

In the instant case, the charging instrument wholly failed to charge "a person." Thus, the charging instrument did not meet the first prong of the constitutional definition of art. V, § 12(b). Consequently, the charging instrument was not an indictment as required by art. V, § 12(b) and art. I, § **[**23]** 10, and did not vest the trial court with jurisdiction. Therefore, appellant's conviction is void.

The judgment of the Court of Appeals is reversed and we remand this cause to the trial court with instructions to dismiss the prosecution in this cause. [6]

[6] Appellant's remaining ground for review is dismissed.

BAIRD, Judge

Mansfield, J. joins with note.

Page 8

902 S.W.2d 471, *480; 1995 Tex. Crim. App. LEXIS 78, **

White and Keller, JJ., dissent.

(Delivered June 28, 1995)

En banc

**CONCUR BY:** CLINTON; MALONEY; Mansfield

**CONCUR**

[**24] *CONCURRING OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge

For the reasons stated in Judge Meyers' dissenting opinion, I concur in the Court's judgment in this cause. I agree with Judge Meyers that the majority's disposition is in all things inconsistent with the rationale and holding of *Studer v. State, 799 S.W.2d 263 (Tex.Cr.App. 1990)*, for precisely the reasons he gives in his dissent. I also agree with him that *Studer* was wrongly decided. *Id., at 286-293* (Clinton, J., concurring). Moreover, something very similar to the approach Judge Maloney now advances in his concurring opinion, derived from his opinion for the Court in *Fisher v. State, 887 S.W.2d 49 (Tex.Cr.App. 1994)*, was suggested at the time of *Studer,* but rejected. *Id., at 293*. I can only conclude that the majority's disposition today is fundamentally at odds with *Studer.*

Unlike Judge Meyers, I have no compunction about overruling *Studer, stare decisis* notwithstanding. As I observed in a companion case to *Studer, Rodriguez v. State, 799 S.W.2d 301 (Tex.Cr.App. 1990)*:

"In attempting to pluck what it perceives to be the stray thread of fundamentally defective [**25] indictments from the criminal jurisprudence, the majority threatens to unravel the whole fabric of our criminal procedure."

[*481] *Id., at 304* (Clinton, J., dissenting). See *Studer v. State, supra, 799 S.W.2d 263 at 292* (Clinton, J., concurring). At the risk of mixing metaphors, I would nip that threat as close to the bud as possible, and admit that we are overruling *Studer.* Because, as Judge Meyers ably illustrates, the Court all but does so, I concur in its judgment. In failing expressly to overrule *Studer,*

however, the Court is intellectually dishonest, and for that reason I cannot join its opinion.

CLINTON, Judge

(Delivered: June 28, 1995)

EN BANC

*CONCURRING OPINION*

MALONEY, J.

I join the opinion of the majority, but write separately to emphasize that the majority's opinion is consistent with and strengthened by the principles set forth in *Fisher v. State, 887 S.W.2d 49 (Tex. Crim. App. 1994)*. I also write to point out that the dissenting opinion rests upon a flawed reading of this Court's opinion in *Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990)*.

I.

The majority correctly states that the constitutional amendments in 1985 provided for the first [**26] time a definition of "indictment." *Majority opinion at 6*. Under this new definition, an "indictment" is an instrument that charges (1) a person (2) with the commission of an offense. *Id*. at 6.

This Court in *Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990)*, held that "the commission of an offense" was still alleged despite the omission of an element of the offense. We expounded on this notion in *Fisher, supra*, where we discussed the problem of determining sufficiency of the evidence in the event of an indictment, like that in *Studer,* that does not allege all of the elements of the offense. We began by recognizing the relationship between the indictment, a defendant's expectations about what he would be tried for, the jury instructions, and ultimately the appellate court's review of the sufficiency of the evidence to support the conviction. We emphasized that "there must be a connection between the crime with which a defendant is charged in the indictment and a reviewing court's role in reviewing the sufficiency of the evidence to support a conviction." *Fisher, 887 S.W.2d at 53*. Accordingly, we concluded that it was necessary to be able to identify the [**27] offense with which the defendant was charged in the indictment, and we set forth a scheme by which that could be accomplished even in the face of an inadequate indictment. *Id. at 55-58*.

Page 9

902 S.W.2d 471, *481; 1995 Tex. Crim. App. LEXIS 78, **27

It logically follows from our reasoning and holding in *Fisher* that in order to charge "the commission of an offense" for purposes of Article V, § 12, there must be enough alleged to enable one to identify the offense. [1] This principle also logically applies to the portion of the constitutional definition that the instrument charge "a person." Enough must be alleged so that a person is identifiable in the body of the indictment as one charged with the commission of an offense. No person is named or described as the accused in the indictment in the instant case. Therefore, appellant correctly asserts that the charging instrument is constitutionally deficient. For these reasons, as well as those discussed in the majority opinion, I join the opinion of the Court.

[EDITOR'S NOTE: TEXT WITHIN THESE SYMBOLS [O<>O] IS OVERSTRUCK IN SOURCE.]

1   In *Fisher* we stated,

> We assume in this opinion that the indictment alleges enough to identify the offense charged. For example, an indictment might allege only four of five elements of a particular offense. By comparing the allegations in the indictment, albeit incomplete, with various penal code provisions, one should be able to determine which entire offense the State is alleging.

*Fisher, 887 S.W.2d at 55 n.10.* Slightly further elaboration is needed to put this approach into practice. If it is the case that all of the allegations in the indictment are common to more than one offense, and none are distinguishing to any single offense, then I would hold that the offense charged is that to which the fewest elements must be added to those alleged in order to arrive at a complete offense. If the allegations in the indictment are so deficient that one cannot identify the offense alleged, then the indictment is insufficient to confer subject matter jurisdiction.

[TEXT DELETED BY COURT EMENDATION]

**[\*\*28]** II.

The dissent disparages the majority for "revis[ing]"

the essential holding of *Studer*[.]" *Dissenting opinion* at 1 (Meyers, J., dissenting). Curiously, the dissent's own rendition of the Court's holding in *Studer* represents **[\*482]** a significant departure from the actual language of the opinion.

The dissent summarizes the holding in *Studer* as follows:

> A written instrument presented to a court by a grand jury which does not charge "an offense" is, nevertheless, an indictment, and, therefore, invests the court with jurisdiction.

*Id.* at 1. It then goes on to revisit and track the analysis in *Studer* leading to this purported holding. First noted is that *Studer* held that the failure to allege all of the elements of the offense is a defect of substance. This is accurate. The dissent then identifies the first of the four statutory defects of substance as "failure to charge an offense[.]" *Id.* at 2. Following this, the dissent states that *Studer* therefore concluded that "a written instrument which does not allege every constituent element of a statutory crime is substantively defective *because it does not charge an offense.*" *Id* **[\*\*29]** . (emphasis added).

The flaw in this line of reasoning springs from a loose rephrasing of the first of the statutorily defined defects of substance. Article 27.08 provides that it is a defect of substance of an indictment or information "that it does not appear therefrom that an offense against the law was committed by the defendant." *Tex. Code Crim. Proc. Ann. art. 27.08(1)*. The dissent restates this as providing that it is a defect of substance of an indictment or information that it "does not charge an offense." I cannot agree with this broad translation. "That it does not *appear* that an offense was committed" is far different from "that it does not *charge* an offense."

This distinction is critical in light of the constitutional requirement that an indictment charge "the commission of an offense." *Tex. Const. Art. V, § 12*. Under the dissent's rephrasing of the matter, article 27.08 permits waiver of what the constitution requires--the constitution requires that an indictment charge an offense; yet (according to the dissent's rephrasing) article 27.08 provides that the "failure to charge an offense" is a defect of substance which, under article 1.14(b) is waiveable. Under **[\*\*30]** a true reading of the provisions,

Page 10

902 S.W.2d 471, *482; 1995 Tex. Crim. App. LEXIS 78, **30

the constitution requires that an indictment charge the commission of an offense; article 27.08 provides that it is a defect of substance "that it does not *appear* that an offense was committed." [2] (emphasis added). The constitution speaks in terms of what is necessary to *charge* the commission of an offense; article 27.08 speaks in terms of whether it *appears* from the allegations that an offense was committed. The essential holding of *Studer* was that the absence of an element made it *appear* that an offense was not committed (a defect of substance), but was nevertheless sufficient to *charge* the commission of an offense for constitutional purposes of jurisdiction. [3]

2 The dissent points out that article 27.08 has long been interpreted to mean that an indictment is substantively defective if it does not charge an offense, despite its language to the effect that it does not *appear* that an offense was committed. *Dissenting opinion* at 2, n.2 (Meyers, J., dissenting). These interpretations, however, were made prior to the constitutional amendments in 1985 which added the definition of "indictment." As emphasized in the majority's opinion, constitutional and statutory provisions should be interpreted in harmony, if possible, so as to give meaning and effect to both. *See Majority opinion* at 9-11.

3 It is elemental that a trial court must have subject matter jurisdiction. As explained by this Court,

A court of competent jurisdiction means a court that has jurisdiction of the offense. [citation omitted] . . . One of the requisite elements of 'jurisdiction' is jurisdiction over the subject matter. *The expression 'subject matter,' as used with reference to the problem of jurisdiction, in criminal law, refers to the offense.*

*Hulton v. State, 351 S.W.2d 248, 255 (Tex. Crim. App. 1961)* (emphasis added). This Court has further stated that jurisdiction means "the right to adjudicate concerning the *subject matter* in a given case." *Garcia v. Dial, 596 S.W.2d 524, 527 (Tex. Crim. App. 1980)* (quoting *Ex parte*

*Armstrong, 110 Tex. Crim. 362, 8 S.W.2d 674, 676 (1928)).* Without subject matter jurisdiction a court has no authority to act.

The constitutional and statutory amendments and our interpretation of them in *Studer,* have not eliminated the basic notion of subject matter jurisdiction. The Texas Constitution as amended provides that "the presentment of an indictment or information to a court invests the court with jurisdiction of the cause." In order to give meaning to this provision and the constitutional requirement that the indictment charge the commission of "an offense," they must be construed as requiring that the indictment allege enough to identify the offense charged and accordingly invest subject matter jurisdiction. This is also consistent with the principles set forth in *Fisher,* as discussed above.

[**32] [*483] As the majority points out, in construing constitutional provisions, "we are obliged to avoid a construction which renders an absurd or unreasonable result." *Majority opinion* at 11. In order to charge "the commission of an offense" an indictment must allege *enough* so that the offense alleged can be identified. This vests the court with subject matter jurisdiction. *See* fn. 2, supra. Article 1.14(b) and 27.08 do not permit waiver of subject matter jurisdiction. Rather, if enough is alleged to enable the identification of an offense for purposes of subject matter jurisdiction under the constitution, but the allegations are nevertheless deficient so that technically it does not appear that an offense was committed, there is a waiveable defect of substance. This is what happened in *Studer.*

The dissent repeatedly states that in *Studer* this Court decided that the indictment there did not charge an offense. The dissent quotes the following language from *Studer:*

The change in Art. 1.14(b) requires, among other things, that substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise the objection on appeal or by collateral [**33] attack. If omitting an element from an indictment is still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment

Page 11

902 S.W.2d 471, *483; 1995 Tex. Crim. App. LEXIS 78, **33

despite the omission of that element.

*Dissenting opinion* at 3 (quoting *Studer, 799 S.W.2d at 268*). Nowhere in this quoted language or anywhere else in the opinion can I find that the Court stated that the indictment failed to charge an offense. The issue presented in *Studer* was whether the indictment's *failure to allege all of the elements of an offense* could be raised for the first time on appeal, or whether such defect was in fact waived. [4] The defect presented in *Studer* was not such that the offense (and accordingly the subject matter jurisdiction of the court) could not be determined. There was an absence of one element. [5] Indeed the Court spoke throughout the opinion in terms of "omitting an element", "the omission of that element", that an indictment "need not necessarily allege every element", a "missing element", "if an element of an offense is omitted", "the omission of an element", "missing an element", "each constituent element", "the absence of an element", and "each element of the [**34] offense". Nowhere in our opinion in *Studer* is there any discussion of the possibility that an indictment might omit more than one or even all elements of an offense and remain constitutionally sound.

> [4] *Studer* presented the issue as
>
>> Does the wording "An indictment or information is a written instrument . . . charging a person with the commission of an offense" mean it is an instrument that *alleges all the constituent elements of an offense* or something else (specifically something less).
>
> *Studer, 799 S.W.2d at 266* (emphasis in original).
> [5] We readily identified the offense charged, but noted the absence of a single allegation. We stated that the defendant was charged with indecent exposure, but the indictment failed to allege the act or acts relied upon to constitute recklessness.

With these comments, I join the opinion of the majority.

MALONEY, J.

Delivered June 28, 1995

Mansfield, J., joins.

Mansfield, J., joins this opinion with the following note: I join the majority opinion of the Court, agreeing that a charging instrument that fails to charge "a person" is not an indictment as defined by art. V, § 12(b) and *art. I, § 10 of the Texas Constitution.* I am troubled, however, by the failure of trial counsel to object to the error in the charging instrument prior to trial, given that the error was obvious. Had this been done, a substantial amount of time and resources (both State's and appellant's) would have been saved, and justice would have been better served.

**DISSENT BY:** MEYERS

**DISSENT**

*DISSENTING OPINION ON APPELLANT'S PETITION FOR* [**35] *DISCRETIONARY REVIEW*

I believe that *Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990)* was wrongly decided, mainly for the reasons given by the majority in this case. Accordingly, I do not disagree, at least in the abstract, with most of what the majority opinion has to say. Where I part company with my colleagues on this issue is at the point where they revise the essential holding of *Studer* to support a distinction which is at odds both with logic and with the law.

The Texas Constitution defines "indictment" as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense" [1] and it [*484] provides that "presentation of an indictment . . . to a court invests the court with jurisdiction of the cause." *Tex. Const. art. 5, § 12.* In *Studer* we held that a written instrument presented to a court by a grand jury which does not charge "an offense" is, nevertheless, an indictment and, therefore, invests the court with jurisdiction. Today, a majority of the Court holds that a written instrument presented to a court by a grand jury which does not charge "a person" is not an indictment and does not, therefore, invest the court with [**36] jurisdiction. The basis for this remarkable distinction is not made clear by the majority opinion, and because the requirement that an indictment charge "an offense" is given by the same constitutional provision requiring it to charge "a person," I cannot subscribe to the view that one requirement is forfeitable while the other is not.

> [1] The Code of Criminal Procedure describes it somewhat differently as "the written statement of

Page 12

902 S.W.2d 471, *484; 1995 Tex. Crim. App. LEXIS 78, **36

a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense." *Tex. Code Crim. Proc. art. 21.01.*

The Court's mistake, I think, derives from a fundamental misunderstanding of our opinion in *Studer.* The majority seems to think that, under the *Studer* rationale, an indictment may be sufficient to charge an offense even though it fails to allege all essential elements of that offense so long as one can tell from examining it what offense the State intended to charge. *See Fisher v. State, 887 S.W.2d 49 (Tex. Crim. App. 1994)*; **[**37]** *Thomason v. State, 892 S.W.2d 8 (Tex. Crim. App. 1994).* But that was not *Studer's* rationale at all. What this Court actually held in *Studer,* and in its companion case of *Rodriguez v. State, 799 S.W.2d 301 (Tex. Crim. App. 1990),* was that any written instrument returned by a grand jury is an indictment for purposes of investing a court with jurisdiction, whether it charges "an offense" or not. A brief restatement of the argument given in *Studer* makes this perfectly clear.

We began our analysis with the proposition that failure of an indictment or information to allege all constituent elements of an offense is a defect of substance and that "the amendments to Art. 1.14, V.A.C.C.P., and Art. V, § 12 did not, on their face, change this long-standing precedent." *799 S.W.2d 263 at 268.* We conceded that there are only four defects of substance known to Texas criminal law: failure to charge an offense 2, failure to allege a date within the statutory period of limitation, allegation of a defense, and apparent lack of jurisdiction. *Tex. Code Crim. Proc. art. 27.08*; *799 S.W.2d at 267.* We concluded that a written instrument which does not allege every constituent element of **[**38]** a statutory crime is substantively defective because it does not charge an offense. 3

> 2    Article 27.08, Subdivision 1 says that an indictment or information is substantively defective if "it does not appear therefrom that an offense against the law was committed by the defendant." This Court has always understood the statute to mean that an indictment is substantively defective if it does not charge an offense. The cases which illustrate this fact are legion. For present purposes, however, it is sufficient to quote from only one of the most famous and influential.
>
> Only if the defect be of such a

degree as to charge no offense against the law, and thereby be void, will the exception to the substance be considered for the first time on appeal under Article 27.08(1), supra.

*American Plant Food Corp. v. State, 508 S.W.2d 598, 604 (Tex.Cr.App. 1974).* Any suggestion, therefore, that an indictment may be sufficient to charge an offense within the meaning of the Constitution, yet "appear" not to charge an offense within the meaning of article 27.08(1), would represent an interpretation of the latter so radically different from any thus far contemplated by our precedents as to be entirely novel. For present purposes, however, it is enough to know that our opinion in *Studer* expressly eschewed any departure from existing case law on the subject.

**[**39]**

> 3    Clearly, omission of a constituent element does not suggest that the prosecution is limitations barred, that the alleged conduct was excused or justified, or that the subject matter of the prosecution is otherwise beyond the trial court's jurisdiction. Accordingly, if omission of a constituent element is indeed a defect of substance, it must be because a failure to plead all offensive elements is tantamount to a failure to charge an offense.

Having thus decided that the purported indictment in *Studer* did not charge an offense, we next proceeded to inquire whether the failure of a written instrument to charge an offense means that it is not an indictment within the meaning of the *Texas Constitution, article V, section 12.* Reasoning that the Code of Criminal Procedure, article 1.14(b), requires ill defects of substance in an indictment, including its failure to charge an offense, to be raised prior to trial, we **[*485]** inferred that the Legislature did not mean to imply a written instrument is not really an "indictment" unless it charges the commission of an offense.

> The change in Art. **[**40]** 1.14(b) requires, among other things, that substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise the objection on appeal or by collateral attack. If omitting an element

Page 13

902 S.W.2d 471, *485; 1995 Tex. Crim. App. LEXIS 78, **40

from an indictment is still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element.

*799 S.W.2d 263 at 268.*

It is thus apparent that Studer was making exactly the same argument Cook makes in the instant cause. He argued that defects in an indictment must be raised before trial only if the defective instrument is actually an indictment under the constitutional definition. He maintained that a written instrument which does not charge an offense is not an indictment, just as Cook now maintains that a written instrument which does not charge a person is not an indictment. This argument, however, was plainly and unambiguously rejected in *Studer.* That the Court now accepts it in the instant cause represents a significant revision of our *Studer* position which, in fairness to bench and bar alike, we ought to acknowledge.

Mind you, I am not irrevocably opposed to such a revision. Indeed, **[**41]** I am sympathetic with the view, expressed in the majority opinion here, that an indictment does not "invest a court with jurisdiction," as the Constitution puts it, unless it "charg[es] a person with the commission of an offense." This is not because I think that a written instrument *should* be made a necessary prerequisite to the exercise of a trial court's jurisdiction, any more than I think it *should not.* In my opinion, the lawmakers of this State may choose to predicate the exercise of trial-level criminal jurisdiction upon the existence of a written instrument if they see fit to do so. But, should they instead decide to dispense with the requirement of a charging instrument altogether, I would not be inclined to think it unconstitutional. After all, the grand jury screening to which defendants are constitutionally entitled in felony cases can be accomplished without memorializing the process in a formal document, and the notice to which defendants are constitutionally entitled in all criminal cases can be provided from a different source. *Tex. Const. art. I, § 9.*

Nevertheless, it is apparent that the people of Texas have not in fact opted to dispense with formal charging **[**42]** instruments in criminal cases. Indeed, they have deliberately chosen to require an indictment or information before "invest[ing] [a] court with jurisdiction" of a criminal case. [4] And, lest there be any

doubt about what specifically is necessary for the exercise of such jurisdiction, they have gone on expressly to say that "a written instrument presented to a court by a grand jury charging a person with the commission of an offense" is required. This seems pretty clear to me.

4 Ironically, the majority seems to concede that, under our prior law, as interpreted in *King v. State, 473 S.W.2d 43 (Tex. Crim. App. 1971),* indictments were not really jurisdictional, since they could be waived. Slip Op. at 2 n.1. Jurisdictional defects, of course, are not waivable. But the majority then goes on to describe "the constitutional requirement of an indictment" as a "fundamental systemic requirement" under our holding in *Marin v. State, 851 S.W.2d 275 (Tex. Crim. App. 1993)* because it is "so important that it is mandatory absent an express waiver." This is wrong, of course. Under *Marin,* fundamental systemic requirements are not waivable at all. Perhaps it is the majority's view that the constitutional requirement that an indictment name "a person," while not jurisdictional, is nevertheless cognizable on direct appeal even absent a trial objection because it is a waivable right of the defendant. If so, the majority opinion is especially interesting, since the Constitution does not seem to make the indictment itself a right of the defendant. The truth is that, prior to the amendment of article 5, section 12 in 1985, the Texas Constitution did not provide that any specific written instrument was necessary to "invest the court with jurisdiction of the cause." It was only our case law that did that -- the very case law sought to be eliminated by the amendments of 1985, and which were eliminated in fact by our holding in *Studer.* Accordingly, the majority's position would be better supported by a claim that the constitutional amendment effectively overruled *King.* But then, of course, the Code of Criminal Procedure articles providing for the waiver of an indictment would be unconstitutional.

**[**43]** **[*486]** But *Studer* would not have it to be so, and I will not disgrace the jurisprudence of this Court or insult the intelligence of trial judges and lawyers by pretending that *Studer* is consistent with the majority view in this case when it obviously is not. The *Studer* Court realized that its interpretation of the questioned

Page 14

902 S.W.2d 471, *486; 1995 Tex. Crim. App. LEXIS 78, **43

constitutional language was not literal. In fact, it consciously decided not to construe such language according to its plain meaning because it realized that doing so would effectively undermine the purpose of those legislators who enacted the Code amendments and those citizens who approved the constitutional amendments in question. In fact, nearly half of our opinion in *Studer* is actually devoted to investigating and articulating extratextual sources of legislative intent in order to demonstrate why the constitutional definition of "indictment" should not be read as it is written. The author of *Studer* even cited it in a later dissenting opinion as one of two contemporary, leading authorities for the proposition that "ambiguity in a statute is not apparent until the legislative history is researched and the true legislative intent is discerned." **[**44]** *Boykin v. State, 818 S.W.2d 782, 789 (Tex. Crim. App. 1991)* (Miller, J., dissenting).

Thus, although I believe *Studer* was wrongly decided, it was by no means an accident, nor was its rationale expressed by the Court without due consideration. Fully five years passed between enactment of the statutory and constitutional amendments and our construction of them in *Studer.* During that time, the issues were vigorously debated in the courts of appeals and eventually in this Court. Everyone knew what the arguments were on both sides. And, in the end, the Court's opinion was virtually unanimous. Only a single judge expressed significant disagreement with the majority rationale. *See Studer, 799 S.W.2d at 286* (Clinton, J., concurring); *Rodriguez, 799 S.W.2d at 303* (Clinton, J., dissenting).

Now, only five years later, most of the *Studer* Court is gone. And so, apparently is *Studer* itself. What began as a grass roots movement for the reform of charging instrument law, focused almost exclusively on the elimination of jurisdictional defects from indictments and informations, has now become a caricature of itself. It is just the sort of thing that introduces unnecessary **[**45]** complexity into the case law, confuses practitioners, and diminishes this Court in the estimation of judges and scholars. If it were the pleasure of this Court to reexamine the holding in *Studer,* I would most likely approve the effort. If, after reconsideration, it were the opinion of the Court to overrule or substantially qualify *Studer,* I might even be willing to join the opinion, so long as it had the overwhelming support of my colleagues, definitively settled the issue, and was justified by more than a mere acknowledgement of error. But the Court has done none of these things in the instant cause, and seems disinclined to do them in future. Instead, it merely reverses course, quietly reinstating the law of jurisdictional pleading defects and pretending all the while that *Studer* is still alive and well. But, of course, it isn't.

The rule of *stare decisis* obliges appellate judges to respect the precedents of their own court, whether they agree with those precedents or not. That does not mean, of course, that bad cases should never be overruled. It only means that cases should not be overruled without a compelling reason. It also means that cases should not be distinguished **[**46]** on patently fictitious grounds. The underlying rationale of *Studer,* however mistaken it may have been as a matter of constitutional interpretation, is nevertheless a more coherent and workable approach to charging instrument law than the one with which, inspired by *Fisher* and *Thomason,* the Court leaves us in this case. Because I cannot agree that there are compelling reasons to make a bigger mess of the law than *Studer* already has, I respectfully dissent.

MEYERS, Judge

DELIVERED: June 28, 1995

EN BANC



RUBEN DURON, JR., Appellant v. THE STATE OF TEXAS, Appellee

NO. 0568-96

COURT OF CRIMINAL APPEALS OF TEXAS

*956 S.W.2d 547*; *1997 Tex. Crim. App. LEXIS 76*

October 8, 1997, Delivered

**SUBSEQUENT HISTORY:** **[\*\*1]** As Corrected November 20, 1997.

**PRIOR HISTORY:** Petition for Discretionary Review from the First Court of Appeals. [HARRIS County].

**DISPOSITION:** Affirmed.

**COUNSEL:** Winston E. Cochran, Jr., Houston.

Rikke Burke Graber, Assist. DA., Houston.

**JUDGES:** MEYERS, Judge. MANSFIELD, J. Womack, Judge. Presiding Judge McCormick and Keller, J., join this concurrence.

**OPINION BY:** MEYERS

**OPINION**

 **[\*548]** OPINION ON APPELLANT'S PETITION

FOR DISCRETIONARY REVIEW

More than a decade ago, the people of Texas and their elected representatives attempted to overcome years of charging instrument case law through constitutional amendment and related legislation. It was the consensus of lay and professional opinion that defects in the pleading of indictments and informations ought not to affect the jurisdiction of trial courts to proceed with an adjudication of guilt. The most widely-held view was that, contrary to long-standing judicial interpretation, the ends of criminal justice would best be served by providing that convictions not be reversed on account of any pleading defects which were not called to the attention of the court prior to trial. In 1985, a statute to this effect was enacted. *Tex. Code Crim Proc.* **[\*\*2]** *art. 1.14(b)*.

But from the beginning, the meaning and effect of this statute were unclear. Although art. 1.14(b) plainly provided that failure to object before trial to the form or substance of an "indictment or information" forfeited the right of a defendant to complain about it on appeal, there remained considerable disagreement about whether this rule applied to an accusatory pleading which only purported to be, but was not in fact, an "indictment or information" as defined in the Texas Constitution. See *TEX. CONST. art. V, § 12*. Thus, it was argued, a pleading which did not actually charge "a person with the commission of an offense" was not an "indictment or information" **[\*549]** at all within the meaning of the Texas Constitution, and that any conviction based upon such an instrument was, therefore, not merely defective or irregular but absolutely void. After some five years of litigation in the intermediate appellate courts, we held in *Studer v. State, 799 S.W.2d 263, 272* (Tex. Crim. Proc. 1990), that the constitutional mandate that an indictment "charge an offense" does not mean "that each element of the offense must be alleged..." It has been argued that

Page 2

956 S.W.2d 547, *549; 1997 Tex. Crim. App. LEXIS 76, **2

Studer [**3] 's holding necessarily means that a pleading need not charge the "commission of an offense" to qualify as an indictment or information under the Texas Constitution. *Studer, 799 S.W.2d at 293* (Clinton, J., dissenting); *Cook v. State, 902 S.W.2d 471, 483 (Tex. Crim. App. 1995)*(Meyers, J., dissenting). Indeed, later case law, citing Studer, only requires that an indictment *purport* to charge an offense in order to vest the trial court with jurisdiction, implying, perhaps, that an indictment no longer need actually charge an offense. *Ex parte Gibson, 800 S.W.2d 548, 551 (Tex. Crim. App. 1990)*; *Ex parte Morris, 800 S.W.2d 225, 227 (Tex. Crim. App. 1990)*.

But this Court has gleaned a different meaning from Studer and its progeny. In *Cook v. State, 902 S.W.2d 471 (Tex. Crim. App. 1995)*, we revisited the very argument advanced five years before in Studer, that an instrument purporting to be an indictment or information is not really an indictment or information unless it actually charges "a person with the commission of an offense." In Cook, however, this argument was directed, not at failure of the purported pleading to charge an offense, but at [**4] its failure to charge a person. We accepted the argument, expressly holding that "to comprise an indictment within the meaning provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense." *902 S.W.2d at 476*. Because the written instrument in Cook did not allege the identity of any person, we held that it was not an indictment or information and the trial court had therefore never acquired jurisdiction to adjudicate Cook guilty of any criminal offense. Accordingly, we reversed his conviction and ordered that the purported charging instrument be dismissed.

Thus, in Cook, we emphasized that a written instrument must charge a person with the commission of an offense in order to qualify as an indictment. But we did not elaborate upon this basic constitutional definition of an indictment. The only indication of what it meant to charge a person "with the commission of an offense", in fact, came not in the majority opinion, but in Judge Maloney's concurring opinion. Joining the Court, Judge Maloney stated that:

...if enough is alleged to enable the identification of an offense for purposes of subject matter jurisdiction under the [**5] constitution, but the allegations are nevertheless deficient so that technically it does not appear than an offense was committed, there is a waivable defect of substance.

*Cook, 902 S.W.2d at 483 (Tex. Crim. App. 1995)*(Maloney, J., concurring). Judge Maloney's understanding of Studer was inspired, at least in part, by *Fisher v. State, 887 S.W.2d 49 (Tex. Crim. App. 1994)*. See *Cook, 902 S.W.2d at 480* (Clinton, J., concurring) and 481 (Maloney, J., concurring) and 484 (Meyers, J., dissenting). In Fisher we addressed the problem of measuring the sufficiency of evidence against jury charges that, after Studer, could no longer be assumed to incorporate indictments that alleged all the elements of the offense charged. There we held that the sufficiency of evidence to support a conviction under an instrument which does not charge all the elements of an offense should be measured on appeal against the statutory offense which the State intended to charge, at least if it is possible to determine from the face of the instrument which statutory offense the State really intended. *Fisher, 887 S.W.2d at 55*.

But the Court in Fisher never squarely addressed [**6] the question of what need be in a written instrument before that instrument may be considered an indictment. Although Judge Maloney suggested an answer in Cook, he did not speak for the Court. And so, confusion on the topic persists.

As this Court noted in Studer, the legislative history behind the 1985 amendment and [*550] its attendant legislation indicates that those changes meant to preserve a written instrument as an indictment even "though it be flawed by matter of substance..." *Studer, 799 S.W.2d at 271*. But, as we emphasized in Cook, not all "indictment" defects are matters of substance such that a defendant must object to them before trial or lose his right to complain about them on appeal. Some defects, instead, remove the written instrument from the ambit of art. 1.14(b) because they render the instrument a non-indictment. *Cook, 902 S.W.2d at 478*. Judge Maloney understood those defects to be of the type that would make it impossible for the defendant to know with what offense he had been charged. The legislative history behind the 1985 changes supports this understanding:

In essence what this [proposal] does is [to redefine] what an indictment [**7] is. And [it] actually defines it in fairly specific terms as to what...an indictment is supposed to do...Obviously, it is still important that each and every person charged with an offense know what he

Page 3

956 S.W.2d 547, *550; 1997 Tex. Crim. App. LEXIS 76, **7

is charged with. The definition under the [proposal] would do that. It would advise that person essentially what he is charged with, but you don't have to worry about whether you described the car sufficiently, or the weapon sufficiently, or those things, as long as it gives some kind of notice of what the charge is.

G. Dix, Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform, 38 Baylor L.Rev. 1, at 39-40, n. 137 (Winter 1986), citing Hearing on Tex. H.R.J. Res. 7 Before the House Comm. On Criminal Jurisprudence, 69th Leg., (Feb. 18, 1985)(tape recording available from the Texas legislature).

This understanding is also in keeping with a defendant's *TEX. CONST. art. I, § 10* rights to a grand jury screening. Id. at 43. Under art. I, § 10, a defendant has a right to have a grand jury pass upon the question of whether there is probable cause to believe that he committed a particular offense. [1] See *TEX. CONST. art. I, § 10*, **[\*\*8]** interp. commentary. A defendant also has a right, under art. V, § 12, to the presentment of an indictment from that grand jury. Id. While we have never expressly stated that the indictment must reflect the grand jury's assessment that there is probable cause to believe that the defendant committed a particular offense, this becomes apparent when the two rights are juxtaposed. This is so because the written indictment most directly evidences that the proper grand jury screening has taken place. The effect upon these rights, the right to a grand jury screening and the right to have that screening reflected in a written instrument, by our interpretation of "indictment" under art. V, § 12 is obvious. If we allow a written instrument to stand as an indictment even when it does not contain enough information to point to the offense charged, then we seriously undermine a defendant's art. I, § 10 rights to have the grand jury's screening reflected in the indictment, and in so doing, a defendant also loses his assurance that the appropriate screening has taken place. [2] But in *Cook v. State, 902 S.W.2d at 478*, we stated that, to the extent possible, we ought not define an indictment **[\*\*9]** under art. V, § 12 in such a way that we render a defendant's art. I, § 10 rights to a grand jury screening meaningless. Recognizing this sentiment, we today adopt as law the suggestion, made by both Professor Dix and Judge Maloney, that a written instrument is an indictment or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute

under which the State intends to prosecute, even if the instrument **[\*551]** is otherwise defective. See Dix, *supra*; *Cook, 902 S.W.2d at 483* (Maloney, J., concurring). [3]

1 Our case law indicates that art. I, § 10 is concerned not only with the particular statutory offense, but also with the specific incident of that statutory offense. *Flowers v. State, 815 S.W.2d 724, 729 (Tex. Crim. App. 1991)*.

2 It may be argued that a defendant can protect his art. I, § 10 rights by merely objecting to the indictment prior to trial as required by art. 1.14(b). But we have held that a defendant's art. I, § 10 rights to a grand jury indictment are not forfeited by the failure to object. *King v. State, 473 S.W.2d 43 (Tex. Crim. App. 1971)*(The right to a grand jury indictment may be expressly waived but cannot be lost merely upon the failure to object); See also *Ex Parte Long, 910 S.W.2d 485, 487 (Tex. Crim. App. 1995)* (Meyers, J., concurring).

**[\*\*10]**

3 If it is true that, under art. I, § 10, a defendant has the right to demand that the grand jury pass not only on whether there is probable cause that he committed a particular statutory offense, but on whether there is probable cause that he committed a particular statutory offense on a specific day and time, then it might be argued that a defendant has a right to have those details reflected in the indictment. See *Flowers, supra.* But to require that amount of specificity would undermine art. V, § 12 as recently amended. Of course, a defendant may complain, for the first time on appeal, that the specific incident of a statutory offense for which he was convicted differs from the specific incident (of the same statutory offense) for which he was indicted, but he cannot complain, for the first time on appeal, that the indictment is defective in that it did not reflect those details (and, thus, did not allow him to know what specific incident the grand jury passed upon). Pursuant to art. 1.14(b), he must make that objection before trial.

In the instant cause, we are once again asked **[\*\*11]** to hold that a purported indictment is not really an indictment because it does not charge "the commission of an offense." But unlike our earlier cases, this complaint is

Page 4

956 S.W.2d 547, *551; 1997 Tex. Crim. App. LEXIS 76, **11

directed against a written instrument which does allege on its face all of the statutory elements comprising a criminal offense under the Texas Penal Code. It charges that appellant, acting with intent to arouse his own sexual desire, had sexual contact with a child younger than seventeen years of age who was not his spouse. These allegations contain all of the statutory elements of indecency with a child. See *Texas Penal Code § 21.11(a)(1)*. But, according to appellant, the instrument also contains factual allegations establishing, if true, that he is not guilty of indecency with a child. It alleges that the sexual contact between appellant and the child occurred when appellant rubbed his penis between her legs. Appellant argues that, because the law defines "sexual contact" only as "any touching of the anus, breast, or any part of the genitals of another person," and because legs are not included, the purported indictment does not actually charge the commission of an offense and is not, therefore, an indictment **[**12]** so as to confer jurisdiction on the trial court. The First Court of Appeals disagreed, holding that the written instrument was, indeed, an indictment because it was returned by a grand jury, purported to charge the appellant with the offense of indecency with a child, and was facially an indictment.

The court of appeals did not err. The instant cause does not involve a charging instrument which is even arguably defective on account of its failure to include one or more allegations necessary to give notice of the statutory offense with which the defendant was charged. As we have come to hold today, this is all that Studer and Cook require to satisfy the mandate of Art. V, § 12 that an indictment charge "the commission of an offense." This is true whether an indictment fails to allege one element of an offense or whether it contains additional information that may indicate innocence. Thus, regardless of the inclusion of factual allegations that arguably evidence appellant's innocence, there is no doubt that the State intended to accuse appellant of indecency with a child, and appellant does not claim otherwise.

The judgment of the court of appeals is therefore affirmed.

 **[**13]** MEYERS, Judge

EN BANC

DELIVERED: October 8, 1997

**CONCUR BY:** MANSFIELD; Womack

**CONCUR**

**CONCURRING OPINION ON APPELLANT'S**

PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, J.

*Texas Constitution, Article V, § 12* provides:

An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments, including their contents, amendment, sufficiency and requisites are provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

*Texas Code of Criminal Procedure article 1.14* provides:

(b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error or **[*552]** irregularity and he may not raise the objection on appeal or in any post conviction **[**14]** proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this Code.

An indictment, therefore, must, to be constitutionally valid, be a written instrument which charges "a person" with "the commission of an offense." An indictment serves two functions. First, the filing of an indictment is what vests the trial court with jurisdiction over a felony offense. *Labelle v. State, 720 S.W.2d 101, 106 (Tex.Crim.App. 1986)*; *Thompson v. State, 697 S.W.2d 413, 415 (Tex.Crim.App. 1985)*; *King v. State, 473 S.W.2d 43, 47 (Tex.Crim.App. 1971)*. Second, it gives notice to the defendant of the offense of which he has been charged so that he can prepare a defense. *Saathoff v. State, 891 S.W.2d 264, 266 (Tex.Crim.App. 1994)*; *Evans v. State, 623 S.W.2d 924, 925 (Tex.Crim.App. 1981)*.

In *Cook v. State, 902 S.W.2d 471 (Tex.Crim.App.*

Page 5

956 S.W.2d 547, *552; 1997 Tex. Crim. App. LEXIS 76, **14

*1995)*, we held that a written instrument which fails to charge "a person" with an offense is not an indictment as defined by Article V, § 12(b) and *Article I, Section 10 of the Texas Constitution.* [1] We held:

> 1   In Cook the offense charged was theft of over $ 20,000 in United States currency. The charging instrument properly described the offense charge but failed to name the person charged with said offense.

**[**15]** Accordingly, to constitute an indictment as required by Article V, § 12(b) and Article I, Section 10, a charging instrument must at least charge "a person" with the "commission of an offense." If the charging instrument completely fails to charge "a person" then it is not an indictment and does not invest the trial court with jurisdiction. Moreover, because a valid indictment is essential for jurisdiction, the lack of same is not subject to waiver under Article 1.14(b) due to a failure to make a timely objection to the indictment. *Cook, supra, at 479-480* (citations and footnotes omitted).

Therefore, an indictment which fails to name "a person" is not an indictment under the Texas Constitution and its validity may be challenged on appeal even if no timely objection under Article 1.14(b) to it was made before the date on which appellant's trial commenced.

*Studer v. State, 799 S.W.2d 263 (Tex.Crim.App. 1990)*, addresses the second requirement under the Texas Constitution that must be met for an indictment to qualify as such: that it "charge an offense." In Studer, this Court held that while an indictment, to be valid, must charge "an offense," it does not have **[**16]** to allege all of the elements of that offense for it to pass constitutional muster. The failure to include one or more elements of the offense in the indictment, while a defect of substance, is not a defect of constitutional magnitude causing the indictment not to be an indictment under *Texas Constitution Article V, § 12* provided the indictment charges an identifiable offense under the Texas Penal Code. In effect, an indictment which merely omits one or more elements of the offense charged is defective as being incomplete; such defects are waived if not timely raised in the manner prescribed under Article 1.14(b). *Studer, supra, at 268*; *Cook, supra, at 477*; *Rodriguez v. State, 799 S.W.2d 301, 303 (Tex.Crim.App. 1990)*; *Ex parte Morris, 800 S.W.2d 225, 227 (Tex.Crim.App. 1990)*.

In the present case, the indictment contains the essential elements of the offense of indecency with a child. *Tex. Penal Code § 21.11(a)(1)*. It charges appellant with that offense, and meets all of the requirements to be a facially valid indictment. The indictment describes the sexual contact between appellant and the complainant as consisting only of contact between the complainant's **[**17]** legs and appellant's penis. Appellant contends the indictment is constitutionally void *ab initio* because legs are not referenced in the definition of "sexual contact" under *Texas Penal Code § 21.01(2)*. This contention is without merit. [2] As correctly stated in the **[*553]** opinion of the Court, Studer and Cook require an indictment merely to charge "a person" with "the commission of an offense" to satisfy Article V, § 12. An indictment is not constitutionally defective merely because it fails to allege one or more elements of the charged offense or contains language, as here, that may indicate innocence. Furthermore, appellant does not demonstrate the indictment was so defective as to deny him the ability to prepare his defense and thereby denied him of his right to due process and due course of law under *Article I, Section 19 of the Texas Constitution. See Adams v. Texas, 707 S.W.2d 900 (Tex.Crim.App. 1986)*.

> 2   This language may well have been successfully challenged via a timely motion to quash under Article 1.14(b) as being defective.

**[**18]** With these comments, I join the opinion of the Court.

MANSFIELD, J.

DELIVERED OCTOBER 8, 1997

EN BANC

CONCURRING OPINION ON APPELLANT'S

PETITION FOR DISCRETIONARY REVIEW

Womack, Judge

The question in this case is whether the appellant, who did not object to the indictment before trial, may raise on appeal a claim that the indictment does not charge an offense. I believe that he may not. The Court holds that he may, because some indictments are not indictments, thereby resurrecting the doctrine of the fundamentally defective indictment.

Page 6

956 S.W.2d 547, *553; 1997 Tex. Crim. App. LEXIS 76, **18

On June 21, 1994 this indictment was presented:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, RUBEN DURON, JR., hereafter styled the Defendant, on or about **APRIL 2, 1994**, did then and there unlawfully, with intent to arouse the sexual desire of the Defendant, have sexual contact with [A.B.], hereafter styled the Complainant, a child under the age of seventeen years and not his spouse, by rubbing his penis between [A.B.'s] legs,

**AGAINST THE PEACE AND DIGNITY [**19] OF THE STATE.**

FOREPERSON 177TH

[signature]

FOREMAN OF THE GRAND JURY

The appellant made no motion to set aside, [1] exception to, [2] or other objection to, the indictment.

> 1 *Tex. Code Crim. Proc. art. 27.03.*
> 2 *Tex. Code Crim. Proc. arts. 27.08 & 27.09.*

On September 22, 1994 the appellant waived his right to trial by jury with the consent of the State; he pleaded guilty, and he made a written, judicial confession in the terms of the indictment. There was no agreement that the State would recommend a certain punishment or restrict its argument. The appellant filed a written motion for community supervision. The case was continued to December 9. A pre-sentence investigation report was prepared. On December 9, 1994 the court found the appellant guilty and, after hearing evidence and argument and considering the pre-sentence report, sentenced the appellant to two years' imprisonment. The appellant gave notice of appeal and remained at large on appeal bond.

The appellant's [**20] first point of error was that the indictment failed to allege the offense of indecency with a child. A divided panel of the court of appeals held that the appellant waived his claim because he did not object before trial. *Duron v. State, 915 S.W.2d 920* (Tex. App. -- Houston [1st] 1996). We granted discretionary review on the question of waiver.

This Court's predecessor, the Court of Appeals, held in its first term that an appeal could be based on an error in the substance of an indictment to which no objection had been made at trial.

Whatever is essential to the gravamen of the indictment must be set out particularly, and whenever it clearly appears in the record that the defendant has been convicted on an indictment that is clearly defective in substance, although, as in the present case, neither exception, motion, nor assignment of error is presented on behalf of appellant, it will be held insufficient to support a conviction.

*White v. State, 1 Texas Ct. App. 211, 215 (1876)* (burglary indictment failed to set out the elements of the intended theft). Eventually this Court held that a judgment based on such an indictment was "void, rather than **[*554]** voidable," **[**21]** and could be attacked for the first time in collateral proceedings as well as appeals. *Standley v. State, 517 S.W.2d 538, 541 (Tex. Cr. App. 1975)*. Such indictments were "fundamentally defective." *Ibid.* Untold thousands of judgments were reversed or set aside for pleading errors which had not been pointed out to the trial court.

Legislative attempts to reform pleading practice were unavailing. The Court of Appeals held that the constitutional requirement of an "indictment" [3] meant an indictment that was pleaded under the practice at the time the Constitution of 1876 was adopted -- that is, one that had all the essential elements. *Williams v. State, 12 Texas Ct. App. 395 (1882)*. Therefore an indictment that did not charge an offense was not an "indictment" in terms of the constitution. [4]

> 3 *Tex. Const. art. I, § 10.*
> 4 *See also Smis v. State, 43 Tex. 521 (1875)* (indictment also required by *Tex. Const. art V, § 12* to conclude "Against the peace and dignity of the State").

The appellant [**22] makes the same argument in this case:

An indictment must charge an offense. The Texas Constitution says so. *See Cook v. State, 902 S.W.2d 471, 477 (Tex. Cr. App. 1995)*, citing *Studer v. State, 799 S.W.2d 263, 272 (Tex. Cr. App. 1990)*. Here the indictment on its face does not charge a violation of *Section 21.11*, but rather charges specific conduct which

Page 7

956 S.W.2d 547, *554; 1997 Tex. Crim. App. LEXIS 76, **22

is not within the scope of "sexual conduct."

Appellant's Brief at 21-22. As another court said in response to an argument that the law was not changed by a constitutional amendment, "The people of the state adopted the amendment for the purpose of ridding the state of the incubus which the construction contended for had saddled upon it." *Harris County v. Stewart, 91 Tex. 133, , 41 S.W. 650, 655 (1897).*

The same argument that the appellant presents was rejected in *Studer v. State, supra.* This Court held that the appellant's argument cannot prevail after the 1985 amendment to *Article V, Section 12(b) of the Texas Constitution*, which now reads:

An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written **[**23]** instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

The amendment was specifically intended to undo the doctrine of the fundamentally defective indictment, as this Court explained in detail in *Studer v. State, supra, at 268-72.* "In conclusion then, the language in Art. V, § 12, 'charging a person with the commission of an offense,' does not mean, under this analysis, that each element of the offense must be alleged in order to have an indictment or information as contemplated by Art V, § 12." *Id. at 272.*

Legislation which accompanied the constitutional amendment enacted *Tex. Code. Crim. Proc. art. 1.14(b)*:

If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object **[**24]** to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

The Court says that "the meaning and effect of this statute were unclear." *Ante* at *956 S.W.2d 547, 548.* There is nothing unclear about it. As we held in *Studer v. State, supra*, the constitutional amendment and its accompanying legislation mean that a defendant waives the right to appeal a defect of substance in an indictment if he does not raise an objection before trial:

**[*555]** When Art. V., § 12 is read in conjunction with the code provisions regulating the practices and procedures governing charging instruments, it is clear the amendment to [Code of Criminal Procedure] Art. 1.14 did not change what constitutes a substance defect, but rather only its effect. The change in Art. 1.14(b) requires, among other things, that substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise the objection on appeal or by collateral **[**25]** attack. If omitting an element from an indictment is still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element.

*Studer v. State, supra, at 268.*

The Court's resurrection of the fundamentally-defective indictment doctrine is made in complete disregard of the will of the people, which they have expressed directly through amendment of the Constitution and indirectly through the enactment of Article 1.14.

I do not know what the people of this state, their legislators, and their governor can do to eliminate this pernicious doctrine. The argument that an indictment is not an indictment if it has a defect seems irresistible. I believe that if this Court were abolished, its chambers demolished, the ground plowed up, and the site paved over, one day a crack would appear in the concrete, and through that crack a black-robed arm would thrust an opinion that says, "We hold that the indictment in this case was not an indictment."

The Court reaches the right result in this case, but for reasons that are obviously wrong. The conviction in this case is affirmed, but make no mistake -- after it will **[**26]** come the renewed deluge of convictions set aside for no good reason.

Womack, Judge

En banc

956 S.W.2d 547, *555; 1997 Tex. Crim. App. LEXIS 76, **26

Delivered: October 8, 1997                              concurrence

Presiding Judge McCormick, and Keller, J., join this



**BRYAN C. HARRISON, Appellant, v. THE STATE OF TEXAS, Appellee. JOHN G. BENAVIDES, Appellant, v. THE STATE OF TEXAS, Appellee.**

**CAUSE NUMBER 13-01-547-CR, CAUSE NUMBER 13-01-548-CR**

**COURT OF APPEALS OF TEXAS, THIRTEENTH DISTRICT, CORPUS CHRISTI**

*76 S.W.3d 537*; *2002 Tex. App. LEXIS 1773*

**March 7, 2002, Delivered**
**March 7, 2002, Filed**

**PRIOR HISTORY:** [**1] On appeal from the 36th District Court of Arkansas County, Texas.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** ATTORNEY FOR APPELLANT: David L. Cunningham, Killian, Hayden & Cunningham, San Antonio, TX.

ATTORNEY FOR APPELLEE: Patrick L. Flanigan, District Attorney, Sinton, TX.

**JUDGES:** Before Justices Dorsey, Yanez, and Castillo. Opinion by Justice Yanez.

**OPINION BY:** LINDA REYNA YANEZ

**OPINION**

[*539] Opinion by Justice Yanez

Appellants were indicted for the state jail felony offense of taking a wildlife resource without the consent of the landowner. [1] *See TEX. PARKS & WILD. CODE ANN. § 61.022* (Vernon Supp. 2002). Both appellants moved to quash their indictments. When the court denied the appellants' motions, they pleaded *nolo contendere*. In one point of error, appellants now argue that the trial

court erred by denying their motions to quash the indictments. Because the point of error raised by each appellant and the facts surrounding each appellant's appeal are identical, we will address them together in this one opinion. We affirm.

> 1    Appellants were hunting together when the events leading to their indictment occurred. The record indicates that, while hunting on San Jose Island, Aransas County, Texas, Harrison shot and killed a six-point white-tail buck and Benavides shot and killed a seven-point white-tail buck.

[**2] Appellants argue that the indictments in their cases failed to allege: (1) appellants knew the property on which the offenses were committed was private property; (2) the landowner did not give consent to hunt, kill, or possess wildlife resources on the property; and (3) the appellants knew that the landowner had not consented. [2] We review a challenge to a trial court's ruling on a motion to quash an indictment under an abuse of discretion standard. *Thomas v. State, 621 S.W.2d 158, 163 (Tex. Crim. App. 1980).*

> 2    With the exception of the defendants' names and cause numbers, the indictments are identical.

In general, an indictment must plead any element that must be proved at trial. *See TEX. CODE CRIM.*

*PROC. ANN. art 21.03* (Vernon 1989); *Green v. State, 951 S.W.2d 3, 4 (Tex. Crim. App. 1997)*. An indictment must contain the elements of the offense charged, fairly inform the defendant of charges he must prepare to meet, and enable the **[**3]** defendant to plead acquittal or conviction in bar to future prosecution for the same offense. *TEX. CODE CRIM. PROC. ANN. art 21.11* (Vernon 1989); *Sanchez v. State, 928 S.W.2d 255, 259* (Tex. App.-Houston [14th Dist.] 1996, no pet.). When construing an indictment, we read the indictment as a whole, applying practical, rather than technical considerations. *Oliver v. State, 692 S.W.2d 712, 714 (Tex. Crim. App. 1985)*; *Soto v. State, 623 S.W.2d 938, 939 (Tex. Crim. App. 1981)*.

Under the Texas Parks and Wildlife Code, no one "may hunt or catch by any means or method or possess a wildlife resource at any time and *at any place covered by this chapter* unless the owner of the land or water, or the owner's agent, consents." *TEX. PARKS & WILD. CODE ANN. § 61.022(a)* (Vernon Supp. 2002) (emphasis added). Chapter 61 of the Texas Parks and Wildlife Code does not apply solely to **[*540]** private property but applies to every "county" and "place" in the state. *TEX. PARKS & WILD. CODE ANN. § 61.003* (Vernon Supp. 2002). On its face, the code prohibits **[**4]** hunting anywhere within the State of Texas without the consent of the owner of the land or the owner's agent. This would apply to public lands also. [3] Thus, a person needs the consent of a landowner, or the landowner's agent, to hunt anywhere in Texas. Therefore, an indictment for the violation of *section 61.022* need not allege that the offense took place on private property: the indictment need only allege that the person hunted, caught or possessed a wildlife resource in a county or place in Texas, and was acting without the consent of the landowner. [4] *See TEX. CODE CRIM. PROC. ANN. art 21.03* (Vernon 1989); *Green, 951 S.W.2d at 4*.

[3] The Parks and Wildlife Code provides the means by which a person may acquire permission from the state to hunt on property owned by the state. *See TEX. PARKS & WILD. CODE ANN. § 62.062* (Vernon Supp. 2002)(Parks and Wildlife Commission may prescribe a hunting season for state parks, forts or sites); *see also TEX. PARKS & WILD. CODE ANN § 81.403* (Vernon Supp. 2002) (discussing permitting of hunting on state wildlife management areas).

**[**5]**

[4] Appellants argued in their motions to quash that the San Jose Island lacked signs or other markings "to identify that this land was not the property of the State of Texas."

The indictments at issue state that the appellants "did . . . intentionally, knowingly and recklessly hunt, kill and possess a wildlife resource, to wit: one white-tailed deer, on San Jose Island, without the consent of the landowner's agent . . . ." The indictments correctly charge the appellants with hunting and possessing a wildlife resource in a county or place in the state, without the consent of the landowner's agent. *See TEX. PARKS & WILD. CODE ANN. § 61.022* (Vernon 2002).

Appellants contend that the State must prove that appellants knew they were hunting without the consent of the landowner's agent and, appellants argue, the indictments do not allege that they were hunting without the consent of the landowner or the owner's agent.

The State concedes that, had these cases gone to trial, it would have been required to prove that the appellants knew they were acting without **[**6]** the consent of the landowner, or landowner's agent. Both the State and the appellants agree that when otherwise innocent behavior becomes criminal because of the circumstances under which the behavior occurs, a culpable mental state is required as to those circumstances, citing *McQueen v. State, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989)*. In *McQueen*, a case involving the unauthorized use of a motor vehicle, the court of criminal appeals recognized that conduct may be rendered criminal based on: (1) the nature of the conduct; (2) the result of the conduct; or (3) the circumstances surrounding the conduct. *Id*. The court of criminal appeals recognized that the act of using a motor vehicle is not criminal by nature, and further, the section of the penal code dealing with unauthorized use of a motor vehicle does not prohibit any specific result of the use of a motor vehicle. *Id*. The *McQueen* court held that what renders the use of another person's motor vehicle a criminal act is "that it is done under certain circumstances, i.e., without the owner's permission." *Id*. The court of criminal appeals held that "where otherwise innocent behavior becomes criminal **[**7]** because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances." *McQueen, 781 S.W.2d at 603* (citing *McClain v. State, 687 S.W.2d 350, 354* **[*541]** *(Tex. Crim. App. 1985)* (what separates lawful acquisitive conduct from theft is

knowledge of a circumstance surrounding the conduct, that it is without the owner's consent)).

We agree that the crime of taking wildlife resources without the consent of the landowner under *section 61.022* requires a culpable mental state. Hunting is not, by its nature, a criminal act, and *section 61.022* does not prohibit any specific result. What makes hunting or possessing a wildlife resource a criminal act under *section 61.022* is a circumstance; that it is done without the landowner's consent. Thus, it follows that a person, to be convicted under *section 61.022*, must be shown to have been acting without the consent of the owner, or the owner's agent, and must have known that he was acting without the owner's consent. However, this does not change the outcome of this case.

The indictments in question sufficiently state the culpable mental states being alleged. A person **[**8]** violates *section 61.022* by the intentional act of hunting, catching, or possessing a wildlife resource with the knowledge that he does not have the consent of the landowner, or landowner's agent. *TEX. PARKS & WILD. CODE ANN. § 61.022(a)* (Vernon Supp. 2002). The indictments alleged that the appellants acted "intentionally, knowingly and recklessly" and without the consent of the landowner's agent. The indictments correctly pleaded the mental states necessary for the offense that the State would have been required to prove at trial.

Although appellants do not challenge the inclusion of "recklessly" in the indictment, we note that the incorrect inclusion of "recklessly" in the indictment does not render it fatally defective. *Soto, 623 S.W.2d at 939*. In *Soto*, the court of criminal appeals held that an indictment charging aggravated assault was not fatally defective for alleging the culpable mental state "recklessly" as well as the statutorily required culpable mental states "intentionally" or "knowingly." *Id.*; *see also Kirk v. State, 643 S.W.2d 190, 193* (Tex. App.-Austin 1982, pet. ref'd) (applying *Soto* **[**9]** ; indictment which included "should have been aware," which was not a culpable mental state prescribed for the offense, not fatally defective). In the appeals now before this Court, as in *Soto*, no essential element of culpability was omitted in the indictments since the required mental states were alleged. *See Soto, 623 S.W.2d at 939.*; *see also Kirk, 643 S.W.2d at 193*. The indictments at issue sufficiently allege the elements of the offense charged, including the culpable mental state, fairly informed appellants of the charges, and enabled the appellants to plead acquittal or conviction in bar to future prosecution for the same offenses.

We hold the trial court did not abuse its discretion by refusing to quash the indictments in the cases now before this Court. We overrule the sole point of error raised by the appellants. The judgments of the trial court are AFFIRMED.

LINDA REYNA YANEZ

Justice

Opinion delivered and filed this the

7th day of March, 2002.



J. C. HUTCH, Appellant v. THE STATE OF TEXAS, Appellee

NO. 1231-94

COURT OF CRIMINAL APPEALS OF TEXAS

*922 S.W.2d 166*; *1996 Tex. Crim. App. LEXIS 37*

**April 3, 1996, Delivered**

**PRIOR HISTORY:** **[\*\*1]** Petition for Discretionary Review from the FIRST Court of Appeals. 351st District Court of Harris County.

**COUNSEL:** Frances M. Northcutt, Houston.

Alan Curry, Assist. DA, Houston.

**JUDGES:** BAIRD, Judge, Clinton, J., concurs in the result. KELLER, J., McCormick, P.J., White and Mansfield, J.J. join.

**OPINION BY:** BAIRD

**OPINION**

 **[\*169]** *OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

A jury convicted appellant of possession of cocaine and the trial judge assessed punishment at forty years confinement. The Court of Appeals affirmed. *Hutch v. State, 881 S.W.2d 92* (Tex. App.--Houston [1st] 1994). We granted review to consider whether the Court of Appeals correctly applied the test for determining whether an erroneous jury charge caused egregious harm. We will reverse.

**I.**

**A.**

**The Trial Court**

According to the State's testimony, Houston police officers stopped a vehicle, in which appellant was a front-seat passenger, because neither appellant nor the driver were wearing seat belts. As the officers approached the vehicle, appellant leaned forward and dropped an object on the floor of the car. This object was later determined to be cocaine. However, appellant testified **[\*\*2]** he and the driver were wearing their seat belts at the time of the stop.

Because appellant's testimony contradicted that of the officers, the legality of the stop was called into question. Accordingly, the trial judge instructed the jury as required by *Tex. Code Crim. Proc. Ann. art. 38.23* that illegally obtained evidence was not admissible:

> You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The trial judge then charged the jury as follows:

> An officer is permitted, to make a temporary investigative detention of a

Page 2

922 S.W.2d 166, *169; 1996 Tex. Crim. App. LEXIS 37, **2

motorist if the officer has a reasonable suspicion that some activity out of the ordinary has occurred, that the person detained is connected with such activity, and that there is some indication that the activity is related to crime or a criminal offense. Now bearing in mind these instructions, if you find from the evidence that on the occasion in question the driver and front seat passenger were **[\*\*3]** *not* wearing seat belts immediately preceding the stop and detention by the police officer, or you have a reasonable doubt thereof, *then such stopping of the accused would be illegal*, and if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard the testimony of the officer relative to his stopping the defendant and his conclusions drawn as a result thereof and you will *not consider such evidence for any purpose whatsoever.*[1]

1    All emphasis is supplied unless otherwise indicated.

Near its end, the jury charge stated:

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these **[\*170]** written instructions, *and you must be governed thereby.*[2]

2    *See*, *Tex. Code Crim. Proc. Ann. art. 36.13.*

**[\*\*4]** Appellant did not object to the jury charge. *Id.*

**B.**

### The Court of Appeals

On appeal, appellant contended the charge was not a correct statement of the law. The Court of Appeals agreed:

Appellant accurately points out that the court misstated the law. The police could lawfully detain if appellant were not wearing a seatbelt, *and the police could not lawfully detain if appellant were wearing a seatbelt.* The statement that a detention was illegal if appellant were not wearing a seatbelt is unquestionably wrong. (Citation omitted.)

*Hutch, 881 S.W.2d at 94.*

Because there was no objection to the erroneous jury charge, the Court of Appeals purported to conduct the harm analysis prescribed by *Bailey v. State, 867 S.W.2d 42, 43 (Tex.Cr.App. 1993)*, and *Almanza v. State, 686 S.W.2d 157 (Tex.Cr.App. 1985)*. The Court concluded no egregious harm was shown because the jury was correctly instructed elsewhere in the jury charge, and further, because the prosecutor and defense attorney correctly argued the law. *Hutch, 881 S.W.2d at 94-95.* The Court reasoned the correct general instruction, coupled with the arguments of the attorneys, cured **[\*\*5]** any error resulting from the incorrect application of the law to the facts:

... It was clear to the jurors that they were not to consider the evidence seized if they found that appellant and the driver *were* wearing seat belts, or if they had a reasonable doubt about that fact.

*Id., 881 S.W.2d at 95* (emphasis in original).

Justice O'Connor dissented, arguing the misstatement of the law constituted egregious harm and deprived appellant of a fair trial. *Id., 881 S.W.2d at 96.* Justice O'Connor found nothing in the record to demonstrate the jury correctly understood or applied the law, and argued: "It cannot be harmless error to instruct the jury that the law is the opposite of what it actually is." *Ibid.* Appellant petitioned this Court for review of the Court of Appeals' decision. The State did not file a cross-petition.

**II.**

### The *Almanza* Standard of Harm

The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case:

Page 3

922 S.W.2d 166, *170; 1996 Tex. Crim. App. LEXIS 37, **5

It is not the function of the charge merely to avoid misleading or confusing the jury; it is the function of the charge to lead and to prevent confusion. A **[**6]** charge that does not apply the law to the facts fails to lead the jury to the threshold of its duty: to decide those fact issues.

*Williams v. State, 547 S.W.2d 18, 20 (Tex.Cr.App. 1977)*. The jury charge must allow the jury to determine the defendant's guilt in light of the evidence and the law. *Benson v. State, 661 S.W.2d 708, 715 (Tex. Cr.App. 1982)*. And, absent evidence to the contrary, we presume the jury followed the law provided by the charge. *See, Rose v. State, 752 S.W.2d 529, 554 (Tex.Cr.App. 1987)* (op'n on reh'g); *and, Cobarrubio v. State, 675 S.W.2d 749, 752 (Tex.Cr.App. 1983)*.

### A.

In *Almanza v. State, 686 S.W.2d 157 (Tex.Cr.App. 1985)* (op'n on reh'g), the defendant raised for the first time on appeal a variance between the jury charge and his indictment. *Id., 686 S.W.2d at 159*. The Court of Appeals found error in the charge and reversed. However, we reviewed that decision and, in the process, dispensed with the practice of automatically reversing upon a finding of jury charge error.

In *Almanza*, we held that *Tex. Code Crim. Proc. Ann. art. 36.19* prescribed the manner in which jury charge error is reviewed on appeal. **[**7]** *Almanza, 686 S.W.2d at 171*. First, an appellate court must determine whether error exists in the jury charge. Second, the appellate court must determine whether sufficient harm was caused by the **[*171]** error to require reversal. *Arline v. State, 721 S.W.2d 348, 351 (Tex.Cr.App. 1986)*. The degree of harm necessary for reversal depends upon whether the error was preserved. *Ibid*. Error properly preserved by an objection to the charge will require reversal "as long as the error is not harmless." *Almanza, 686 S.W.2d at 171*. We have interpreted this to mean *any* harm, regardless of degree, is sufficient to require reversal. *Arline, 721 S.W.2d at 351*. However, when the charging error is not preserved a greater degree of harm is required. This standard of harm is described as "egregious harm." *Almanza, 686 S.W.2d at 171*. We explained that errors which result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a

"valuable right," or "vitally affect a defensive theory." *Id., 686 S.W.2d at 172* (citations omitted). Moreover, we do not require direct evidence of harm to establish egregious harm. *Castillo-Fuentes* **[**8]** *v. State, 707 S.W.2d 559, 563, n. 2 (Tex.Cr.App. 1986)*.

In either event, when conducting a harm analysis the reviewing court may consider the following four factors: 1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and, 4) any other relevant information revealed by the record of the trial as a whole. *Bailey v. State, 867 S.W.2d 42, 43 (Tex.Cr.App. 1993)* (citing *Almanza*).

### B.

Because appellant did not preserve the jury charge error, resolution of the instant case requires an egregious harm analysis. Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis. We have undertaken that task on several occasions to determine whether the courts of appeals correctly applied the analysis required by *Almanza*.

For example, in *Ruiz v. State, 753 S.W.2d 681, 686 (Tex.Cr.App. 1988)*, the Court focused on the charge itself to determine egregious harm. Ruiz was charged with murder but the record contained some evidence that Ruiz may be guilty only of the lesser included offense of voluntary manslaughter. However, the trial judge **[**9]** failed to instruct the jury on the State's burden to prove the Ruiz's actions were not the result of sudden passion arising from an adequate cause in the murder application paragraph. We held Ruiz suffered egregious harm because a possibility existed that the jury was confused and misled into ending their deliberations under the incorrect instruction on the law. The charge lowered the State's burden of proof, creating the possibility Ruiz was convicted on less than all the elements of murder. *Id., 753 S.W.2d at 684*.

In *Manning v. State, 730 S.W.2d 744 (Tex.Cr.App. 1987)*, a jury trial was held to determine the competency of the defendant. *Id., 730 S.W.2d at 745*. Although proof of a prior, unvacated finding of incompetency was produced, the trial judge instructed the jury that the State had the burden of proving the defendant competent to stand trial *by a preponderance of the evidence*. We held the charge incorrectly instructed the jury on the State's

Page 4

922 S.W.2d 166, *171; 1996 Tex. Crim. App. LEXIS 37, **9

burden of proof and found egregious harm:

> In light of the existing adjudication of incompetency ... we cannot say that appellant was not harmed by the jury's consideration of the evidence under a lesser burden **[**10]** of proof than should have been given.

*Id., 730 S.W.2d at 750*. Thus, in some cases, the charge itself will demonstrate egregious harm.

On the same day *Almanza* was delivered, we decided *Kucha v. State, 686 S.W.2d 154 (Tex.Cr.App. 1985)*, wherein we considered the "state of the evidence" prong of the *Almanza* analysis. In *Kucha*, the State sought to enhance the defendant's punishment by proving he was an habitual criminal. The jury charge correctly instructed the jury on the range of punishment if they determined the defendant was an habitual criminal, but failed to instruct the jury otherwise. *Id., 686 S.W.2d at 155*. We held such error was not egregious:

> ... The fact of the prior convictions *was not a contested issue* at all. Appellant's plea of "not true" only put the State to its **[*172]** proof. Considering that the evidence of the prior convictions was undisputed, uncontradicted, and seemed to have been taken almost as a "given" by the parties, we hold that the failure of the court to charge on the range of punishment if the enhancements were found to be untrue, was not so harmful that it deprived appellant of a fair and impartial trial. **[**11]** If the evidence of the prior conviction had not been so strong, or *if appellant had contested it in some fashion*, this issue would not be so clearcut. But, from the record it appears that all parties, including appellant, assumed the fact of the prior conviction and did not dispute its truth. Also, the prior was proven beyond a reasonable doubt by the State. In light of the record we hold that the error was not fundamental.

*Id., at 156*. Thus, in *Kucha*, we held that one of our considerations in the determination of egregious harm is whether the error related to a "contested issue." *See also*,

*Williams v. State, 851 S.W.2d 282, 289 (Tex.Cr.App. 1993)* (No egregious harm where error related to *incidental theory of defense*.).

At times we look to any other relevant information revealed by the record of the trial as a whole to determine egregious harm. For example, in *Saunders v. State, 817 S.W.2d 688 (Tex.Cr.App. 1991)*, the defendant was convicted of conspiracy to commit arson upon the testimony of an accomplice witness. However, the jury was not instructed that accomplice testimony must be corroborated. *Saunders, 817 S.W.2d at 689. See*, Tex. **[**12]** *Code Crim. Proc. Ann. art. 38.14*. We reviewed the record and determined the accomplice's testimony was critical to the outcome of the trial. We held failure to instruct the jury on the need to corroborate the accomplice's testimony effectively denied the defendant a fair trial and, thus, constituted egregious harm. *Saunders, 817 S.W.2d at 693*.

## III.

Application of the Law

Turning to the instant case, the Court of Appeals was required to determine whether the error affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected his defensive theory -- in short, whether appellant suffered egregious harm. *Almanza, 686 S.W.2d at 172*.

## A.

The application paragraph instructed the jury to ignore the police officer's testimony and resulting evidence if the jury believed the stop and detention of appellant occurred because seat belts were *not* being worn. As the Court of Appeals noted, the instruction was "unquestionably wrong." *Hutch, 881 S.W.2d at 94*. As noted by Justice O'Connor, the instruction was 180 degrees opposite of what it should have been. *881 S.W.2d at 96*. Nevertheless, the Court of Appeals held the **[**13]** otherwise correct instructions within the jury charge were sufficient to prevent any misunderstanding or confusion. The Court of Appeals noted that nothing in the record indicates the jury misunderstood the applicable law. *881 S.W.2d at 94-95*. This holding is erroneous for at least two reasons.

First, the Court of Appeals did not consider the appellate presumption that the jury is presumed to have

Page 5

922 S.W.2d 166, *172; 1996 Tex. Crim. App. LEXIS 37, **13

understood and followed the court's charge absent evidence to the contrary. *Rose, supra*; *Cobarrubio, supra*; *see generally*, *Gardner v. State, 730 S.W.2d 675, 696 (Tex.Cr.App. 1987)*. Under this presumption, we must presume the jury followed the erroneous instruction which authorized the stop if appellant *was* wearing a seat belt. In fact the opposite is true; such a stop would have been *illegal*. Under the erroneous instruction, the only way the jury could have convicted was by using illegally obtained evidence.

Second, it is important to note that the error occurred in the application paragraph. The application paragraph is that portion of the charge which authorizes the jury to act. *Jones v. State, 815 S.W.2d 667, 669 (Tex.Cr.App. 1991)*. Consequently, **[**14]** even though the charge elsewhere contained a correct statement of art. 38.23, that instruction did not authorize the jury to consider or not consider the evidence obtained from appellant's stop. It is not sufficient for the jury to receive an abstract instruction on the law. *Williams, 547 S.W.2d at 20*. An abstract **[*173]** charge does not inform the jury of what facts, if found by it, would permit the jury's consideration of the contested evidence. *Ibid*. Rather, the authority to consider or not consider the evidence obtained from appellant's stop came solely from the erroneous application paragraph. The Court of Appeals did not consider that the correct statement of art. 38.23 did *not* authorize the jury to correctly apply the law. Consequently, the Court of Appeals' analysis under the first factor of *Almanza* was erroneous.

**B.**

The second factor of the *Almanza* analysis requires a determination of whether the jury charge error related to a contested issue. However, the Court of Appeals considered whether the testimony was equivocal. [3] This was erroneous. Under an *Almanza* analysis, there is no requirement that the testimony be equivocal; in fact parties **[**15]** often present unequivocal evidence to support their respective sides of the case. Instead, this factor asks if the jury charge error related to a contested issue. In the instant case, the issue was obviously contested, otherwise an instruction would not have been required. *Thomas v. State, 723 S.W.2d 696, 707 (Tex.Cr.App. 1986)* (When a factual dispute arises as to whether the evidence was legally obtained, a charge on the issue is required.). [4] In fact, the legality of the stop was the crux of appellant's case. *Accord*, *Ruiz, 753*

*S.W.2d at 685*. [5] *Compare*, *Kucha, 686 S.W.2d at 156*; *and*, *Williams, 851 S.W.2d at 289*. Whether appellant was to be convicted depended upon whose testimony the jury found credible. Consequently, we hold the Court of Appeals' analysis under the second *Almanza* factor was erroneous.

> 3  The Court of Appeals stated: "For the jury to have been confused on the law would have required it to have ignored both [the State's and appellant's] unequivocal evidence." *Hutch, 881 S.W.2d at 94*. Moreover, Judge Keller argues that the jury charge authorized acquittal on the wrong basis, but did not authorize conviction on the wrong basis. *Ante*, at ___, slip op. pg. 1. This argument is not supported by the record. As noted above, the issue of the legality of the stop was hotly contested. Because of the way the issue was developed in this case the jury necessarily assumed the only way the contraband could be considered was if appellant was wearing a seat belt.

**[**16]**

> 4  If the officer's testimony as to the stop being legal was uncontroverted, no factual issue would arise and no instruction would be required. By the same token, if the defendant's testimony as to the stop being illegal were not controverted, the trial judge would not have admitted the evidence. *Tex. Code Crim. Proc. Ann. art. 38.23*.
>
> 5  In *Ruiz* we noted that the testimony on the defensive theory was "substantial." *Id., 753 S.W.2d at 685*. In the instant case, the testimony as to the reason for appellant's stop was obviously substantial.

Finally, in our analysis of this factor, after reviewing the entire record, we find nothing to indicate the jury did not follow the trial judge's erroneous instruction.

**C.**

The next factor in our analysis is the jury argument. *Bailey, 867 S.W.2d at 43*. Although neither party corrected the erroneous instruction, the parties correctly argued their respective positions. [6] In other words, the State argued that the stop of appellant was legal and that the evidence should be considered while appellant argued the stop was illegal and the evidence **[**17]** should not be considered. However, these were only small portions of the arguments; the bulk of the arguments were devoted

Page 6

922 S.W.2d 166, *173; 1996 Tex. Crim. App. LEXIS 37, **17

to the issue of the credibility of the witnesses.

6    Judge Keller agrees that the jury charge was erroneous but contends that it did not indicate the "converse." The jury arguments, appellate record and the opinion of the Court of Appeals belie this contention. *Hutch, 881 S.W.2d at 94.*

It is axiomatic that jury arguments are not evidence and the jury may not consider them as such. In the instant case, the trial judge, immediately after reading the jury charge, stated: "Please remember that you have been instructed that what the attorneys say is not evidence in this case." Nor do jury arguments serve to instruct the jury on the law. In the instant case, the jury was instructed that they were to be governed by the law as set forth in the jury charge. *See*, I A, *supra*.

The United States Supreme Court, when faced with the assertion that a **[*174]** prosecutor's argument on a presumption **[**18]** of innocence cures a jury charge deficient in that instruction, wrote "arguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky, 436 U.S. 478, 488-489, 98 S. Ct. 1930, 1936, 56 L. Ed. 2d 468 (1978).* And, we have similarly noted that "jury argument is not a substitute for a proper jury charge." *Arline, 721 S.W.2d at 353, n. 8.* [7] Moreover, in *Ruiz, supra*, we held that jury argument is never alone a controlling factor in an *Almanza* harm analysis. *Ruiz, 753 S.W.2d at 686.* In light of the fact that the jury charge's application paragraph was so flawed as to charge the jury on the opposite of what the law actually provides, and further that this was a hotly contested issue at trial, we cannot conclude the error was "cured" by the jury arguments. *Ruiz, supra.* [8]

7    In a slightly different context, we have held that it is improper for attorneys to argue outside the court's charge. *Burke v. State, 652 S.W.2d 788, 790 (Tex.Cr.App. 1983)*; *Davis v. State, 506 S.W.2d 909 (Tex.Cr.App. 1974).*

8    In *Williams, 547 S.W.2d at 20*, the Court stated:

... To allow the jury to receive an application of the law to the facts only from the partisan advocates without a neutral and unbiased instruction on the matter in the charge is to risk the degeneration of trial by jury to a debating

contest, where the persuasiveness of competing applications of the law to the facts determines guilt or innocence. ...

**[**19]** D.

For these reasons we hold the Court of Appeals incorrectly applied the egregious harm analysis of *Almanza* and erred in concluding the error did not vitally affect appellant's defensive theory. [9]

9    Throughout part III of this opinion we have identified and carefully discussed how the Court of Appeals erred in conducting its *Almanza* analysis. Judge Keller, in dissent, disagrees but does not suggest how this section of our opinion is in error.

IV.

Conclusion

A defendant is entitled to be convicted upon a correct statement of the law. In the instant case, the erroneous instructions had the effect of instructing the jury on the opposite of what the law actually is. Consequently, a jury who diligently followed the trial judge's instructions, as we must presume the jury did, would render a verdict in conflict with the Fourth Amendment and art. 38.23 because the conviction would be based upon illegally obtained evidence. The right to a trial by jury in criminal matters is among those fundamental **[**20]** rights guaranteed by our Constitutions. In order to effectuate this valuable right, there is a minimal requirement that the instructions to the jury *not* be exactly opposite of what the law actually is.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court.

BAIRD, Judge

Clinton, J., concurs in the result.

(Delivered April 3, 1996)

En Banc

**DISSENT BY:** KELLER

Page 7

922 S.W.2d 166, *174; 1996 Tex. Crim. App. LEXIS 37, **20

**DISSENT**

*DISSENTING OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

To understand why the majority is wrong, one need only read the jury charge. Upon doing so it is apparent that, while the charge is erroneous, it is not erroneous in the way that the majority says it is.

The charge erroneously instructed the jury to disregard the officer's testimony if the jury believed that appellant was not wearing his seat belt. Thus, had the jury believed that appellant was not wearing his seat belt, and followed the instruction, the jury would have disregarded the testimony and acquitted appellant. The charge did not instruct the jury as to the converse of the above. The charge did not tell the jury what to do if it believed that appellant was wearing his seat belt. **[**21]** In other words, the jury charge authorized acquittal on the wrong basis, but did not authorize conviction on the wrong basis. Thus, the majority is wrong when it says that the erroneous instruction "authorized the stop if appellant *was* wearing a seat belt." Slip op.7.

As the majority says, there is an appellate presumption that the jury followed the court's charge absent evidence to the contrary. Slip op.7. The majority "finds nothing **[*175]** to indicate the jury did not follow the trial judge's erroneous instruction." Slip op. 9. But we know that the jury did not follow the erroneous part of the instruction -- to do so would have resulted in acquittal. The majority says, "The only way the jury could have convicted was by using illegally obtained evidence." In fact, the only way the jury could have convicted was by disregarding the erroneous instruction and acting in accord with the rest of the jury charge and the jury arguments.

The Court of Appeals correctly applied the analysis set out in *Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984)* (op. on rehearing) and reached a conclusion "within a reasonable zone of disagreement." *Montgomery v. State, 810 S.W.2d* **[**22]** *372, 391 (Tex. Crim. App. 1990)* (op. on rehearing). I would affirm the judgments of the Court of Appeals and the trial court.

KELLER, J.

DELIVERED: April 3, 1996

McCormick, P.J., White and Mansfield, J.J. join.



**BEVERLY KIRKPATRICK, Appellant v. THE STATE OF TEXAS**

**No. PD-0873-07 and PD-0874-07**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*279 S.W.3d 324*; *2009 Tex. Crim. App. LEXIS 378*

**March 18, 2009, Delivered**

**NOTICE:** PUBLISH

**SUBSEQUENT HISTORY:** On remand at *Kirkpatrick v. State, 2009 Tex. App. LEXIS 7348 (Tex. App. Dallas, Sept. 18, 2009)*

**PRIOR HISTORY:** **[**1]**
ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIFTH COURT OF APPEALS KAUFMAN COUNTY.
*Kirkpatrick v. State, 2008 Tex. Crim. App. LEXIS 1568 (Tex. Crim. App., Dec. 17, 2008)*
*Kirkpatrick v. State, 2007 Tex. App. LEXIS 2905 (Tex. App. Dallas, Apr. 17, 2007)*
*Kirkpatrick v. State, 2007 Tex. App. LEXIS 2906 (Tex. App. Dallas, Apr. 17, 2007)*

**COUNSEL:** For APPELLANT: DAN WOOD JR., TERRELL.

For STATE: CARIANN ABRAMSON, ASST. D.A., KAUFMAN.

**JUDGES:** JOHNSON, J., delivered the opinion for a unanimous Court.

**OPINION BY:** JOHNSON

**OPINION**

[*324] We withdraw our December 17, 2008 opinion and substitute the following opinion.

Appellant was charged with several offenses by way of three indictments. Only two of those indictments are presently before us. [1] On appeal, the court of appeals found that the trial court had not acquired jurisdiction and reversed appellant's convictions. We reverse the judgment of the court of appeals as to both causes and remand Cause No. 05-06-1230-CR so that the court of appeals may resolve appellant's remaining issue.

> 1   Pursuant to the third indictment, trial-court cause number 23337-86, appellant was convicted of falsely holding herself out as a lawyer and sentenced to six years' confinement. On appeal, the court of appeals held that the evidence was legally insufficient to sustain the conviction, reversed the trial court's judgment, and rendered a judgment of acquittal. *Kirkpatrick v. State, No. 05-06-01275-CR, 2007 Tex. App. LEXIS 2905 (Tex. App.--Dallas, delivered April 17, 2007, no pet.)(not designated for publication).* No petition for discretionary **[**2]** review was filed regarding that case.

In indictment number 23290-86, appellant was charged with forgery and tampering with a governmental record in three counts: count one-- publishing a forged writing, knowing it to be forged, with such writing purporting to be the act of Lance Rabenaldt, who did not authorize that act; [*325] count two--presenting a letter purporting to bear the signature of Warren Samuelson,

Page 2

279 S.W.3d 324, *325; 2009 Tex. Crim. App. LEXIS 378, **2

with knowledge of its falsity and with intent that it be taken as a genuine governmental record; and count three--presenting a letter purporting to bear the signature of Chau Vo, with knowledge of its falsity and with intent that it be taken as a genuine governmental record. In indictment number 23338-86, a single count charged appellant with tampering with a governmental record by making a document, specifically a letter from Michael D. Grant attached to a motion for continuance, with knowledge of its falsity and with intent that it be taken as a genuine governmental record.

After the state had presented its case-in-chief, appellant moved for an instructed verdict on the felony forgery count, asserting that the state had failed to prove felony forgery because it had not alleged or proven [**3] any of the elements necessary to make the forgery a felony rather than a misdemeanor. The trial court agreed and granted appellant's motion for instructed verdict as to count one of indictment number 23290-86. The trial court overruled appellant's complaints as to the other allegations. The jury convicted appellant of the remaining alleged offenses, and the trial court sentenced her to two years' confinement on each of those counts, to be served concurrently.

On appeal, appellant raised one issue in Cause No. 05-06-01274-CR (trial-court Cause No. 23290-86), a claim that the trial court did not have jurisdiction because appellant had been indicted for a misdemeanor in each of the two indictments that are before us. She raised the same issue in Cause No. 05-06-01230-CR (trial-court Cause No. 23338-86), and she also raised an additional issue that the court of appeals did not address because it found the first issue dispositive. [2] The court of appeals held that the indictments failed to satisfy the constitutional requirement of subject-matter jurisdiction and did not vest the district court with jurisdiction. *Kirkpatrick v. State, 2007 Tex. App. LEXIS 2906*, No. 05-06-01230-CR, No. 05-06-01274-CR [**4] (Tex. App.--Dallas, delivered April 17, 2007, no pet.)(not designated for publication). It therefore dismissed both cases for want of jurisdiction. *Id. at *6.*

> 2  "The trial court erred in overruling appellant's objection under the attorney-client privilege."

The court of appeals noted that the multi-count indictment alleged that appellant presented two letters, one purporting to bear the signature of Samuelson and the other purporting to bear the signature of Vo. [3] *Id. at *4.* It

further held that "the indictment alleged Class A misdemeanor offenses of tampering with a governmental record[,]" but "[t]he indictment in this case does not show on its face the State's intent to charge a felony or other offense for which the district court has jurisdiction." *Id. at *5.* It also held that "because the indictment did not vest the district court with jurisdiction, appellant did not waive her complaint by [*326] failing to object prior to the day of trial." *Id. at *5-6.*

> 3  The court of appeals did not discuss the single-count indictment, trial-court cause number 23338-86, which likewise charged appellant with tampering with a government record, alleging that she did "then and there make a document, to-wit: [**5] a letter from Michael D. Grant attached to a Motion for Continuance, with knowledge of its falsity and with intent that it be taken as a genuine governmental record." However, the court of appeals's reasoning and analysis is applicable to the similar allegation in that indictment.

We granted the State Prosecuting Attorney's petition for discretionary review, which raised three grounds for review.

> 1) Did the Court of Appeals err by concluding that the district court did not have subject-matter jurisdiction of the offense?
>
> 2) Where an offense can be charged as either a felony or a misdemeanor, does the return of the indictment into a court with subject-matter jurisdiction of only the felony offense indicate the State's intent to charge the felony offense?
>
> 3) Is ambiguity or confusion about the particular offense that has been charged [sic] the type of objection to an indictment that must be raised by a defendant prior to the date of trial?

The Arguments of the Parties

The state, represented by the State Prosecuting Attorney, argues that the language of the indictments, and their return to the district court, were sufficient to show the state's intention to charge the felony offenses of

Page 3

279 S.W.3d 324, *326; 2009 Tex. Crim. App. LEXIS 378, **5

tampering [**6] with a governmental record, thus the indictments invested the district court with subject-matter jurisdiction. It asserts that the indictments' failure to allege all of the elements of the felony offense of tampering with a governmental record constituted a defect of substance, and it was therefore incumbent upon appellant to raise the defect prior to the date of trial. It contends that, because appellant failed to object, the court of appeals erred by dismissing the counts for want of jurisdiction.

Appellant argues that the indictments were proper, facially complete indictments that alleged all the elements necessary to charge her with the misdemeanor offense of tampering with a government record. She asserts that, being misdemeanor offenses, the district court did not have subject-matter jurisdiction, and that such a claim of lack of jurisdiction is not waived by failure to object before trial. She argues that she was thus not required to object before trial to the presentment of an indictment to a court without competent jurisdiction.

The parties agree that the faces of the indictments at issue here allege misdemeanor tampering with a governmental record; "the indictment[s] failed [**7] to contain language that would charge a felony offense-i.e., that Appellant intended to defraud or harm another or that the governmental record was of the type to make the offense a third-degree felony." State's Brief, p. 2. Predictably, they disagree as to whether appellant's failure to object, before trial, to being tried on misdemeanor allegations in a district court prevented the court of appeals from granting relief on her appellate complaints about subject-matter jurisdiction.

The state asserts that, while the offense of tampering with a governmental record may be charged as either a felony or a misdemeanor, the fact that the indictment was returned to a district court with subject-matter jurisdiction over felony offenses "is an indication that the State intended to charge a felony offense." It also suggests that the pretrial proceedings "were also indications that Appellant was being charged with a felony offense, and not a misdemeanor." It asserts that the indictments, whatever their defects, can be construed as intended to charge a felony because there does exist a felony offense of tampering with a governmental record and the indictments in these cases were returned to a court [**8] with subject-matter jurisdiction over only felony offenses. It adds that, if appellant had been confused

[*327] about whether the state did charge, or intended to charge, her with a felony, she could have, and should have, objected to the defective indictment before the day of trial.

Appellant claims that the indictments gave her notice only that she had been indicted for misdemeanor tampering offenses under *TEX. PENAL CODE § 37.10(a)(2)* because they did not include any of the elements that the statute requires in order to raise the misdemeanor offense to a state-jail or second-degree felony. She points out that, pursuant to *TEX. CODE CRIM. PROC., Art. 20.21*, the grand jury, not the state, presents an indictment and argues that it is the grand jury's intent, not the state's, that is most important. She also notes that nothing prohibits the grand jury from indicting an accused for only a misdemeanor offense and that "there is no requirement under the law that a grand jury return only felony indictments."

The state points to *Art. V, § 12(b), of the Texas Constitution*, which states that "[t]he [**9] presentment of an indictment or information to a court invests the court with jurisdiction of the cause" and that the practices and procedures relating to the use of indictments are as provided by statutory law. It also points to *TEX. CODE CRIM. PROC. art. 1.14(b)*, which after its 1985 amendment provides that a defendant waives or forfeits his right to object to a defect of form or substance in an indictment if he fails to object before the date on which the trial commences and that he may not first raise the objection on appeal. In *Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990)*, we discussed this principle at length and determined that a defendant who failed to timely object to a defective charging instrument before trial began would lose the right to later complain about such defect on appeal.

The state acknowledges that in *Thomason v. State, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994)*, we held that "where an indictment facially charges a complete offense, it is reasonable to presume that the State intended to charge the offense alleged, and none other." We stated, "Consequently, where an indictment facially charges a complete offense, the State is held to the offense charged [**10] in the indictment, regardless of whether the State intended to charge that offense." *Id.* However, the state suggests that, in *Teal v. State, 230 S.W.3d 172 (Tex. Crim. App. 2007)*, we retreated from such all-inclusive language.

Page 4

279 S.W.3d 324, *327; 2009 Tex. Crim. App. LEXIS 378, **10

*Thomason* is distinguishable on its facts. Thomason was indicted for felony theft of at least $ 20,000, but the indictment did not include the words necessary to charge an aggregated theft. The evidence showed that Thomason had received ten checks, totaling $ 518,787, with each of eight of the checks having an amount in excess of the alleged $ 20,000. At the end of the state's evidence, Thomason asked the trial court to require the state to elect on which of the checks it sought a conviction. The trial court refused to require an election, and the court of appeals affirmed, saying, "[W]e cannot conclude that the failure to include the phrase in the indictment evinces an intent that the checks not be aggregated." *Thomason v. State*, No. 05-92-00414-CR, 1993 WL 189615 (Tex. App.--Dallas, June 2, 1993)(not designated for publication).

This Court held that, "where an indictment facially charges a complete offense, it is reasonable to presume the State intended to charge **[\*\*11]** the offense alleged, and none other." *Thomason, 892 S.W.2d at 11*. That case is distinguishable on at least two grounds: Thomason asked for an election, thus calling the issue to the attention of the trial court, and the indictment, on its face, alleged a felony, albeit not the felony **[\*328]** the state intended to charge. There was no question that the trial court had subject-matter jurisdiction over the offense alleged on the face of the indictment.

The text of the two indictments at issue here facially alleges misdemeanor tampering with a governmental record. Appellant argues that, under *Teal*, she did not have to object because there was no ground for objecting; the indictment in her case alleged a complete misdemeanor offense and grand juries are authorized to issue indictments for misdemeanor offenses.

*Teal* involved an indictment that alleged hindering apprehension, but the indictment failed to include an allegation that the defendant had knowledge of the suspect's status as a fugitive felon, the element that raised the offense to a felony. We recognized in *Teal* that Texas law now requires the defendant to object to errors in the form or substance of an indictment before the day of trial **[\*\*12]** and before the jury is empaneled. *Teal, 230 S.W.3d at 177*. We also indicated that the critical determination is whether the trial court (and reviewing appellate courts) and the defendant can identify what penal-code provision is alleged and whether that penal-code provision is one that vests jurisdiction in the

trial court. *Id. at 180*. The state acknowledges that the text of appellant's indictments, like the indictment in *Teal*, does not contain the language necessary to raise the offense of tampering with a governmental record from a misdemeanor to a felony. State's Brief, p. 10. Nevertheless it suggests that, because the indictments were returned to a district court, a court with subject-matter jurisdiction over felonies, and a felony offense of tampering with a governmental record exists, it is clear that the state intended to charge a felony offense.

Analysis

*Teal* is more on point with regard to the issue presented here than is *Thomason*, but it does not assist appellant. As *Teal* pointed out, legislative changes in 1987 ensured that defects in an indictment would be objected to and, if possible, [4] repaired before trial and that such defects would not invalidate an otherwise valid conviction **[\*\*13]** if they were not raised before trial. *Teal at 176*. The *Teal* Court held that, after *Studer v. State, 799 S.W.2d 263 (Tex. Crim. App 1990)*, and *Cook v. State, 902 S.W.2d 471 (Tex. Crim. App. 1995)*, courts must now look to the indictment as a whole, not just to its specific formal requisites. *Id. at 180*.

> Implicit within both *Studer* and *Cook* is that "the offense" charged must be one for which the trial court has subject-matter jurisdiction. . . .
>
> Thus, the complete test for the constitutional sufficiency of a particular charging instrument goes slightly further than that expressly set out in *Studer* and *Cook*: Can the district court and the defendant determine, from the face of the indictment, that the indictment intends to charge a felony or other offense for which a district court has jurisdiction? . . . [T]he indictment, despite whatever substantive defects it contains, must be capable of being construed as intending to charge a felony (or a misdemeanor for which the district court has jurisdiction).
>
> . . . It certainly was a defective indictment because it omitted one of the two **[\*329]** elements that raise hindering apprehension from a misdemeanor to a felony, but it was nonetheless sufficient to

Page 5

279 S.W.3d 324, *329; 2009 Tex. Crim. App. LEXIS 378, **14

[**14] vest jurisdiction-it charged "an offense" and one could fairly conclude from the face of the charging instrument that the State intended to charge a felony offense. If appellant was confused about whether the State did or intended to charge him with a felony, he could have and should have objected to the defective indictment before the date of trial.

*Id.* at 181-82.

4     For example, a district court lacks subject-matter jurisdiction over a speeding offense no matter how perfect the wording of a charging instrument alleging such an offense, and there is no such offense as felony speeding. The trial court clearly lacks subject-matter jurisdiction, and the indictment cannot, therefore, be repaired.

Here, although the indictment properly charged a misdemeanor and lacked an element necessary to charge a felony, the felony offense exists, and the indictment's return in a felony court put appellant on notice that the charging of the felony offense was intended. Further, the face of each indictment contains a heading: "Indictment--Tampering with a Governmental Record 3rd Degree Felony,--*TPC § 37.10(a)*--Code 73990275." 5 The Penal Code section was easily ascertainable, and the notation that the offense [**15] was a third-degree felony clearly indicated that the state intended to charge a felony offense and that the district court had subject-matter jurisdiction. Appellant had adequate notice that she was charged with a felony. If she had confusion about whether the State did, or intended to, charge her with a felony, she could have, and should have, objected to the defective indictment before the date of trial.

5     The heading sets out that the charge is a third-degree felony. *Section 37.10(a)* enumerates the elements of tampering with a governmental record. *Section 37.10(c)* and *(d)* state what punishment ranges apply to different kinds of governmental records.

(c)(1) general classification not covered by subdivisions (2), (3), and (4) and subsection (d); a class A misdemeanor unless the actor's intent is to

harm or defraud another, then a state-jail felony.

(c)(2) school records, license, permit, seal, title, letter of patent, or similar document; a third-degree felony unless the actor's intent is to harm or defraud another, then a second-degree felony.

(c)(3) a record required to enroll a student in a school district and used to establish residency; a class C misdemeanor.

(c)(4) a written appraisal [**16] filed with an appraisal review board that was performed by a person with a contingency interest in the outcome of the hearing; a class B misdemeanor.

(d) vehicle liability insurance form; varying levels, depending on how the tampering was done (*§ 37.10 (a)(1-6)*).

Although the heading alleges a third-degree felony, the jury convicted appellant of a state-jail felony. Such a conviction may be had only under *§ 37.10(c)(1)* with proof of intent to defraud or harm another.

The court of appeals erred when it concluded that these indictments fail to satisfy the constitutional requirement of subject-matter jurisdiction and did not vest the district court with jurisdiction. We reverse the judgment of the court of appeals and affirm the judgment of the trial court in Cause No. 05-06-01274-CR (trial-court Cause No. 23290-86). In Cause No. 05-06-01230-CR (trial-court Cause No. 23338-86), the court of appeals found appellant's first issue, lack of jurisdiction, dispositive and therefore did not address her second issue. We reverse the judgment of the court of appeals in Cause No. 05-06-1230-CR and remand it to that court so that it may consider appellant's unaddressed claim of error as to an objection [**17] under the attorney-client privilege. We deny appellant's motion for rehearing.

Delivered: March 18, 2009

Publish



DAVID WAYNE MIDDLETON, Appellant v. THE STATE OF TEXAS

NO. 1263-01

COURT OF CRIMINAL APPEALS OF TEXAS

*125 S.W.3d 450*; *2003 Tex. Crim. App. LEXIS 73*

April 23, 2003, Delivered

**NOTICE:**   [**1]  PUBLISH

**SUBSEQUENT HISTORY:**   As Corrected May 5, 2003.

**PRIOR HISTORY:**   ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW. FROM THE SECOND COURT OF APPEALS. WISE COUNTY.

**DISPOSITION:**   Court of Appeals' judgment affirmed.

**COUNSEL:** FOR APPELLANT: KEN MAHAFFEY, AUSTIN.

FOR STATE: BARRY'S GREEN, DA, DECATUR.

**JUDGES:** Keasler, J., announced the judgment of the Court and delivered an opinion, in which Keller, P.J., and Womack and Hervey, JJ., joined. Holcomb and Cochran, JJ., concurred in the result. Womack, J. filed a concurring opinion. Price, J., filed a dissenting opinion, joined by Meyers and Johnson, JJ.

**OPINION BY:** Keasler

**OPINION**

[*451]  A police officer said he saw David Middleton run a stop sign, but Middleton claimed that he stopped. The officer pulled Middleton over and found drugs. The jury was instructed to disregard this evidence

if the officer lacked probable cause. We conclude that the failure to  [*452]  define that term was not error because this jury did not need the definition.

**I. Facts**

On New Year's Eve, 1998, Sergeant Stanford was "working radar" at the intersection of Crittendon Street and Cates Street in Bridgeport. He testified that he saw a small blue Chevy pick-up fail to come to a complete stop at the stop sign. Stanford followed the vehicle with his lights flashing and after a few blocks the truck came to a stop. Stanford approached the truck and identified the driver  [**2]  as Middleton. Middleton consented to a search, and upon searching the truck, Stanford found methamphetamine behind the ashtray.

Middleton testified that he stopped at the stop sign.

At the conclusion of testimony, defense counsel requested a charge pursuant to *Art. 38.23*:

I would request the Charge, under *Article 38.23 of the Code of Criminal Procedure* at the beginning of top of Page 2, I would ask that it be inserted. "Our law provides that any evidence seized in violation of the United States Constitution, the Texas State Constitution, the laws of the State of Texas or of this county, shall not be admitted into evidence in any criminal proceeding."

Basically, I would ask for that charge as a descriptive of what the law is for the next two paragraphs, your

Page 2

125 S.W.3d 450, *452; 2003 Tex. Crim. App. LEXIS 73, **2

Honor.

The court denied Middleton's request but did include the following language in the charge:

The court further instructs you that before you may consider the testimony of Steve Stanford concerning the search of the Defendant's vehicle, you must first find beyond a reasonable doubt that the officer had probable cause to believe and did believe that the defendant did not bring the vehicle he was operating to a stop **[\*\*3]** at the intersection of Cates and Crittendon in Bridgeport, Texas, and if you do not so find beyond a reasonable doubt, or if you have a reasonable doubt, you will disregard such testimony and evidence.

During closing arguments, the defense made the following statements:

Remember we told you that any law [*sic*] that's seized in violation of the United States Constitution, State Constitution the laws of the State of Texas is not admissible in Court.

Now, this is where the issue comes. You get a charge on the law because there's an issue, and the issue is: Do you have a reasonable doubt as to whether or not he came to a complete stop. See, that's the probable cause issue. That's the probable cause issue. You have a reasonable doubt as to whether or not he came to a complete stop or whether Mr. Stanford - Officer - Sergeant Stanford was just out there making a lot of routine traffic stops.

So you have to have a reason to stop somebody, just to get into the idea where you can ask them for search of the vehicle.

Now, if you have a reasonable doubt as to whether or not Stanford - as he prefers to be called - had a reasonable doubt as to whether or not he, in fact, observed a traffic **[\*\*4]** violation, if you even have a reasonable doubt to have to prove it beyond a reasonable doubt, Stanford who makes all these routine stops and who is an officer of the year, and doesn't know whether or not he's officer of the year because of all these routine consensual stops he makes, you have to believe beyond a reasonable doubt. It's not a weighing or balancing **[\*453]** of, you know, I'm not sure maybe it was an okay stop, maybe it wasn't.

Remember the protections. It's to protect everybody from ill - unreasonable illegal detentions. If you have a reasonable doubt as to whether or not that stop was valid, you don't consider anything that was a result of that stop.

\* \* \*

The evidence is - The evidence is that there is some factual dispute whether or not there was a valid stop or some pre-textual-type stop by the police.

The jury found Middleton guilty of possessing methamphetamine and the judge sentenced him to 12 years in prison.

## II. Court of Appeals

Middleton appealed arguing, among other things, that the trial judge erred by failing "to include an abstract instruction on the law of illegal search and seizure in the *Art. 38.23* charge." He argued the charge failed to describe **[\*\*5]** the law that the jury was to apply and failed to define "probable cause." The State responded that Middleton failed to preserve error and, if he did so, any error was harmless. The Court of Appeals held that "probable cause" was not required to be defined in the charge because it is not defined by statute. [1] We granted Middleton's petition for discretionary review to decide whether a trial court "should provide the jury with a definition of the term 'probable cause' in an *Art. 38.23* instruction."

> 1 *Middleton v. State, No. 02-00-00039-CR, slip op. at 8-9 (Tex. App. - Fort Worth, delivered April 26, 2001)* (not designated for publication).

## III. Preservation of Error

The State argues initially that Middleton's complaint on appeal is different from his complaint at trial. This argument is premature.

As we explained in *Hutch v. State*, [2] an appellate court's first duty in evaluating a jury charge issue is to determine whether error exists. Then, if error is found, the appellate court should analyze **[\*\*6]** that error for harm. Error preservation does not become an issue until harm is assessed because "the degree of harm necessary for reversal depends upon whether the error was preserved." [3]

> 2 *922 S.W.2d 166, 171 (Tex. Crim. App. 1996).*
> 3 *Id.*

Page 3

125 S.W.3d 450, *453; 2003 Tex. Crim. App. LEXIS 73, **6

This is the analysis we set forth almost 20 years ago in *Almanza v. State.* [4] There we explained that *Art. 36.19* contains harm standards for "both 'fundamental error and ordinary reversible error' in jury charges." [5] As a result, all jury charge error must be considered, whether or not the defendant preserved error. [6] And we have specifically applied the harmless error rule of *Art. 36.19 to Art. 38.23.* [7] So we must analyze whether error existed in Middleton's jury charge before we consider whether that error was preserved. [8]

> 4  *686 S.W.2d 157 (Tex. Crim. App. 1984)* (op. on reh'g).
> 5  *Posey v. State, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998).*
> **[**7]**
> 6  *Almanza, 686 S.W.2d at 171. See also Saunders v. State, 817 S.W.2d 688 (Tex. Crim. App. 1991).*
> 7  *Atkinson v. State, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996).*
> 8  *See Balentine v. State, 71 S.W.3d 763, 774 (Tex. Crim. App. 2002)* (stating that "because we find that no error occurred, we need not decide whether appellant waived the asserted jury charge error.").

## IV. Analysis

*Article 38.23(a)* provides that no evidence obtained in violation of the law **[*454]** should be admitted at trial. It also provides that if the evidence "raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."

As a general rule, terms need not be defined in the charge if they are not statutorily defined. [9] But terms which have a technical legal meaning may need to be defined. [10] This is particularly true when there is a risk that the jurors **[**8]** may arbitrarily apply their own personal definitions of the term [11] or where a definition of the term is required to assure a fair understanding of the evidence. [12]

> 9  *Martinez v. State, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996)*; *Garcia v. State, 887 S.W.2d 846, 859 (Tex. Crim. App. 1994).*
> 10  *See Medford v. State, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000)*; *Andrews v. State, 652 S.W.2d 370, 375-76 (Tex. Crim. App. 1983)* (explaining that term acquiring technical meaning need not necessarily be defined).
> 11  *Medford, 13 S.W.3d at 772.*
> 12  *See Draughon v. State, 831 S.W.2d 331, 338 (Tex. Crim. App. 1992).*

"Probable cause" is not statutorily defined, and Middleton argues that it must be defined because it has a technical legal meaning. But even if "probable cause" has acquired a technical legal meaning, that does not necessarily mean that it had to be defined. [13] In this case, there was no risk **[**9]** that the jurors would arbitrarily apply their own personal definition, nor was a definition of the term required to assure a fair understanding of the evidence.

> 13  *See Andrews, 652 S.W.2d at 375-76.*

This case involved a single, and simple, factual dispute - whether or not Middleton stopped at the stop sign. Its resolution determined whether the seized evidence could be considered. There were no other facts which could have established probable cause. As the State explained in its brief to the Court of Appeals:

If this case had been a case wherein an officer had to rely upon a multitude of factors to come to his conclusion regarding probable cause, a definition for the jury might have been helpful. However, the only issue involved in the determination of probable cause in this case is whether [Middleton] failed to come to a complete stop.

Indeed, defense counsel's argument to the jury highlighted this fact and explained to the jury that, in this case, "probable cause" meant a failure **[**10]** to stop at the stop sign.

## V. Conclusion

Because there was no ambiguity in this case as to the meaning of "probable cause," we conclude that the trial judge did not err in failing to define it.

We affirm the Court of Appeals' judgment.

**CONCUR BY:** WOMACK

**CONCUR**

Page 4

125 S.W.3d 450, *454; 2003 Tex. Crim. App. LEXIS 73, **10

*WOMACK, J., filed a concurring opinion.*

I join the Court's opinion with the understanding that, because of an unusual feature of this case, it does not resolve the general question of the need to define "probable cause" in the court's charge under **[*455]** *Article 38.23*. The Court prudently decides no more than the case requires.

The State took the issue of probable cause out of this case by accepting a burden to prove more than the law required; that is, that the defendant did commit an offense in the officer's presence. The law's requirement is only that the officer have probable cause to believe that someone committed an offense in the officer's presence. * We have not decided (although, it seems to me, the issue would not be close) whether "probable cause" must be defined when probable cause *is* the standard for the jury.

> \* *See, e.g., Brinegar v. United States, 338 U.S. 160, 174-76, 93 L. Ed. 1879, 69 S. Ct. 1302 (1946)* (constitutional law); *Carlock v. State, 609 S.W.2d 787, 790 (Tex. Cr. App. 1980)* (state statutory law).

 **[**11]** En banc.

**DISSENT BY:** Price

**DISSENT**

Price, J., *filed this dissenting opinion, in which* Meyers and Johnson, J.J.*, joined.*

While searching the appellant's truck, police found methamphetamine and marihuana behind the ashtray. The appellant claimed that the officer had no probable cause to pull him over. The trial court included an *article 38.23*1 instruction in the proposed guilt-innocence jury charge; the appellant requested a more detailed instruction. The trial court denied his request, and the appellant was convicted. Today the Court addresses whether the trial court should have defined probable cause in the jury charge. The Court concludes that answer is no. I disagree, and therefore, I dissent.

> 1 *Tex. Code Crim. Proc. art. 38.23*.

On direct appeal, the appellant claimed that the trial court should have included a definition of probable cause in the jury charge. 2 The court of appeals explained that the trial court is not required to provide a definition for **[**12]** any term that is not defined in the relevant statute. Probable cause is not defined in *article 38.23*. Therefore, the court of appeals concluded, the trial court was not required to include a definition in the charge. *Middleton v. State, No. 02-00-0039-CR, slip op. at 8-9 (Tex. App.--Fort Worth Apr. 26, 2001)* (not designated for publication).

> 2 The portion of the charge that the appellant complains was incomplete reads as follows:
>
> The court further instructs you that before you may consider the testimony of Steve Stanford concerning the search of the Defendant's vehicle, you must first find beyond a reasonable doubt that the officer had probable cause to believe and did believe that the defendant did not bring the vehicle he was operating to a stop at the intersection of Cates and Crittendon in Bridgeport, Texas, and if you do not find so beyond a reasonable doubt, or if you have a reasonable doubt, you will disregard such testimony and evidence.

The appellant filed a petition for discretionary review, **[**13]** which we granted, claiming that the court of appeals erred because probable cause is a technical legal term, which should be defined for jurors.

The general rule, as the court of appeals explained, is that a term need not be defined in the jury charge if the legislature failed to define it in the relevant statute. *Martinez v. State, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996)*. The relevant statute in this case, *Texas Code of Criminal Procedure article 38.23*, 3 does not define **[*456]** probable cause. Indeed, the Article *does not even contain the term probable cause*. *Article 38.23* is a statutory exclusionary rule that prohibits the use of evidence if it was obtained in violation of the constitution or laws of the State of Texas and the United States. The general rule cannot apply in this case since the term probable cause does not appear in *Article 38.23*.

> 3 *Article 38.23* reads:
>
> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Page 5

125 S.W.3d 450, *456; 2003 Tex. Crim. App. LEXIS 73, **13

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

[**14] We have recognized an exception to the general rule when a term *in a statute* has a technical meaning. If a term does not have a common, ordinary meaning that we can presume jurors to know and apply, a definition of the term should be included in the jury charge. *Phillips v. State, 597 S.W.2d 929, 934 (Tex. Crim. App. [Panel Op.] 1980)*; *King v. State, 553 S.W.2d 105, 107 (Tex. Cr. App. 1977)* (citing *Joubert v. State, 136 Tex. Cr. R. 219, 124 S.W.2d 368 (1938)).* [4] This *might* be the test when a technical term does not appear in a statute, but we cannot tell that from the cases cited by the majority.

> 4    We have applied this test explicitly and implicitly in several cases. *See, e.g., Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000)* (beyond a reasonable doubt need not be defined); *Medford v. State, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000)* (arrest should be defined); *Motley v. State, 773 S.W.2d 283, 289-90 (Tex. Crim. App.1989)* (deliberately and intentionally need not be defined); *Whaley v. State, 717 S.W.2d 26, 30-31 (Tex. Crim. App. 1986)* (constructive transfer should be defined); *MacDougall v. State, 702 S.W.2d 650, 652 (Tex. Crim. App. 1986)* (deception should be defined); *Phillips v. State, 597 S.W.2d 929, 937 (Tex. Crim. App. 1980)* ("violate or abuse sexually" need not be defined); *Coplin v. State, 585 S.W.2d 734, 736 (Tex. Crim. App. 1979)* (fiduciary property, commercial bailee, trustee, guardian, administrator, executor, conservator, receiver, and managing partner need not be defined because they are not essential to prosecution under *Penal Code section 32.45*, misapplication of fiduciary property); *Ahearn v.*

*State, 588 S.W.2d 327, 338 (Tex. Crim. App. 1979)* (serious physical deficiency need not be defined in context of injury to a child); *Mitchell v. State, 135 Tex. Crim. 176, 178, 117 S.W.2d 443, 445 (1938)* (unlawful arrest should be defined).

[**15] In *Andrews v. State, 652 S.W.2d 370 (Tex. Crim. App. 1983)*, we attempted to refine this exception to the rule. We explained that a word or phrase with a technical legal meaning will not always need to be defined. *Id. at 375-76.* In that case the defendant complained that the trial court should have defined the term "prurient interest." *Ibid.* We said that it might have been wise for the legislature to include a definition of prurient interest, but we concluded that the statute's failure to include a definition did not "cause[] a jury charge to be subject to an objection for failure to define that term." *Id. at 376.*

We said that the *Code Construction Act* specifies that "Words and phrases shall be read in context and construed accordingly. Words and phrases that have acquired a technical or particular meaning, whether by legislature or otherwise shall be construed accordingly." *Ibid.* (quoting Tex. Rev. Civ. Stat. art. 5429b-2, § 2.01). Also we noted *Code of Criminal Procedure Article 3.01* states "Words and terms used in this Code are to be taken and understood [**16] in their usual acceptability in common language, except where specially defined." [5] *Ibid.* (quoting *Tex. Code Crim. Proc. art. 3.01*). We said that neither the *Code Construction Act*, nor *Article 3.01 of the Code of Criminal Procedure,* require the definition in the jury charge. Of course, this is [*457] not a surprising conclusion because both provisions deal with the interpretation of statutes, not whether a term should be defined in a jury charge. Also, as I explained above, the term probable cause does not appear in *Article 38.23* because it is a general exclusionary rule. These rules cannot apply to the situation in the instant case.

> 5    This provisions has been revised by the legislature. Today, *Article 3.01* reads: "All words, phrases, and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined."

Even assuming the test for the exception to the rule about defining *statutory* [**17] *terms* in the jury charge applied in this case, probable cause is a technical term that is not easily understood by the average juror. If one

Page 6

125 S.W.3d 450, *457; 2003 Tex. Crim. App. LEXIS 73, **17

were to ask the average juror what probable cause means, the smart money says he will not get even close.

The appellant argues that probable cause has a peculiar and technical meaning in this context and that it should be defined in the charge. In support of this argument, the appellant claims that one court of appeals has held that probable cause should be defined in this context, [6] published jury instruction guides include a definition of probable cause, the Texas Supreme Court has required a definition of probable cause, [7] and the definition of probable cause varies depending on the area of law in which it is applied.

> 6 The appellant cites *Braggs v. State, 951 S.W.2d 877, 881 (Tex. App.--Texarkana 1997, pet. ref'd)* (holding *article 38.23* instruction inadequate for failure to define probable cause and reasonable suspicion).
> 7 The appellant cites *Akin v. Dahl, 661 S.W.2d 917, 921, 27 Tex. Sup. Ct. J. 23 (Tex. 1983)*.

[**18] The State argues that probable cause is not a technical term that should be defined because it embraces a practical, common sense approach in contrast to the terms beyond a reasonable doubt and preponderance of the evidence.

The appellant notes that at least one court of appeals has determined that trial courts should define probable cause in an *article 38.23* instruction. In *Braggs v. State, 951 S.W.2d 877, 881 (Tex. App.--Texarkana 1997, pet. ref'd)*, [8] the court held that an article 38.23 instruction was defective:

This Court recently addressed this issue in *Davis v. State, 905 S.W.2d 655, 663-64 (Tex. App.--Texarkana 1995, pet. ref'd)*. As in *Davis*, the instruction here consists only of an abstract proposition of law drawn directly from *Article 38.23*. The jury charge does not instruct the jury on the law governing probable cause. The charge does not apply the legal concept to the evidence involved, nor does it ask the jury to resolve the disputed fact issues that either justify or invalidate the officer's conduct. *Id.* The charge is defective.

> 8 The State argues that the appellant's reliance on *Braggs* does not help him because here, as in *Braggs*, the defendant's request was not specific enough. Therefore, the State argues, the Court of Appeals properly affirmed the trial court because

no egregious harm was shown. This does not defeat the appellant's argument.

[**19] *Ibid*. Braggs, like the appellant, complained that the trial court failed to include a definition of probable cause. The court of appeals's holding that the trial court erred by failing to instruct on the law of probable cause seems to be in response to Braggs's complaint. The Court explained in *Braggs* and *Davis*, the case on which *Braggs* relies, that the explanation, or abstract portion of the charge was required. It is true that we have held that a jury charge should contain the abstract portion of the charge and the application portion. *Riley v. State, 830 S.W.2d 584, 586-87 (Tex. Crim. App. 1992)*. But whether the abstract portion of the charge should define a [*458] term is determined by the rules set out above: Is the term defined in the relevant statute, and if not, is it a technical term that we cannot presume the jury to know and apply? *See King v. State, 553 S.W.2d 105, 107 (Tex. Cr. App. 1977)*.

The State notes that at least one other court of appeals has rejected the argument that probable cause should be defined. But in *Rendon v. State, 695 S.W.2d 1, 4 (Tex. App. -- Corpus Christi 1984, pet. ref'd)*, the court [**20] provides no analysis for its conclusion. It merely explained that Rendon provided no authority for his claim that a definition of probable cause was required. *Ibid*. This basis was adequate for the court's disposition of Rondon's claim, but it does not dispose of the question we address today.

The appellant also argues that because published jury instruction guides recommend the inclusion of a definition of probable cause, the definition should be required. The appellant cites W. Scott Carpenter and Paul J. McClung, *Texas Criminal Jury Charges*, sections 12:750 & 12:1090.20 (2001), in which the authors conclude that instructions that merely track the language of *article 38.23* are inadequate and they include a definition of probable cause in the *article 38.23* instruction.

For the proposition that an *article 38.23* instruction should do more than track the statutory language, the authors cite *Braggs*, which relies on *Davis v. State, 905 S.W.2d 655, 663-64 (Tex. App. Texarkana 1995, pet. ref'd)*. As we explained above, the court in *Braggs* and *Davis* did not include analysis or authority for its conclusion other than to say that the instruction must include [**21] an abstract explanation of the law and an

Page 7

125 S.W.3d 450, *458; 2003 Tex. Crim. App. LEXIS 73, **21

application of the law to the facts of the case. *Braggs, 951 S.W.2d at 881*; *Davis, 905 S.W.2d at 663-64*. The court's analysis in those cases does not support its conclusion.

For the wording of their recommended instruction, the authors rely on cases that hold an instruction must be given if a question of fact arises under *article 38.23*, [9] and one case that holds an *article 38.23* instruction given by the trial court was not an incorrect statement of the law. [10] But these cases do not require the trial judge to include a definition of probable cause. This is persuasive authority, but it does not dispose of the question in this case.

> 9 *Jordan v. State, 562 S.W.2d 472, 472-473 (Tex. Crim. App. 1978)* (requiring an *article 38.23* instruction when a question of fact was raised concerning the legality of the way evidence was obtained).
>
> 10 *Attwood v. State, 509 S.W.2d 342, 346 (Tex. Crim. App. 1974)* (approving of an *article 38.23* instruction when a definition of probable cause appeared elsewhere in the charge, a fact which was not mentioned by the Court).

**[**22]** The appellant also argues that because civil cases have required a definition of probable cause we should include a definition in this case. The case on which the appellant relies is *Akin v. Dahl, 661 S.W.2d 917, 921, 27 Tex. Sup. Ct. J. 23 (Tex. 1983)*. In that case, the Texas Supreme Court approved of a definition that was used by the trial judge in the case, but did not address the question of whether one must be given. *Ibid.* This is more persuasive authority that it is advisable to include a definition of probable cause.

The appellant argues that probable cause is a technical term because it is defined differently in different legal contexts. In the context of an *article 38.23* instruction, probable cause exists where police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe that a particular person **[*459]** has committed or is committing an offense. Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence.

*Hughes v. State, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000)* (citations **[**23]** omitted).

In forfeiture proceedings, the definition is different. Probable cause "is a reasonable belief that a 'substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *State v. $ 11,014.00 in U.S. Currency, 820 S.W.2d 783, 784 (Tex. 1991)* (citing *$ 56,700 in U.S. Currency v. State, 730 S.W.2d 659 (Tex. 1987))*.

In the civil tort malicious prosecution, probable cause is defined similarly to the way we define it in a criminal case. Probable cause is "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Akin v. Dahl, 661 S.W.2d 917, 921, 27 Tex. Sup. Ct. J. 23 (Tex. 1983)* (citing *Ramsey v. Arrott, 64 Tex. 320 (1885))*.

The fact that the definition of this term is different in different legal contexts is a good reason to conclude that probable cause is a technical legal term and that we should not assume that jurors know the term and can apply it in context.

The State claims that probable cause is not a technical **[**24]** term that should be defined because it embraces a practical common sense approach in contrast to the terms beyond a reasonable doubt or preponderance of the evidence. It cites *In re A.A., 929 S.W.2d 649, 653-54 (Tex. App.--San Antonio 1996, no pet.)*, in which the Court explained:

"Probable cause" for waiver of jurisdiction by the juvenile court is defined as sufficient facts and circumstances to warrant a prudent individual to believe the suspect committed or was committing an offense. "The probable cause standard of proof embraces a practical, common sense approach rather than the more technical standards applied in the burdens of proof either beyond a reasonable doubt or a preponderance of the evidence."

*Ibid.* (citations omitted). The definition contains differences, depending on the context, that refute the State's conclusion. It may be a standard based on common sense, but jurors need to know to what standard they should apply their common sense.

The State also argues that the definition does not have a peculiar meaning because non-legal dictionaries contain definitions of the word. This does not mean that

Page 8

125 S.W.3d 450, *459; 2003 Tex. Crim. App. LEXIS 73, **24

the term has a common and ordinary meaning that **[\*\*25]** we can presume jurors know and can apply.

The definition in non-legal dictionaries provides context for the term: It is used in criminal cases to determine when a criminal charge is well-founded. *See, e.g.*, *Webster's Third New International Dictionary* 1806 (1969) ("a reasonable ground for supposing that a criminal charge is well-founded"). But the definition we use and apply provides the quality and quantum of information an officer must possess to authorize certain actions. *See Hughes, 24 S.W.3d at 838* ("where police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense"). Knowledge that probable cause is what is required to arrest someone or to support a warrant or to support the presentment of an indictment, does not allow **[\*460]** the jury to apply the term to the facts and produce a reliable and consistent outcome.

Because the term probable cause has different meanings in different contexts and is not commonly defined in such a way that permits jurors to know its meaning and apply it easily, the term should be defined for purposes **[\*\*26]** of an *article 38.23* instruction. Trial courts should apply the definition of probable cause found in *Hughes*: Probable cause exists where police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense. Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence.

*Hughes, 24 S.W.3d at 838* (citations omitted).

That this case involves a swearing match between the officer and the appellant is not the focus of the question we are called on to decide today. The fact that the focus of our inquiry is whether the term is a technical legal term that the trial court should have defined *when it gave the charge to the jury*. The appellant's arguments after the charge was given to the jury without the requested language are a concern in determining whether the appellant was harmed. It does not tell us whether the trial court erred when it omitted the definition from the charge.

I would hold that the trial court erred. **[\*\*27]** It is futile to try to measure distance with a ruler that lacks lines of demarcation. Telling a juror to look at facts to determine whether probable cause existed is equally futile unless the juror understands and can apply the term.

The court of appeals erred in holding that probable cause need not be defined. The judgment below should be reversed. Therefore, I would remand the case to that court to address whether the appellant had been harmed.



THANH CUONG NGO, Appellant v. THE STATE OF TEXAS

NO. PD-0504-04

COURT OF CRIMINAL APPEALS OF TEXAS

*175 S.W.3d 738*; *2005 Tex. Crim. App. LEXIS 457*

**March 16, 2005, Delivered**
**March 16, 2005, Filed**

**NOTICE:** **[\*\*1]** Publish

**PRIOR HISTORY:** ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE ELEVENTH COURT OF APPEALS. HARRIS COUNTY.
*Ngo v. State, 129 S.W.3d 198, 2004 Tex. App. LEXIS 1605 (Tex. App. Eastland, 2004)*

**DISPOSITION:** Affirmed.

**COUNSEL:** For APPELLANT: Elizabeth L. Derieux, Longview, TX.

For STATE: Donald W. Rogers, Jr., ASSIST. DA., Houston, TX.

**JUDGES:** COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, J.J., joined. WOMACK, J., filed a concurring opinion in which MEYERS, J., joined. HERVEY, J., filed a dissenting opinion in which KEASLER, J., joined. KELLER, P.J., dissented without opinion. Cochran, J. Hervey, J.

**OPINION BY:** Cochran

**OPINION**

[\*740] Appellant was charged with credit card abuse under *section 32.31 of the Texas Penal Code*.

[\*741] The indictment contained three paragraphs, alleging three separate criminal acts-stealing a credit card, receiving a stolen credit card, and fraudulently presenting a credit card to pay for goods or services. The three application paragraphs in the jury charge permitted the jury to convict appellant if some of the jurors found that he stole the credit card, others believed he received a stolen credit card, and still others thought that he fraudulently presented it. The Eastland Court of Appeals held that this jury charge "did not require that the jurors unanimously agree upon any one of the three alternate theories," and [\*\*2] thus, it violated both the Texas Constitution and state statutes which require a unanimous jury verdict. [1] The court of appeals further found that, although appellant affirmatively stated that he had "no objection" to the jury charge, this error was reversible under *Almanza* [2] because appellant suffered "egregious harm." [3] We granted the State's petition for discretionary review to determine the correctness of that decision. [4] Because we agree with the court of appeals' reasoning and result, we affirm its judgment.

1 *Ngo v. State, 129 S.W.3d 198, 200 (Tex. App. - Eastland 2004)*.
2 *Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985)*.
3 *Ngo, 129 S.W.3d at 202*.
4 We granted both of the State's grounds for review:

1) The court below erroneously held that

Page 2

175 S.W.3d 738, *741; 2005 Tex. Crim. App. LEXIS 457, **2

appellant's trial counsel's affirmative statement that there was no objection to the court's charge did not forfeit or waive appellant's right to fundamental error review of the court's charge under *Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985).*

2) The court below erroneously determined contrary to and in conflict with prior decisions of this Court and the Supreme Court of the United States that appellant was denied his right to a unanimous verdict when the trial court disjunctively submitted the State's theories of conviction alleged in the indictment to the jury in its charge at the guilt-innocence stage of the trial with a general verdict form, where each of the alleged theories of conviction were not separate offenses, as found by said appellate court, but merely alternative means of committing the offense of credit card abuse as defined by *Section 32.31(b) of the Penal Code.*

In its Brief on the Merits, the State abandoned its first ground for review as that very issue had, in the meantime, been resolved adversely to the State in *Bluitt v. State, 137 S.W.3d 51 (Tex. Crim. App. 2004).* We therefore dismiss the State's first ground for review and address only the second issue.

**[**3] I.**

The evidence at trial showed that, on December 13, 2002, appellant went to a karaoke bar in Houston around 11 p.m. and ordered a couple of beers. He gave Hanh Nguyen, the Vietnamese manager of the bar, a credit card. The name on the credit card was Hong Truong. Mr. Nguyen was immediately suspicious because "Hong" is a woman's name, and, serendipitously enough, "Hong Truong" is the name of Mr. Nguyen's ex-wife. Mr. Nguyen immediately called his ex-wife and asked her to come down to the bar. Meanwhile, appellant pulled out a large stack of credit cards, as well as an HMO and dental plan card, all in the name of Hong Truong, and asked: "Which one of these can I use?" Mr. Nguyen declined to take any of them, and appellant sat quietly finishing his beer.

Mr. Nguyen told his security guard to call the police. They arrived at about the same time as Hong Truong. She told her ex-husband and the policeman that all of her credit cards had been stolen when her apartment was burglarized a few weeks earlier. She had come home from visiting her sick grandfather in the hospital on **[*742]** Thanksgiving Day and found that the lock on her window had been broken and her apartment ransacked. All **[**4]** of her credit cards had been in a purse in her bedroom closet. As far as she knew, none of the cards had been used after the burglary because she had called and canceled them. Ms. Truong identified the credit card that appellant had given to Mr. Nguyen as one of her credit cards that had been stolen during the burglary.

Ms. Truong had seen appellant around her apartment complex several times. He had knocked on her door before, but she did not open the door for him because she had a small child. Appellant had also asked her for money. He made her nervous.

Appellant testified that he had come to America from Vietnam and had lived here for eleven years, but he did not speak much English. He worked on a shrimp boat. He said that his friend Mike gave him the credit cards while they were playing pool. Mike wanted appellant to give the credit cards to Mr. Nguyen, so appellant waited at the bar until Mr. Nguyen came in. Meanwhile, he bought a beer and paid for it with cash. He insisted that he did not try to use a credit card to pay for the beer. "I don't know about credit card because I'm from Vietnam. I never use credit card. I know nothing about credit card." He denied burglarizing Ms. **[**5]** Truong's apartment or stealing any of her credit cards. He did admit to having a prior burglary conviction.

The application paragraphs of the jury charge instructed the jury to find appellant guilty if it concluded that he committed credit card abuse by any one of three separate acts. [5] Appellant's counsel stated that he had no objection to the jury charge.

5 The application paragraphs read:

Now, if you find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully, intentionally or knowingly steal a credit card owned by the card holder, Hong Truong, with intent to deprive the cardholder of the property and without the effective consent of the cardholder; *or*

If you find from the evidence beyond a

Page 3

175 S.W.3d 738, *742; 2005 Tex. Crim. App. LEXIS 457, **5

reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully and knowingly receive with intent to use a credit card owned by card holder, Hong Truong, knowing the credit card had been stolen; *or*

If you find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, with intent to obtain a benefit fraudulently, did use or present to Hanh Nguyen a credit card knowing the use was without the effective consent of the cardholder, Hong Truong, namely without consent of any kind, and knowing that the credit card had not been issued to the defendant, *then you will find [appellant] guilty as charged in the indictment.*

(Emphasis added).

[**6] The prosecutor told the jury during his closing argument that the jury charge did not require that the jurors unanimously agree upon any one of the three alternate theories:

You know what? I have all the ways that we can prove it. You know, he even testified that, you know, he received the card from someone else.

I don't know how, you know- *I don't know if I proved all three or one or two or all- I have no idea.* You know, what I do know is that for sure the credit card, he had no right to use it. That's clear. And that he tried to present it and it was presented to Mr. Nguyen. And he was trying to get something for it. That's clear. That's how simple this is. (emphasis added).

The jury returned a general guilty verdict and sentenced appellant to two years in a state jail facility, plus a $ 3500 fine.

[*743] In his sole point of error on appeal, appellant argued that his constitutional and statutory right to a unanimous jury verdict was violated "by the disjunctive submission in the jury charge of two or more separate offenses." [6] First, the court of appeals, presciently anticipating this Court's decision in *Bluitt v. State*, [7]

concluded that it could address the merits [**7] of appellant's complaint even though he had affirmatively said he had no objection to the jury charge. [8] Second, the court of appeals held that the trial court erred in submitting the three separate offenses set out in application paragraphs of the jury charge in the disjunctive because such a charge would allow for a non-unanimous jury verdict. [9] Third, it concluded that this error was "egregious" under *Almanza* "because it deprived appellant of his right to a unanimous jury verdict and, thus, denied appellant a fair and impartial trial." [10] The court of appeals reversed the judgment of the trial court and remanded the case for a new trial.

6 *129 S.W.3d at 199.*

7 *137 S.W.3d 51, 53 (Tex. Crim. App. 2004)* ("we hold that an affirmative denial of objection, as in this case, shall be deemed equivalent to a failure to object. An appellant may raise such unobjected-to charge error on appeal, but may not obtain a reversal for such error unless it resulted in egregious harm").

8 *Ngo, 129 S.W.3d at 199* ("we fail to see any meaningful distinction, in the context of *Almanza*, between a failure to object and an affirmative approval of the jury charge").

[**8]

9 *Id. at 201.*

10 *Id. at 202.*

## II.

In its petition for discretionary review, the State contends that the court of appeals erred in finding that appellant was denied his right to a unanimous verdict. First, it argues that the application paragraphs merely set out alternate means of committing a single offense of credit card abuse, but those paragraphs did not allege separate credit card abuse offenses. Second, the State argues alternatively that the application paragraphs "merely showed repeated instances of commission of the offense of credit card abuse." Because appellant failed to request the State to elect which single offense it would rely upon for conviction, it was permissible to submit the three separate offenses in the disjunctive. Each juror could then decide which of the three criminal acts it thought the State had proven and return a general verdict so long as all of the jurors unanimously agreed that he had committed the general offense of credit card abuse. In sum, according to the State, there was no error, much

Page 4

175 S.W.3d 738, *743; 2005 Tex. Crim. App. LEXIS 457, **8

less egregious harm.

[**9] Our first duty in analyzing a jury-charge issue is to decide whether error exists. [11] Then, if we find error, we analyze that error for harm. [12] Preservation of charge error does not become an issue until we assess harm. [13] The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. [14] Under *Almanza*, jury charge error requires reversal when the defendant has properly objected to the charge and we find "some harm" to his rights. [15] When the defendant fails to object [*744] or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. [16] Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. [17] We turn first to the question of error.

> 11  *Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)* (*citing Hutch v. State, 922 S.W.2d 166, 170-71 (Tex. Crim. App. 1996)).*
> 12  *Middleton, 125 S.W.3d at 453.*
>
> [**10]
>
> 13  *Id.*
> 14  *Id.* (*citing Hutch, 922 S.W.2d at 171).*
> 15  *Almanza, 686 S.W.2d at 171*; *see also Hutch, 922 S.W.2d at 171.*
> 16  *Bluitt, 137 S.W.3d at 53*; *Almanza, 686 S.W.2d at 171.*
> 17  *See Posey v. State, 966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998).*

### A. Error existed in this jury charge because it allowed for a non-unanimous jury verdict.

The indictment charging appellant with credit card abuse under *section 32.31 of the Penal Code* alleged three statutorily different criminal acts:

> 1) stealing a credit card owned by Hong Truong; [18]
>
> 2) receiving a credit card owned by Hong Truong, knowing that it had been stolen, and acting with the intent to use it; [19]
>
> 3) presenting a credit card with the intent to obtain a benefit fraudulently,

knowing the use was without the effective consent of the cardholder, Hong Truong. [20]

> 18  *TEX. PENAL CODE § 32.31(b)(4).*
>
> [**11]
>
> 19  *Id.*
> 20  *TEX. PENAL CODE § 32.31(b)(1)(A).*

The State charged all three offenses in three separate paragraphs within a single count of one indictment. It sought one conviction for the commission of one credit card abuse offense by proving any of three different criminal acts, occurring at three different times, and in three different ways.

When the State charges different criminal acts, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts. [21] In this case, for example, all twelve members of the jury must unanimously agree that appellant did at least one of three different acts: either he stole Ms. Truong's credit card; or he received her credit card, knowing that it was stolen and intending to use it fraudulently; or he fraudulently presented her credit card with the intent to obtain a benefit. [22] In [*745] this case, however, the word "unanimously" appeared only [**12] in the "boilerplate" section of the jury charge dealing with selection of the jury foreman:

> After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreman.

Here the jury could well have believed that they need only be unanimous about their "verdict" of guilty or not guilty of the general offense of credit card abuse. Indeed, this unanimity instruction is worse than saying nothing because it affirmatively supports the prosecutor's erroneous jury argument that the jurors need agree only on their ultimate general "verdict" of guilty, rather than specifying that they need to unanimously agree on any

Page 5

175 S.W.3d 738, *745; 2005 Tex. Crim. App. LEXIS 457, **12

one of the three specific criminal acts set out in the jury charge.

> 21 *Francis v. State, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000)* ("the unanimity requirement is undercut when a jury risks convicting the defendant of different acts, instead of agreeing on the same act for a conviction") (citing *United States v. Holley, 942 F.2d 916, 925 (5th Cir. 1991)).*

**[**13]**

22 Based upon the record evidence, it is entirely possible that the jury could have found that appellant committed two of these criminal acts: he either burglarized Ms. Truong's apartment and stole her credit cards himself or he obtained them from the original burglar, knowing that the cards belonged to someone else, *and* he also tried to use Ms. Truong's credit cards to pay for his beer. The State could have charged appellant with both of these credit card abuse offenses and obtained two convictions had it charged appellant in separate counts instead of separate paragraphs. *See TEX. CODE CRIM. PROC. art. 21.24(b)* ("[a] count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense"); *see also Francis v. State, 36 S.W.3d at 126* (Womack, J., concurring) (stating that "our law allows only one offense to be charged in each paragraph of an indictment, information, or complaint. Here, the State, having chosen to plead only one paragraph, was required to elect one incident on which to rely. This requirement is not only essential to giving a defendant the requisite notice of the charge against which to defend, it helps assure that the jury's verdict will be unanimous") (footnote omitted).

In this case, the State affirmatively decided to seek only one conviction. It was certainly entitled to do so. But it can charge only one specific criminal offense in one paragraph; it cannot charge different violations of the same generic offense by the commission of different criminal acts in a single paragraph and then seek a non-unanimous general "credit card abuse" guilty verdict. *See Schad v. Arizona, 501 U.S. 624, 633, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991)* ("nothing in our history suggests that the *Due Process Clause* would permit a State to convict anyone under a charge of 'Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction"); *id. at 651* ("we would not permit ... an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the 'moral equivalence' of those two acts")(Scalia, J., concurring).

**[**14]** Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases. [23] Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act. Stealing a credit card on Monday is not the same specific criminal offense as receiving a stolen credit card on Tuesday or presenting a stolen credit card to a bartender on Wednesday. Indeed, stealing a credit card at 9:00 a.m. on Monday is not the same specific criminal offense as receiving a stolen credit card at 9:00 a.m. on Monday. These are all credit card abuse offenses, to be sure, but they are not the same, specific credit card abuse criminal acts committed at the same time or with the same *mens rea* and the same *actus reus*.

> 23 *See Francis, 36 S.W.3d at 126* (Womack, J., concurring) (citing *TEX. CONST. art. V, § 13*; *TEX. CODE CRIM. PROC. arts. 36.29(a), 37.02, 37.03, 45.034-45.036*). The unanimity requirement is a complement to and helps in effectuating the "beyond a reasonable doubt" standard of proof. *See United States v. Gipson, 553 F.2d 453, 457 n.7 (5th Cir. 1977).*

**[**15]** The State is mistaken in its first argument that the trial court simply submitted a single "credit card abuse" offense with three different statutory manners and means. The phrase "manner or means" describes *how* the defendant committed the specific statutory criminal act. It does not mean that the State can rely upon a laundry list of different criminal acts and let the individual jurors take their pick on which each believes the defendant committed. [24] The State relies upon *Schad v. Arizona*, [25] **[*746]** but that case does not support its argument, rather it holds that a jury must be unanimous on what specific criminal act the defendant committed. In *Schad*, the Supreme Court noted that the *actus reus* was "murder." All twelve jurors had to agree that the defendant

Page 6

175 S.W.3d 738, *746; 2005 Tex. Crim. App. LEXIS 457, **15

committed that act. They did not need to be unanimous on the issue of whether the defendant murdered "with premeditation or in the course of committing a robbery." [26] The preliminary factual questions of premeditation or robbery go to "how" he committed the murder, not whether he committed the act of murder. As the Supreme Court explained:

We have never suggested that in returning general verdicts in such cases [**16] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." [27]

> 24  A handy, though not definitive, rule of thumb is to look to the statutory verb defining the criminal act. That verb-such as steal, receive, or present-in *section 32.31 of the Penal Code*, is generally the criminal act upon which all jurors must unanimously agree. *See United States v. Gipson*, in which Judge Wisdom stated:
>
>> The unanimity rule ... requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required.
>
> *553 F.2d at 457-58* (concluding that a federal statute criminalizing the "bartering, selling, or disposing" of a stolen vehicle in interstate commerce or "receiving, concealing, or storing" it, required jury unanimity as to which type of criminal act defendant committed-"selling" or "receiving"). Although the Supreme Court criticized *Gipson*'s notion of "distinct conceptual

groupings" in *Schad* as being "too conclusory to serve as a real test" for deciding what facts a jury need unanimously agree upon, the *Schad* plurality did not disagree with the underlying proposition that all jurors must agree upon the specific statutory criminal act that the defendant was alleged to have committed. *501 U.S. at 634-35*.

In any case, we have already stated, in *Francis*, that the Texas requirements for a unanimous jury verdict "are not identical to the requirements under federal law." *Francis, 36 S.W.3d at 125 n.1*; *id. at 127 n.11* (Womack, J., concurring).

[**17]

> 25  *501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991)* (plurality op.).
> 26  *Id. at 630.*
> 27  *Id. at 631-62*; *see also Aguirre v. State, 732 S.W.2d 320, 324-27 (Tex. Crim. App. 1987)* (op. on reh'g) (general verdict form proper when State alleged alternative means of committing one murder-intentionally causing victim's death or felony-murder). Similarly, under *Schad* and *Aguirre,* the State could charge Prince Yussupov with the murder of Rasputin, alleging five different manners and means- by poisoning, garroting, shooting, stabbing, or drowning Rasputin. The jury could return a general verdict if it found that Prince Yussupov intentionally caused the death of Rasputin by any of those means; the unanimity requirement goes to the act of "causing the death of Rasputin," while the jury need not be unanimous on the preliminary fact issues- whether it was by poisoning, garroting, etc. *Id.*; *see Kitchens v. State, 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991).*

Furthermore, the plurality opinion in *Schad* has been undercut by the [**18] reasoning and result in the Supreme Court's later decision in *Richardson v. United States*. [28] In this more recent case, the Court held that, under the "continuing criminal enterprise" statute, the jury must "agree unanimously [*747] about which specific violations make up the 'continuing series of violations.'" [29] In *Richardson,* as in the present case, it is not enough that the jurors might be convinced beyond a reasonable doubt that the defendant committed "a series of violations in concert with others," it must be unanimous about each specific violation (*i.e.*, which

Page 7

175 S.W.3d 738, *747; 2005 Tex. Crim. App. LEXIS 457, **18

specific criminal act- which specific drug sale) that it found the defendant had committed. [30] The Supreme Court explained that a federal criminal jury must unanimously agree on each "element" of the crime in order to convict, but need not agree on all the "underlying brute facts [that] make up a particular element." [31] The crucial distinction is thus between a fact that is a specific *actus reus* element of the crime and one that is "but the means" to the commission of a specific actus reus element. [32] *Richardson* is precisely analogous to the present case.

28    *526 U.S. 813, 143 L. Ed. 2d 985, 119 S. Ct. 1707 (1999).*

29    *Id. at 815.*

30    *Id. at 816.*

31    *Id. at 817.* As the Court in *Richardson* explained:

> where ... an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement--a disagreement about means-- would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force.

*Id. at 817.*

32    *Id.; see also United States v. Reeder, 170 F.3d 93, 105 (1st Cir. 1999)* ("while a jury must agree on all of the elements of an offense, it need not agree on the means by which all the elements were accomplished").

The State is also mistaken in its second argument that, because the evidence shows the commission of two or more acts violating the same statutory offense, the defendant was required to request an election if he wanted the jury to reach a unanimous verdict on one single act. There are three variations on this theme, but none of them permits a non-unanimous verdict. First, the State could put on evidence of repetition of the same criminal act, but with different

results. [33] Second, the State could put on evidence of repetition of the same criminal act on different occasions. [34] Third, the State could put on evidence, as it did in this case, of different criminal acts, each one of which **[*748]** is a violation of a specific penal statute such as credit card abuse. Under any of these three scenarios, the defendant could require the State to elect which specific act it was relying upon for conviction, but he need not. Nonetheless, the jury must reach a unanimous verdict on which single, specific criminal act the defendant committed.

33    For example, the State might charge a defendant with stealing a credit card from Hong Truong and put on evidence that he stole a credit card from Hong Truong and Hanh Nguyen. *See* GEORGE E. DIX & ROBERT O. DAWSON, TEXAS CRIMINAL PRACTICE AND PROCEDURE § 30.51 at 664 n.1 (2nd ed. 2001) ("If an indictment alleges theft of one hog and the proof shows that by a single act the defendant stole two hogs, does this show two different units between which the State is required to elect?") & § 30.58 at 679 (discussing *Coward v. State, 24 Tex. App. 590, 7 S.W. 332 (1888)*, in which "the old Court of Appeals held . . . that when a defendant was tried for theft of one animal and the evidence showed the thief took two animals, the jury charge had to make clear which of the animals was the subject of the charged offense") & § 30.57 n.17 at 149 (Supp. 2004) (noting *Cates v. State, 72 S.W.3d 681, 695 n.5 (Tex.App.-Tyler 2001)* "where the State's evidence showed multiple sexual acts committed by the accused against two children, the need for an election was not eliminated by the continuing course of conduct exception").

34    For example, the State could allege that appellant fraudulently presented Hong Truong's credit card to Hanh Nguyen, and then prove that he did so on Monday, Tuesday, and again on Wednesday. *See* DIX & DAWSON, § 30.55 at 673 (discussing *Crawford v. State, 696 S.W.2d 903 (Tex. Crim. App. 1985)*, in which "the indictment charged rape of a child consisting of a single act of intercourse with the named victim. The victim testified to numerous acts of intercourse over several years. Since each act of intercourse could constitute the charged offense,

Page 8

175 S.W.3d 738, *748; 2005 Tex. Crim. App. LEXIS 457, **21

the State was required to elect one on which to proceed").

The present case bears great similarity to the scenario in *Francis v. State*, [35] in which the defendant was charged with one count of indecency with a child in a single paragraph indictment. [36] The State presented evidence of four separate acts of indecency, each act occurring at a different time and date. After the defendant requested the State to elect which specific act it sought to obtain a conviction, the State chose two of them-one involving touching the victim's [**22] breasts and one touching her genitals. [37] Those are separate criminal acts. These two separate acts were charged in the disjunctive in a single application paragraph, [38] such that the jury could have returned a non-unanimous verdict, with some of the jurors finding that the defendant touched the child's breast while others concluding that he touched her genitals. In *Francis*, we held that a jury charge which allows for a non-unanimous verdict concerning what specific criminal act the defendant committed is error. [39]

35 *36 S.W.3d 121 (Tex. Crim. App. 2000).*
36 *Id.*
37 *Id.*
38 The application paragraph in *Francis*, read, in pertinent part:

If you find from the evidence beyond a reasonable doubt that on or about the 1st day of November, 1992, in Tarrant County, Texas, the Defendant, Joseph Clayton Francis, did ... engage in sexual contact by touching the breast *or* genitals of ...

*36 S.W.3d at 124* (emphasis in original).
39 *36 S.W.3d at 125*

[**23] In its Brief, the State attempts to distinguish *Francis* by arguing that appellant did not request an election, while the defendant in *Francis* did request an election. The State posits that jury unanimity is required only if the defendant requests an election between separate offenses. A request for an election, however, is not a prerequisite for implementing Texas' constitutional and statutory requirement of jury unanimity. An election simply limits the number of specific offenses that the jury may consider during its deliberations. Appellant's failure

to request an election means that the jury may be instructed on several different criminal acts in the disjunctive, but it will still be instructed that it must unanimously agree on one specific criminal act. [40] As the State correctly points out, one of the purposes of requiring an election is "to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred[.]" [41] But the converse is not true. The failure to request an election does not eliminate a defendant's right to a unanimous verdict. [42]

40 *See* DIX & DAWSON, § 30.67 at 688-89 (such a charge "would not limit the jury to any one of several acts or incidents that might constitute the crime. It would, however, make clear that the jurors must unanimously agree on one of them as constituting the proved offense").
[**24]
41 *Phillips v. State, 130 S.W.3d 343, 349 (Tex. App. - Houston [14th Dist.] 2004, n.p.h.).*
42 *See Francis, 36 S.W.3d at 127 n.10* (Womack, J., concurring) ("we do not reverse for the election error. It is necessary to discuss the principles that underlie the requirement of election because one of those principles was violated by the error in the charge").

[*749] There is one point upon which we disagree with the Eastland Court of Appeals. The error here is not in submitting the three separate offenses "in the disjunctive." [43] The error is in failing to instruct the jury that it must be unanimous in deciding which one (or more) of the three disjunctively submitted offenses it found appellant committed. Indeed, the application paragraphs submitted to the jury in this case would have been clearly correct had each paragraph included just one additional word: "unanimously," such that all twelve jurors would immediately realize that they had to agree on one specific paragraph which set out one specific criminal act. [44] The general verdict form of "guilty" or "not [**25] guilty" is also proper because it does not matter which criminal act of credit card abuse the jury found appellant had committed as long as each juror agreed on the same criminal act. In this case, however, the jury was never informed, in any way, by anyone, at any time, that-as a collective body- it was required to reach a unanimous verdict concerning one specific criminal act. The way that these three application paragraphs were set out, the jury could well have been

Page 9

175 S.W.3d 738, *749; 2005 Tex. Crim. App. LEXIS 457, **25

misled into believing that only its ultimate verdict of "guilty" need be unanimous. Under these particular circumstances, we conclude that, taken as a whole, the jury charge contained error.

43 *Ngo, 129 S.W.3d at 201* (stating that "because of the possibility of a non-unanimous jury verdict, 'separate offenses' may not be submitted to the jury in the disjunctive"). In making this statement, the court of appeals cited to *Francis*, but as the State correctly points out, the defendant in *Francis* requested that the State elect one single offense to submit to the jury. Here, appellant did not so request. Therefore, he waived any right to require the State to pick just one of the three criminal acts to submit. The jury *could* be charged disjunctively, as long as it was also informed that it must be unanimous in deciding which criminal act (or acts) appellant committed- stealing the credit card, receiving a stolen credit card, or fraudulently presenting it.

**[**26]**

44 Thus, a clearly correct version of the application paragraphs would have read:

> Now, if you **unanimously** find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully, intentionally or knowingly steal a credit card owned by the card holder, Hong Truong, with intent to deprive the cardholder of the property and without the effective consent of the cardholder; *or*
>
> If you **unanimously** find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully and knowingly receive with intent to use a credit card owned by card holder, Hong Truong, knowing the credit card had been stolen; *or*
>
> If you **unanimously** find from the evidence beyond a reasonable

> doubt that [appellant] on or about the 13th day of December, 2002, with intent to obtain a benefit fraudulently, did use or present to Hanh Nguyen a credit card knowing the use was without the effective consent of the cardholder, Hong Truong, namely without consent of any kind, and knowing that the credit card had not been issued to the defendant, then you will find [appellant] guilty as charged in the indictment.

(Emphasis added). There is, of course, nothing in the Texas Constitution, statutes, or case law that requires a jury charge to contain the explicit words "unanimous" or "unanimously." But Texas law *does* explicitly require that a jury's verdict be unanimous. The addition of the word "unanimously" before the description of each distinct criminal act in the application is merely one way to implement that legal requirement. We certainly do not suggest that it is the only way.

**[**27]** Having found error in the jury charge, we now turn to the question of whether appellant suffered "egregious harm" because he failed to object to the jury charge.

**[*750] B. Appellant suffered "egregious harm" when the jury was repeatedly told that it need not return a unanimous verdict.**

Under the *Almanza* standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error. [45] Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." [46] Appellant argues that he suffered actual harm from the faulty jury instruction and that he was, in fact, deprived of his valuable right to a unanimous jury verdict.

45 *Dickey v. State, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)* (citing *Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986))*.
46 *Hutch v. State, 922 S.W.2d at 171*.

**[**28]** The court of appeals found egregious error under *Almanza* because: 1) the jury charge permitted a

Page 10

175 S.W.3d 738, *750; 2005 Tex. Crim. App. LEXIS 457, **28

non-unanimous verdict; 2) during its closing argument, the State forthrightly told the jury that it need not be unanimous in its verdict (as quoted in Part I *supra*); and 3) "there were contested issues at trial." [47] In fact, there was more. [48]

47  *Ngo, 129 S.W.3d at 201-02.*

48  Under *Almanza*, to determine whether the error was so egregious that a defendant was denied a fair and impartial trial, a reviewing court should examine: 1) the entire jury charge; 2) the state of the evidence; 3) the arguments of counsel; and 4) any other relevant information in the record. *686 S.W.2d at 171.*

Near the beginning of the State's voir dire, the prosecutor told the jurors:

So, I'm going to explain the three ways that we've alleged that I'm going to intend to prove in this case: That the defendant, Mr. Ngo, on or about December 13th, in Harris County, Texas, intentionally and [**29] knowingly stole a credit card with intent to deprive without the consent of Hong Truong. That's one way we can do it.

Second way, that the defendant, on or about December 13, in Harris County, Texas, received with intent to deprive without the consent of Hong Truong. That's one way we can do it.

And the third way, defendant, on or about December 13th, in Harris County, Texas, with intent to obtain a fraudulent benefit used or presented a credit card to Mr. Hanh Nguyen without the consent of Ms. Hong Truong. Does that make sense to everybody? There's several different ways this can happen. Who in the first row does that not make sense to?

*The important thing with this is that if three of you who end up sitting on the jury panel feel like he stole the credit card and used it, six of you think that he received it and three of you think he presented it, it doesn't matter which one you think he did. It can be a mix and match, whichever one*

*you believe.*

Everyone in the first row agree that that's okay? *Because that's the law.* (emphasis added).

But that is not the law; that is the error in this case. Then, during the defense voir dire, while the defense was trying [**30] to explain (erroneously) that the State must prove all three criminal acts, the prosecutor objected, and the trial judge told the jurors:

There's three ways alleged that the offense can be committed. The State must prove, to your satisfaction, one of the number of them; however, in the course of the proof, *the State may prove* [*751] *one to the satisfaction of part of the jury, another one to the satisfaction of others, the third one to the satisfaction of another part of the jury*, but if you found the defendant guilty, you must believe the State has proved one of the three paragraphs in its entirety.

Thus, both the trial judge and the prosecution misstated the law at the very beginning of the case and at the very end. [49] This is not an instance of a jury charge which is simply missing an important word-"unanimously"- which reasonable jurors might infer from the context of the entire charge or from the comments of the advocates emphasizing the correct legal principles. [50] Here, the jury was affirmatively told, on three occasions, twice by the prosecutor and once by the trial judge, that it need not return a unanimous verdict. Both told the jury that "a mix and match" [**31] verdict of guilt based upon some jurors believing appellant stole a credit card, others believing he received a stolen credit card, and still others believing that he fraudulently presented one, was "the law." [51]

49  Defense counsel did not object to these misstatements of the law by either the prosecutor or trial judge. The record shows that the prosecutor handed the trial judge a copy of a case from this Court. Apparently all three-the prosecutor, defense attorney, and judge-innocently, but mistakenly, believed that this Court's opinion that a jury's "mix and match" nonunanimous verdict on the specific "manner and means" of committing one single criminal act

Page 11

175 S.W.3d 738, *751; 2005 Tex. Crim. App. LEXIS 457, **31

(e.g., causing a person's death by strangling, shooting, poisoning, or garroting) also applied to a "mix and match" nonunanimous verdict concerning different criminal acts which violate the same statutory provision. Thus, all three acted in complete good faith when each either unintentionally committed error or failed to object to the error.

50 *Compare Hoover v. Johnson, 193 F.3d 366, 367-68 (5th Cir. 1999)* (when both state prosecutor and defense attorney correctly explained Texas law of unanimity to jury, habeas petitioner's federal constitutional claim that jury instructions did not guarantee jury unanimity rejected).

[**32]

51 *See, e.g., Castillo v. State, 734 N.E.2d 299, 304-305 (Ind. App. 2000)* (trial court's failure to instruct jury on unanimity requirement when State offered evidence that defendant had committed same "dealing cocaine" offense twice was reversible error when both trial court and prosecutor told jury it had "a choice" of convicting defendant for "one or the other ... or both" instances of drug dealing); *Colorado v. Estorga, 200 Colo. 78, 82, 612 P.2d 520, 523 (Colo. 1980)* (en banc) (defendant's right to unanimous verdict violated where state offered evidence of more than one alleged sexual assault on different occasions and trial court instructed the jury it could find defendant guilty if "the evidence showed that the crime had occurred at any time within three years prior to the filing of the information"); *Horton v. United States, 541 A.2d 604, 610-11 (D.C. Ct. App. 1988)* (defendant's right to unanimous jury verdict violated when different factual scenarios could have supported jury verdict on assault conviction and appellate court could not "infer from the verdicts themselves that all the jurors were in agreement as to appellant's specific criminal acts"); *Hawaii v. Mahoe, 89 Haw. 284, 291, 972 P.2d 287, 294 (Haw. 1998)* (right to unanimous jury verdict violated when defendant made two distinct entries into residence, prosecution did not elect which entry to rely on for conviction, and jury not given specific instruction of requirement of unanimity for underlying criminal act); *Illinois v. Scott, 243 Ill. App. 3d 167, 612 N.E.2d 7, 9, 183 Ill. Dec. 750 (Ill. Ct. App. 1993)* (right to

unanimous verdict violated when defendant charged with three counts of delivery of a controlled substance and verdict form included only one count of delivery, allowing jurors to find guilt without agreeing upon which count he was guilty).

[**33] Furthermore, the evidence was contested as appellant testified and denied committing any one of the three offenses. And, under no theory of the evidence in this case, could appellant have committed both the original theft by burglarizing Ms. Truong's apartment *and* have received the [*752] stolen credit cards from someone else who had committed the burglary. These two offenses are mutually exclusive in this particular context. If even a single juror believed that appellant was not the original thief, but did believe that he had received the stolen credit card from "Mike," this could not have been a unanimous verdict.

In sum, this is an instance in which the original jury charge error was not corrected or ameliorated in another portion of the charge; instead, it was compounded by the one misleading statement concerning unanimity that was set out in the jury charge, as well as by the affirmative statements of both the trial judge and prosecutor that the jury could indeed return a non-unanimous verdict. And, given the state of the evidence, we-like the court of appeals-cannot determine that the jury was, in fact, unanimous in finding appellant guilty of one specific credit-card-abuse offense. [**34] Some jurors could have found appellant's defense to one or more of the three allegations persuasive while finding another one unpersuasive. We therefore agree that appellant's constitutional and statutory right to a unanimous jury verdict was violated and this violation caused egregious harm to his right to a fair and impartial trial. [52] We affirm the judgment of the court of appeals.

52 *See Clear v. State, 76 S.W.3d 622, 624 (Tex. App. - Corpus Christi 2002, no pet.)* (finding egregious harm to defendant's right to a unanimous jury verdict when jury charge allowed conviction upon disjunctive submission of three separate sexual assault of a child offenses); *see generally, Ruiz v. State, 753 S.W.2d 681, 683 (Tex. Crim. App. 1988)* (egregious harm resulted from failure to instruct jury on State's burden to disprove sudden passion when defendant did not offer evidence of any other defense); *Bellamy v.*

Page 12

175 S.W.3d 738, *752; 2005 Tex. Crim. App. LEXIS 457, **34

*State, 742 S.W.2d 677, 685-86 (Tex. Crim. App. 1987)* (plurality op.) (egregious harm resulted from erroneous instruction on presumption of knowledge that property was stolen when defendant's knowledge was sole contested issue at trial); *see also Horton, 541 A.2d at 611-12* (although defendant did not object to lack of unanimity instruction in jury charge, failure to give such an instruction was "plain error, that is, error so clearly prejudicial to substantial rights of the defendant as to jeopardize the very fairness and integrity of the trial" when jury could have been misled into believing that it need not be unanimous on which of two different assaults he committed).

[**35] Cochran, J.

**CONCUR BY:** WOMACK

**CONCUR**

*WOMACK, J., filed a concurring opinion, in which MEYERS, J., joined.*

I join the Court's opinion with the understanding that its finding of "egregious harm" in this case, like our finding of "some harm" in *Francis v. State*, [1] is based on more than the mere use of the word "or" in the charge.

1 *36 S.W.3d 121 (Tex. Cr. App. 2000).*

Three of the six members of the court who found the error in *Francis* to be reversible recognized the "strange context" in which it occurred:

a general, one-paragraph indictment that was ill-suited to a multiple-offense trial; an indictment in the conjunctive that could have been in the disjunctive; evidence of multiple offenses, none of which were described by the conjunctive pleading; two denied requests for the State to elect the incident on which it would rely; the State's incorrect decision to rely on two incidents when it had only pleaded one; and the erroneous decision to authorize the jury to convict [*753] for either of two offenses [**36] when the indictment pled only one. [2]

2 *See id., 125, at 127* (concurring opinion).

The charge in this case also was surrounded by errors, as the court's opinion points out: the prosecutor's incorrect statement in voir dire that the law does not require a unanimous verdict, the trial court's making a statement to the same effect in voir dire, and the prosecutor's reiteration of the wrong law in argument. [3]

3 *See ante*, at Part II. B.

It could be said of both *Francis* and this case that, by failing to cure the cumulative effect of a series of missteps, the courts' charges contained the ultimate step that make "it appear[] from the record that the defendant has not had a fair an impartial trial" within the meaning of *Article 36.19.*

En banc.

**DISSENT BY:** Hervey

**DISSENT**

Hervey, J., *filed a dissenting opinion in which* [**37] Keasler, J., *joined.*

DISSENTING OPINION

I respectfully dissent. In this case, a jury unanimously convicted appellant of a single credit card abuse offense. The Court decides that appellant's state constitutional right to a unanimous jury verdict was violated because the jury's unanimous guilty verdict could have been based on a split vote. The State alleged, in three separate paragraphs, three separate acts, that could have been charged as three separate offenses. *See Ngo v. State*, S.W.3d slip op. at 1-2 (Tex.Cr.App. No. PD-0504-04, delivered this date) (three application paragraphs in jury charge permitted jury to convict appellant if some of the jurors found that he stole the credit card, others believed he received a stolen credit card, and still others thought that he fraudulently presented it).

This scenario implicates the Supreme Court's decision in *Schad v. Arizona* [1] and this Court's decision in *Francis v. State*. [2] It does not, however, implicate appellant's state constitutional right to a unanimous jury

Page 13

175 S.W.3d 738, *753; 2005 Tex. Crim. App. LEXIS 457, **37

verdict. Rather, it implicates the "permissible [due process] limits in defining criminal conduct, as **[\*\*38]** reflected in the instructions to jurors applying the [application paragraphs], not one of jury unanimity." *See Schad, 501 U.S. at 631.* [3] And, it would appear that **[\*754]** (even though all three acts in the application paragraphs are morally equivalent), [4] those permissible due process limits may have been exceeded in this case [5] unless the jury was instructed that it had to unanimously agree on at least one of the application paragraphs before it could convict appellant.

1   *501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991).*

2   *36 S.W.3d 121 (Tex.Cr.App. 2000).*

3   In *Schad, 501 U.S. at 630-31*, the Supreme Court described the issue in the following manner:

> Petitioner's first contention is that his [first-degree murder] conviction under instructions that did not require the jury to agree on one of the alternative theories of premeditated and felony murder is unconstitutional. [Footnote omitted]. He urges us to decide this case by holding that the *Sixth, Eighth*, and *Fourteenth Amendments* require a unanimous jury in state capital cases, as distinct from those where lesser penalties are imposed. [Citations omitted]. We decline to do so, however, because the suggested reasoning would beg the question raised. Even assuming a requirement of jury unanimity *arguendo*, that assumption would fail to address the issue of what the jury must be unanimous about. Petitioner's jury was unanimous in deciding that the State had proved what, under state law, it had to prove: that petitioner murdered either with premeditation or in the course of committing a robbery. The question still remains whether it was constitutionally acceptable to permit the jurors to reach one

verdict based on any combination of the alternative findings. If it was, then the jury was unanimous in reaching the verdict, and petitioner's proposed unanimity rule would not help him. If it was not, and the jurors may not combine findings of premeditated and felony murder, then petitioner's conviction will fall even without his proposed rule, because the instructions allowed for the forbidden combination.

> In other words, petitioner's real challenge is to Arizona's characterization of first-degree murder as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argues that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts. The issue in this case, then, is one of the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions, not one of jury unanimity.

**[\*\*39]**

4   *See Schad, 501 U.S. at 643-45* ("moral disparity" between different means in jury charge to satisfy *mens rea* element of single offense could present federal constitutional due process violation).

5   *See Schad, 501 U.S. at 651* (Scalia, J., concurring) (due process would not permit "an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the 'moral equivalence' of those two acts"); *Ngo*, slip op. at 9 n.22; *Francis, 36 S.W.3d at 125* (jury charge permitted conviction for an offense based on separate acts at different times).

The Court decides that this could have been accomplished by inserting the word "unanimously" into each application paragraph. *See Ngo*, slip op. at 17 (application paragraphs would have been correct had

Page 14

175 S.W.3d 738, *754; 2005 Tex. Crim. App. LEXIS 457, **39

each paragraph included the word "unanimously"). But, the charge instructed the jury that it had to unanimously agree on a verdict. [6] This instruction with each application paragraph submitted in the disjunctive accomplished instructing the jury that it had to unanimously **[\*\*40]** agree on at least one of the application paragraphs before it could convict appellant.

> 6  The jury charge stated:
>
> > After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreman.

In addition, the three application paragraphs arising from one offense are what distinguishes this case from *Francis* which involved a single application paragraph authorizing the defendant's conviction for indecency with a child if the jury found that the defendant touched the victim's "breast or genitals" which the evidence showed "referred to two offenses that were committed in two separate incidents." *See Francis, 36 S.W.3d at 121* (Womack, J., concurring). The single application paragraph presenting two separate offenses in *Francis* presented a risk **[\*\*41]** that the defendant could have been convicted on either of these two separate offenses submitted in that single application paragraph even though the jury was not unanimous. *See id*. This case does not present that situation.

Here, appellant failed to alert the trial court to his unanimous jury verdict claim. He also failed to object to any statements by the prosecution and the trial court during voir dire on this subject. This should not entitle appellant to a harm analysis that seeks to determine whether "the jury was, in fact, unanimous in finding appellant guilty of one specific credit card abuse case." *See Ngo*, slip op. at 21 (deciding that appellant was "egregiously harmed" because it cannot be determined whether jury unanimously agreed on one of the application paragraphs). This is the type of harm analysis that should apply had appellant timely objected to the

charge and given the trial court an opportunity to correct any error in the charge. *See Almanza v. State, 686 S.W.2d 157, 171 (Tex.Cr.App. 1984)* (op on reh'g) ("some harm" **[\*755]** analysis applies to jury charge error that is subject to timely objection, "egregious harm" analysis applies to jury charge **[\*\*42]** error that is not subject to timely objection); *Posey v. State, 966 S.W.2d 57, 60 (Tex.Cr.App. 1998)* (discussing reasons for requiring a party to timely object).

Both harm standards set out in *Almanza* require that "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information by the record of the trial as a whole." *See id*.; *Posey, 966 S.W.2d at 60 n.3*. Applying this analytical framework to this case, it is evident that the jury did not believe appellant's testimony that someone named "Mike" gave him the credit cards or that, in direct conflict with the bar manager's testimony, appellant did not attempt to use any of these credit cards to buy beer. *See Ngo*, slip op. at 3-4. Had the jury believed appellant, it would have acquitted him. At the very least then, the record in this case shows that the jury had to have believed that appellant attempted to buy beer with a credit card that did not belong to him (which is covered by the third application paragraph). *See id*.

**[\*\*43]** Based on this state of the record, I would decide that appellant was not "egregiously harmed" by any error in the charge because the jury could have given effect to appellant's defense and acquitted him under the instructions given, and the evidence is sufficient to support at least the third application paragraph. C*f. Gonzalez v. State, 8 S.W.3d 640, 641 (Tex.Cr.App. 2000)* (general substantive constitutional rule is that "a general verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds-even though that [gives] no assurance that a valid ground, rather than an invalid one, [is] actually the basis for the jury's action"). This is how I would apply the harm analysis in this case where appellant may have helped lead the trial court into error when he affirmatively stated that he had no objection to the charge.

In footnote 52 of its opinion, the Court cites a District of Columbia Court of Appeals case to support its decision that the lack of a special unanimity instruction constituted egregious harm. *See Ngo*, slip op. at 22 n.52

Page 15

175 S.W.3d 738, *755; 2005 Tex. Crim. App. LEXIS 457, **43

*citing Horton v. United States, 541 A.2d 604 (D.C.Ct.App. 1988). Horton* applied **[**44]** a "plain error" harm analysis to unpreserved error in the failure to submit a special unanimity instruction. *See Horton, 541 A.2d at 611* (unpreserved jury charge error requires reversal only upon "a showing of plain error, that is, error so clearly prejudicial to substantial rights of the defendant as to jeopardize the very fairness and integrity of the trial").

*Horton*, however, is distinguishable from this case in several important respects. *Horton* involved three separate convictions (where it was possible that the jury may not have been unanimous on any one of these convictions) while this case involves only one conviction. *See Horton, 541 A.2d at 605-06. Horton* also involved an element of juror confusion inherent in separate defenses to separate alleged acts. *See Horton, 541 A.2d at 606-08, 611* (right to unanimous jury clearly prejudiced by confusion inherent in separate defenses to separate gunshots). This case essentially involves one defense (appellant received from "Mike" a credit card which appellant never used) applicable to all three application paragraphs. *See Shivers v. United States, 533 A.2d 258, 263 (D.C.Ct.App. 1987)* **[**45]** (distinguishing situation in *Horton* on this basis and not finding, as another possible source of jury confusion, a problem with distinct and sharply different defenses).

**[*756]** *Shivers* also notes that the District of Columbia practice is "somewhat more stringent" than the "apparent prevailing [plain error] practice in the federal courts." *See Shivers, 533 A.2d at 261 n. 7*, and at *263 n. 13*. According to *Shivers*, the apparent prevailing practice in the federal courts "is to find no 'plain error' so long as evidence as to each incident is sufficiently strong to defeat a motion for a directed verdict of not guilty as to that incident." *See Shivers, 533 A.2d at 261 n. 7*. Also, according to *Shivers*, the "federal courts consider a general unanimity instruction [such as the one in this case] sufficient to insure a unanimous verdict 'except in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion.'" *See Shivers, 533 A.2d at 263 n. 13*. This relatively simple case did not create a genuine danger of jury confusion.

I respectfully dissent.

Hervey, J. **[**46]**



**JERRY GLENN PATTERSON, Appellant v. THE STATE OF TEXAS, Appellee**

**No. 272-87**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*769 S.W.2d 938*; *1989 Tex. Crim. App. LEXIS 50*

**March 8, 1989**

**PRIOR HISTORY:** **[**1]** Petition for Discretionary Review from the Third Court of Appeals [BELL County].

**COUNSEL:** Paul Francis, Temple, Texas, Attorney for appellant.

Arthur C. Eads, D. A. & James T. Russell, Asst. D. A., Belton, Texas, Robert Huttash, State's Attorney, Austin, Texas, Attorneys for State.

**JUDGES:** En Banc. Duncan, Judge. Duncan, III, Judge, Clinton & Teague, JJ., dissent.

**OPINION BY:** DUNCAN, III

**OPINION**

[*939] OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

Appellant was convicted, after a jury trial, of illegally possessing less than 28 grams of methamphetamine. Art. 4476-15, §§ 4.02(b)(6), 4.04(b), V.A.T.S. The verdict reflects that in response to a special issue the jury also found that "the defendant used or exhibited a deadly weapon during the commission of the offense which we found the defendant guilty." A punishment of 25 years, enhanced by two prior felony convictions, was assessed by the trial court. An affirmative finding of use of a deadly weapon was entered in the judgment. *Art. 42.12, § 3g(a)(2),*

*V.A.C.C.P.* The Austin Court of Appeals affirmed the judgment of conviction, but it set aside the assessment of punishment and remanded for a reassessment **[**2]** of punishment. [1] *Patterson v. State, 723 S.W.2d 308* (Tex.App. -- Austin 1987). We granted appellant's petition for discretionary review to determine only whether the court of appeals erred in defining "use," within the meaning of Art. 42.12, § 3g(a)(2), to mean "*any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson, supra, at 315.* [2]

> 1 The court of appeals' decision on assessment of punishment has no bearing on the issue currently before this Court.
>
> 2 Appellant suggests that we grant review because the court of appeals appears to have misconstrued a statute. See Tex.R.App.Pro. 200(c)(4). While this ground is appropriate, we could have also granted review under Rule 200(c)(2). This Court has never construed the meaning of "use" in Art. 42.12, § 3g(a)(2).

Based on information received from a confidential informant, police obtained a search warrant for the home of David Law. When officers arrived to execute the warrant, **[**3]** they saw at least two people enter Law's apartment. A few moments later, the officers went to the door, knocked, and announced themselves as police officers. After waiting approximately ten seconds, the officers kicked in the door. Another officer was at the back door and entered by the same means. Upon gaining

Page 2

769 S.W.2d 938, *939; 1989 Tex. Crim. App. LEXIS 50, **3

entry, the officer who entered the front door observed seven people in the living room. Two others were discovered elsewhere in the apartment.

The appellant was sitting on a sofa in the living room. He was seated at the extreme, left end, which was nearest to the front door. Next to appellant was an end table. On the table was a suede bag, a wallet, and a "gun boot." As one officer approached him, appellant raised his hands and said "I have a gun right here, but I'm not going to touch it." As he said this, appellant indicated a location between his left leg and the end of the sofa. The officer retrieved the gun, and then the items on the end table. A subsequent search revealed that the wallet contained $ 905; the bag held 1.10 grams of methamphetamine and miscellaneous drug paraphernalia; and the "gun boot" contained several rounds of ammunition which fit the gun that had [**4] been seized. Soon after this, appellant was arrested and taken to the police station.

Art. 42.12, *§ 3g(a)(2)*, *supra*, provides as follows:

[*940] (a) The provisions of Sections 3 and 3c of this Article do not apply:

* * *

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment.

The court of appeals began its discussion of the propriety of the affirmative finding by determining the scope of felonies embraced by Art. 42.12, *§ 3g*, and decided that *all* felonies are theoretically susceptible to an affirmative finding of use or exhibition of a deadly weapon. We agree with this conclusion.

The court next summarized a series of cases which construed [**5] the meaning of "use a weapon" in other contexts. 3 These cases rejected a narrow construction which would have defined "use" to mean "fire" in the case of a gun. Desiring to make the statute flexible in its deterrence of danger to human life, the court adopted the approach of the cases cited, holding "use" to constitute "*any* employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony." *Patterson, supra, at 315*.

> 3 The court cited *Gaston v. State, 672 S.W.2d 819* (Tex.App. -- Dallas 1983, no pet.), and incorrectly attributed it to this Court.

The appellant couches his argument in terms of the sufficiency of evidence to support an affirmative finding that he used a deadly weapon. He argues that the gun was difficult for the officer to find, and that there was no evidence of a threat involving the gun. At trial, the State argued that the appellant had the gun in order to protect his drugs and to facilitate their possession. Appellant counters by claiming [**6] that if the gun was to facilitate possession of anything, it was to protect his $ 905 cash. The State filed no brief or response before this Court.

The court of appeals found that, although stated as a sufficiency question, appellant's argument is essentially one of statutory construction. *Id., at 314*. We agree. There are a multitude of rules for statutory construction, and authority exists in support of virtually every position one might wish to take. The most common thread running through these competing maxims is for the judiciary to attempt to effectuate the intent of the Legislature. Direct reference to the evolution of Art. 42.12, *§ 3g*, *supra*, through both houses of the Legislature and conference committee sheds no light on what the Legislature intended to be meant by "used or exhibited a deadly weapon," and tapes of the legislative debates and committee hearings are equally as barren. We are left with the words of the statute itself and a collection of often conflicting rules of construction.

One thing is clear however, in construing the statute it is necessary that the verb forms of the words "use" and "exhibit" be "read in context and construed according to rules [**7] of grammar and usage." *Sec. 311.011(a), Tex.Gov't. Code.* 4 At the outset it is essential to note that "use" and "exhibit" are not synonymous. Each word is exemplary of different types of conduct. "Use," as a verb,

Page 3

769 S.W.2d 938, *940; 1989 Tex. Crim. App. LEXIS 50, **7

may mean a number of things. For example, "use" is defined as "to put into action or service: have recourse to or enjoyment of: employ . . . to **[*941]** carry out a purpose or action by means of: make instrumental to an end or process: apply to advantage: turn to account: utilize." *Webster's Third New International Dictionary* (1976), p. 2523-2524. In explicating the word the dictionary provides the following synonym: "employ, utilize, apply, avail: use is general and indicates putting to service of a thing, usu. for an intended or fit purpose . . . ." *Id.*

> 4     The Code Construction Act applies to all amendments and revisions of a code or code provision made after the 59th Legislature. *Tex.Gov't. Code, § 311.002(2)*. Art. 42.12, *§ 3g(a)(2)*, was added to the Code of Criminal Procedure by the 65th Legislature.

**[**8]** "Exhibit," on the other hand, as a verb, is much more definitive in its meaning: "to present to view: show, display: as a. to show (as a feeling) or display (as a quality) outwardly esp. by visible signs or actions." *Id.*, at 796.

Comparing the words, both are transitive verbs because they require an object to complete their meaning. In the language of the statute their object is a "deadly weapon." In contrasting the word's definitions, "use" is commonly employed to describe conduct in which the verb's object, again, in this case a deadly weapon, is utilized in order to achieve a purpose. In other words, the deadly weapon must be utilized, employed, or applied in order to achieve its intended result: "the commission of a felony offense or during immediate flight therefrom." Art. 42.12, *§ 3g(a)(2)*, *supra*. Conversely, "exhibit" only requires that a deadly weapon be consciously shown, displayed, or presented to be viewed during "the commission of a felony offense or during immediate flight therefrom" *Id.*

Thus, "used . . . a deadly weapon" during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose. Whereas **[**9]** "exhibited a deadly weapon" means that the weapon was consciously shown or displayed during the commission of the offense. Therefore, the court of appeals was correct when it stated that "'used . . . during the commission of a felony offense' refers certainly to the wielding of a firearm with effect, but it extends as well to *any* employment of a deadly weapon, even its simple

possession, if such possession facilitates the associated felony." *Patterson v. State, supra, at 315*. However, to "exhibit" a deadly weapon it need only be consciously displayed during the commission of the required felony offense. Thus, one can "use" a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it.

In *United States v. La Guardia, 774 F.2d 317 (8th Cir. 1985)*, the defendants were convicted of possession of cocaine with the intent to distribute [*18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1)*] and using a firearm during the commission of a felony. Briefly, during a search of the defendants' residence the police found a quantity of cocaine, $ 9,800, and a loaded .22 caliber pistol inside a purse, a nine millimeter **[**10]** automatic pistol in a hall closet, and a .44 caliber rifle in one of the defendants' automobile. On appeal one of the defendants claimed that there was insufficient evidence to prove his use of a firearm to commit a felony.

Prior to its amendment in 1986, *18 U.S.C. § 924(c)(1)*, increased the scope of permissible punishment for "Whoever -- (1) uses a firearm to commit any felony . . ., or (2) carries a firearm unlawfully during the commission of any felony." [5] The federal statute identifies the prohibited conduct as "uses" and "carries." The circuit court of appeals in interpreting this statute commented that "*Section 924(c)(1)* reaches the possession of a firearm which in any manner facilitates the execution of the felony." *United States v. La Guardia, supra, at 321*. See also: *United States v. Grant, 545 F.2d 1309 (2nd Cir. 1976), cert denied, 429 U.S. 1103, 51 L. Ed. 2d 554, 97 S. Ct. 1130 (1977); United States v. Moore, 580 F.2d 360 (9th Cir. 1977), cert denied, 439 U.S. 970, 99 S. Ct. 463, 58 L. Ed. 2d 430 (1978)*. **[*942]** Under the facts, the court of appeals concluded that the "weapons had undoubted utility in the protection of the valuable supply **[**11]** and cash on hand." *Id., at 321*.

> 5     *18 U.S.C. § 924(c)(1), et seq.* now is applicable only to a "crime of violence or drug trafficking crime."

The facts in *United States v. La Guardia, supra*, and those in the present case are quite similar. The appellant claims that the weapon, if used at all, was used to protect his $905. That could obviously be true, but as in *La Guardia, supra*, it does not mean that the weapon had no utility to his protection of the drugs.

Page 4

769 S.W.2d 938, *942; 1989 Tex. Crim. App. LEXIS 50, **11

The court of appeals determined "that a rational trier of fact could find that appellant 'used' the firearm during the commission of the felony offense of possessing the contraband, in a sense that the firearm protected and facilitated appellant's care, custody, and management of the contraband." We will defer to the collective judgment of the court of appeals in this regard and accordingly reject appellant's point of error.

The judgment of the court of appeals is affirmed; however, the cause is remanded to the trial court for reassessment **[**12]** of punishment as ordered by the court of appeals.

(Delivered March 8, 1989)

DUNCAN, III, Judge, Clinton & Teague, JJ., dissent.



**THE STATE OF TEXAS v. GEORGE MOFF, Appellee**

**NO. 458-03**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*154 S.W.3d 599*; *2004 Tex. Crim. App. LEXIS 1648*

**October 6, 2004, Delivered**

**NOTICE:** [**1] PUBLISH

**SUBSEQUENT HISTORY:** Rehearing denied by *State v. Moff, 2005 Tex. Crim. App. LEXIS 52 (Tex. Crim. App., Jan. 12, 2005)*
Rehearing denied by *Moff v. State, 153 S.W.3d 452, 2005 Tex. Crim. App. LEXIS 108 (Tex. Crim. App., Jan. 26, 2005)*

**PRIOR HISTORY:** ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS. NUECES COUNTY.
*State v. Moff, 133 S.W.3d 648, 2003 Tex. App. LEXIS 942 (Tex. App. Corpus Christi, 2003)*

**DISPOSITION:** Judgment of the Court of Appeals was reversed, and the cause was remanded to the trial court to resume the proceedings.

**COUNSEL:** For APPELLANT: Michael H. Hummell, Corpus Christi, TX.

For STATE: Douglas K. Norman, ASSIST. DA., Corpus Christi, TX, Matthew Paul, STATE'S ATTORNEY, Austin, TX.

**JUDGES:** Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and Womack, Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., join. Price, J., concurs.

**OPINION BY:** Meyers

**OPINION**

[*600] The Appellee, Moff, was charged with intentional, knowing and reckless misapplication of fiduciary property. *TEX. PEN. CODE § 32.45(b)*. The indictment submitted by the district attorney failed to specify the transaction or transactions involved. Moff filed a motion to quash the indictment, which was granted by the trial court. The trial court's order directed the State to re-file the indictment, specifying which purchases were alleged to be unauthorized. The State appealed, and the Court of Appeals reversed the trial court's order quashing the indictment. *State v. Moff, 133 S.W.3d 648 (Tex. Crim. App. 2003)*. Appellee filed a petition for discretionary review, asserting that the trial court had the discretion to quash the indictment and to require more specificity. We granted review to determine "whether a trial court abuses its discretion when it requires [**2] more specificity in an indictment alleging recklessness and spanning seven years which fails to identify which of the countless transactions during that time span the State may rely on for conviction." We hold that this issue warrants a *de novo*, rather than an abuse of discretion standard of review. After a *de novo* review, we conclude that the Court of Appeals erred by reversing the trial court's order because the accused was deprived of the notice required to prepare an adequate defense.

**FACTS**

Page 2

154 S.W.3d 599, *600; 2004 Tex. Crim. App. LEXIS 1648, **2

Moff was the chief appraiser of Nueces County for twenty years. In his capacity as chief appraiser, he was responsible for making various purchases for the County. A grand jury indicted Moff for alleged misapplication of fiduciary property. The indictment read:

> On or about and between January 1, 1993 and December 31, 1999, George Moff did then and there intentionally, knowingly, and recklessly misapply property, to wit: money and credit cards, of the value of $ 20,000.00 or more but less than $ 100,000.00, that the said defendant held as a fiduciary in a manner that involved substantial risk of loss to the Nueces County Appraisal District, the owner of said property, **[**3]** and the person for whose benefit the property was held, by using said money and credit cards to make purchases without the effective authorization of the Nueces County Appraisal District Board of Directors.

Appellee filed a motion to quash the indictment for failing to specify which purchases were made without the authorization of the Appraisal District Board of Directors. Moff was also under indictment on two other charges that might have involved the same item or items, and he argued that until he knew which purchases were alleged to be unauthorized, he could not raise the defense that the charges in the current indictment were jeopardy barred. The trial court held an initial hearing on the motion, during which the State argued that the identification of which purchases were unauthorized was an evidentiary issue that Appellee could learn through discovery. The court deferred ruling on the motion. At a subsequent hearing to determine which purchases were alleged to be unauthorized, the State acknowledged that its report on charges for the time period **[*601]** identified in the indictment was 60 pages long, but stated that it was not required to disclose which purchases were unauthorized. **[**4]** The State argued that it had not yet determined which charges it planned to use to support its case against Appellee. The trial court then granted the motion to quash and ordered the State to re-file its indictment to assert with specificity which purchases were allegedly unauthorized. On appeal, the State asserted that the indictment included all elements of the offense, and left out only evidentiary matters not required to be pled. The Court of Appeals held that the trial court abused its discretion in granting the motion to quash.

## STANDARD OF REVIEW

Prior to our decision in *Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997)*, abuse of discretion was the standard employed by our Court when reviewing a trial court's decision to quash an indictment. But we did not have occasion to analyze its appropriateness. However, we now determine that a *de novo* review is more appropriate in a case such as the one before us. The amount of deference appellate courts afford a trial court's rulings depends upon which "judicial actor" is better positioned to decide the issue. *Guzman, 955 S.W.2d at 89*. The sufficiency of an indictment is a question **[**5]** of law. When the resolution of a question of law does not turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, so appellate courts should conduct a *de novo* review of the issue. While this case is different from *Guzman* in that it involves the Appellee's due process right to notice of the charges against him, our reasoning for modifying the standard of review is the same. The trial court's decision in this case was based only on the indictment, the motion to quash, and the argument of counsel, so the trial court was in no better position than an appellate court to decide this issue. Because the Court of Appeals used an abuse of discretion standard of review, we will conduct a *de novo* review of the trial court's ruling rather than review the decision of the Court of Appeals.

## NOTICE

The right to notice is set forth in both the United States and Texas Constitutions. *See U.S. CONST. amend. VI*; *TEX. CONST. art. I, § 10*. Thus, the charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. **[**6]** *State v. Mays, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)*; *Daniels v. State, 754 S.W.2d 214, 217 (Tex. Crim. App. 1988)*; *Adams v. State, 707 S.W.2d 900, 901 (Tex. Crim. App. 1986)*. In addition, the Texas Code of Criminal Procedure provides guidelines relating to the sufficiency of an indictment. *See, e.g., Article 21.03* ("Everything should be stated in an indictment which is necessary to be proved."); *Article 21.04* ("The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."); *Article 21.11* ("An indictment shall be deemed

Page 3

154 S.W.3d 599, *601; 2004 Tex. Crim. App. LEXIS 1648, **6

sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment. . . .").

Here, the indictment followed the statute for misapplication of fiduciary property, which provides:

> A person commits an **[\*\*7]** offense if he intentionally, knowingly, or recklessly misapplies **[\*602]** property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

*TEX.PEN.CODE. § 32.45(b).* We have stated that ordinarily, an indictment is legally sufficient if it delineates the penal statute in question. *Daniels, 754 S.W.2d at 218*; *Thomas v. State, 621 S.W.2d 158, 161 (Tex. Crim. App. 1981)* (opinion on rehearing); *Haecker v. State, 571 S.W.2d 920, 921 (Tex. Crim. App. 1978)*. However, these cases are different from the case before us because the issue in them relates to whether the *terms* used in the indictment are sufficiently specific to provide notice to the defendant. Thus, this rule applies when the indictment is framed under a statute in which the act constituting the offense is defined so that the accused is informed of the nature of the charge. *Haecker, 571 S.W.2d at 921*. Additionally, this rule does not mean that a trial court cannot require the State to amend an indictment which tracks the **[\*\*8]** language of the statute when more notice is needed so that the accused can adequately prepare a defense.

Because fundamental constitutional protections are involved, if a defendant files a timely motion stating that the indictment does not provide adequate notice, there are some circumstances in which the trial court may require more information. In *Drumm*, the appellant filed a motion to quash, stating that the information failed to give sufficient notice. The trial court overruled the motion. We reversed the judgment and stated that:

> Because of the fundamental notions of fairness that require adequate notice of the

nature of the charges against the accused in our system of justice, a timely claim of inadequate notice requires careful consideration. . . . When the defendant petitions for sufficient notice of the state's charge by motion to quash adequately setting out the manner in which notice is deficient, the presumption of innocence coupled with his right to notice requires that he be given such notice.

*Drumm v. State, 560 S.W.2d 944 at 946-47*. Thus, the accused has the right to notice that is specific enough to allow him to investigate the allegations against **[\*\*9]** him and establish a defense.

We have considered issues similar to the one before us in *Swabado v. State, 597 S.W.2d 361 (Tex. Crim. App. 1980)*, and *Amaya v. State, 551 S.W.2d 385 (Tex. Crim. App. 1977)*. In *Swabado*, the defendant was charged with tampering with a government record. He filed a motion to quash the indictment, contending that it was vague and ambiguous due to the fact that, as a nursing home administrator for several years prior to the indictment, he routinely prepared and filed government records including monthly staffing reports. *Swabado, 597 S.W.2d at 362-63*. The trial court denied the motion. We held that the trial court erred in denying the motion because the indictment failed to identify the monthly staffing report on which the State would rely. *Id. at 364*. Thus, the statutory language was insufficient to provide the defendant with notice of the offense.

The defendant in *Amaya* was required to make many statements to the Department of Public Welfare. The information alleging welfare fraud failed to allege which of the defendant's statements was false. We stated that, "if a proper exception **[\*\*10]** or motion to quash is filed and brought to the attention of the court before trial, the State must then respond by amending the indictment or information to include a specific allegation of what the State will rely upon to convict." *Amaya, 551 S.W.2d at 387*, citing *American Plant Food Corp. v. State, 508 S.W.2d 598, 603 (Tex. Crim. App. 1974)*. We held that the **[\*603]** defendant was entitled, upon proper exception, to know which false statement the State would rely upon for conviction. *Amaya, 551 S.W.2d at 387*. Thus, as a general rule, an indictment must give the defendant notice of precisely what he is charged with so that he may prepare an adequate defense. However, in a case such as the one

Page 4

154 S.W.3d 599, *603; 2004 Tex. Crim. App. LEXIS 1648, **10

before us, in which each unauthorized transaction was a separate criminal act but together constitutes the single offense of misapplication of fiduciary duty, details regarding the specific acts on which the State intends to rely are not required to be listed in the indictment, as long as they are provided by some other means.

## ANALYSIS

The indictment in the case before us alleges that the illegal purchases occurred "on or about and between [**11] January 1, 1993 and December 31, 1999." Similar to the defendant in *Swabado*, in his capacity as Chief Appraiser of the Nueces County Appraisal District, Moff used money and credit cards to make numerous purchases of equipment and supplies during the time period alleged in the indictment. Although the indictment correctly tracks the language of the statute, in this type of case, that alone is not sufficient to fulfill the constitutional and statutory requirements of specificity. It is unreasonable to require the defendant to gather evidence and prepare a defense for each of the credit card and cash transactions he made during the seven-year time frame in the indictment. Thus, additional information that is reasonably necessary for the defense to prepare its case must be provided. This is not to say that the State must lay out its case in the indictment, only that the defendant must be informed of the specific transactions that allegedly violate the statute. We recently stated in *Kellar v. State, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003)*, that "this due process requirement may be satisfied by means other than the language in the charging instrument." In *Kellar* [**12] , prior to trial, the State filed an itemized list containing the dates, check numbers, and amounts of each transaction, which provided the defendant with sufficient notice to prepare his defense. This is not meant to imply that the notice requirement is always satisfied by discovery. For example, the State may not conduct "trial by ambush," in which the information necessary to provide notice is buried somewhere in a mass of documents turned over to the defendant. The trial court must determine whether the notice given to the defendant is sufficient and should quash the indictment if the notice is not specific enough. Therefore, the trial court did not err in quashing the indictment because the State failed to give Moff sufficiently specific notice of the particular act or acts with which he is charged.

We note that in the pre-trial hearing and at oral argument, the State suggested that Moff should look outside the indictment to a report generated by the Texas Rangers to identify the unauthorized purchases. The trial judge specifically rejected this idea and found that the documents that had been provided to Moff did not provide sufficiently specific notice to allow him to prepare [**13] his defense. [1]

1 [STATE] I think that the best working blueprint we have at this point we've already produced to them, which is the ranger's 60-plus page report. So that, in terms of theory of a case at this point, that's probably the best one we have.

[COURT] Have you folks been talking to the - - to the federal government? That's how - - that's what they do. They produce hundred-page documents and go "Somewhere in there lies the offense."

* * *

But it seems to me that there seems to be a notice problem. You've got the dollar amount but there's got to be some documentation that says: Well, Mr. Moff, on this date did A and this is what we say he did, he misappropriated or used a credit card.

* * *

It seems to me that if I'm going to sit here and we have a jury in the box, that a person that's accused of a crime needs to know what he or she is accused of. For the State to say, "Well, between '93 and '99," and produce whatever documents, and just throw it against the wall is not serving anyone, including Mr. Moff or any accused that comes into court.

* * *

[DEFENSE] All I'm asking them to do is identify out of the thousands of pages of documents they've produced which ones reflect something that they can - - that they contend was illegal.

[**14] [*604] Because the indictment was quashed and the State appealed the decision of the trial court rather than re-file the indictment, there has been no trial. Since there was no trial from which to show harm, the situation before us is not subject to a harm analysis.

Page 5

154 S.W.3d 599, *604; 2004 Tex. Crim. App. LEXIS 1648, **14

*Conclusion*

We hold that, because the State failed to provide sufficient notice to inform the accused of the specific acts for which he was charged, the trial court did not err in quashing the indictment. The judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court to resume the proceedings.

Meyers, J.



**TRACY PAUL TAYLOR, Appellant v. THE STATE OF TEXAS**

**NO. PD-0266-09, PD-0267-09, PD-0268-09**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*332 S.W.3d 483*; *2011 Tex. Crim. App. LEXIS 326*

**March 9, 2011, Delivered**

**NOTICE:** PUBLISH

**SUBSEQUENT HISTORY:** On remand at, Decision reached on appeal by *Taylor v. State, 2012 Tex. App. LEXIS 581 (Tex. App. Houston 1st Dist., Jan. 26, 2012)*

**PRIOR HISTORY:** **[**1]**
ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY.
*Taylor v. State, 2009 Tex. App. LEXIS 430 (Tex. App. Houston 1st Dist., Jan. 22, 2009)*
*Taylor v. State, 2009 Tex. App. LEXIS 418 (Tex. App. Houston 1st Dist., Jan. 22, 2009)*
*Taylor v. State, 288 S.W.3d 24, 2009 Tex. App. LEXIS 7075 (Tex. App. Houston 1st Dist., 2009)*

**JUDGES:** MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. PRICE, J., concurred. JOHNSON, J., dissented.

**OPINION BY:** Meyers

**OPINION**

[*485] Appellant, Tracy Paul Taylor, was convicted of three offenses of aggravated sexual assault and sentenced to seventy years' confinement with a fine of $10,000 for each offense. Much of the testimony at trial related to acts committed before Appellant turned seventeen. On appeal, Appellant argued in part that the jury charges were erroneous because they did not limit the jury's consideration to evidence of acts committed after his seventeenth birthday. The court of appeals held that the error in the jury charges deprived Appellant of a fair and impartial trial. We granted review to consider the effects of the instructions received and not received by the jury in this case. We will reverse.

**I. *PENAL CODE SECTION 8.07(b)***

*Texas Penal Code Section 8.07(b)* states:

Unless the juvenile court waives jurisdiction under *Section 54.02, Family Code*, and certifies the individual for criminal prosecution or the juvenile court has previously **[**2]** waived jurisdiction under that section and certified the individual for criminal prosecution, *a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age* except an offense described by *Subsections (a)(1)-(5)*. [1]

*TEX. PENAL CODE ANN. § 8.07(b)* (emphasis added).

1 *Subsections (a)(1)-(5)* are not applicable in this case.

**II. PROCEDURAL HISTORY**

Page 2

332 S.W.3d 483, *485; 2011 Tex. Crim. App. LEXIS 326, **2

The jury found Appellant guilty of three offenses of aggravated sexual assault, as charged in three separate indictments. The earliest date cited among the indictments was "on or about September 01, 2002." On that date, Appellant was seventeen years old. [2] Therefore, the indictments did not violate *Section 8.07(b)*, nor did the verdict forms, which referred back to the indictments. [3] The issue before this Court relates to the jury charges.

> 2  Appellant turned seventeen earlier that year on March 25, 2002.
>
> 3  For two of the three offenses, the indictments evolved from the time they were originally filed to the time they were presented at the start of the trial. The altered allegations pertained to the dates of the offenses and the specific methods of assault. However, the inconsistences do not affect our analysis because **[**3]** the final revised dates that were presented to the jury all fall after Appellant's seventeenth birthday (as were all of the dates in the original indictments); and the earliest date, after the revisions, remained September 1, 2002.

At trial, testimony referred to various years as the start of Appellant's abusive conduct, all pre-dating Appellant's seventeenth birthday. A child-abuse pediatrician testified regarding her examination of the victim, which took place at the Children's Assessment Center in 2006. Her report, admitted into evidence, stated that **[*486]** Appellant touched the victim inappropriately for the first time when the victim was seven. Appellant would have been twelve at that time. The victim's father dated the start of his daughter's contact with Appellant as the fall of 1998, when the victim would have been eight and Appellant would have been thirteen. The victim's own testimony described the "worst" years of abuse as her sixth through eighth grade years. She agreed with the State's assertion that in sixth grade she was ten and eleven. Appellant would have then been fifteen and sixteen. [4]

> 4  The record includes different dates of birth for the victim. The Children's Assessment **[**4]** Center report lists June 12, 1990 as the victim's date of birth, while the victim testified that her birthday was October 1. Therefore, to a small extent, these calculations are approximate.

The jury charges did not contain an 8.07(b) instruction to limit the jury's consideration to events after Appellant's seventeenth birthday. After reviewing the court's proposed charge, defense counsel stated that she had no objections.

At the court of appeals, Appellant argued that, without an 8.07(b) instruction, the charges were erroneous because the evidence presented at trial included acts committed before he turned seventeen. The court of appeals agreed, concluding that without an 8.07(b) instruction, "the charge authorized the jury to convict [A]ppellant based on acts he committed before his seventeenth birthday." *Taylor v. State, 288 S.W.3d 24, 30 (Tex. App.--Houston [1st Dist.] 2009, pet. granted).*

The State now argues to this Court that, in the absence of any request for an 8.07(b) instruction from defense counsel, the judge was not required to *sua sponte* instruct the jury on this point. The State also argues that the court of appeals should have found any error to be harmless. [5]

> 5  We granted **[**5]** the following two issues:
>
> (1) Is the age-based defense located in *Section 8.07(b) of the Texas Penal Code* a "defensive issue" (as opposed to "law applicable to the case") for purposes of determining whether the trial judge must *sua sponte* submit a jury instruction on this defense?
>
> (2) Was Appellant harmed by any error resulting from the absence of an instruction on the age-based defense located in *Section 8.07(b) of the Texas Penal Code* when the victim testified that the worst abuse occurred after Appellant turned 17 years old?

## III. ARTICLE 36.14 AND THE LAW APPLICABLE TO THIS CASE

The State's first issue asks if the trial judge was required to *sua sponte* submit an 8.07(b) instruction in this case. *Code of Criminal Procedure Article 36.14* details the requirements and procedures for the delivery of the court's charge to the jury. TEX. CODE CRIM. PROC. ANN. art. 36.14. It states, "the judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *Id. Article 36.14* also provides that, before the charge is read to the jury, "the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections."

Page 3

332 S.W.3d 483, *486; 2011 Tex. Crim. App. LEXIS 326, **6

[**6] *Id*. However, the judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge; this may require the judge to *sua sponte* provide the jury with the law applicable to the case, under *Article 36.14*. So, even in the absence of action on the part of Appellant's defense counsel, if an 8.07(b) instruction were the law applicable to this case, the trial judge was required, under *Article 36.14*, to include it in the jury charges. We must assess whether the jury charges set forth the law applicable to the case, [*487] and specifically, whether an 8.07(b) instruction belonged in the jury charges.

We have previously held that *Article 36.14* imposes no duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues. *Posey v. State, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998)*. An unrequested defensive issue is not the law applicable to the case. *Id*. So, we must classify an 8.07(b) instruction as the law applicable to the case or as an unrequested defensive issue.

In *Posey*, the instruction we labeled an "unrequested defensive issue" was a mistake-of-fact instruction. *Id. at 59*. The appellant argued [**7] that the trial court erred by not instructing the jury *sua sponte* on that point. *Id*. The defense of mistake of fact is codified in *Section 8.02(a) of the Texas Penal Code*. [6] *TEX. PENAL CODE ANN. § 8.02(a)*. The close proximity of *Sections 8.02(a)* and *8.07(b)* in the Penal Code, both in the General Defenses chapter, invites a comparison of the statutes. *Section 8.02(a)* establishes mistake of fact as "a defense to prosecution," which correlates to its classification as a "defensive issue." *Id*. In contrast, *Section 8.07(b)* does not refer to a "defense" at all. *TEX. PENAL CODE ANN. § 8.07(b)*. Rather, it is a prohibition of prosecutions and convictions based upon offenses committed before the age of seventeen. *Id*.

> 6 Note that in *Posey* we explained that an 8.02(a) instruction will not be a "defensive issue" in every case. *Posey, 966 S.W.2d at 62*. When a defendant timely objects to the omission of the instruction in the jury charge at trial, it will be the "law applicable to the case." *Id*.

In addition to studying the language of *8.07(b)* and its general applicability, we must also consider the particulars of the record before us in order to decide whether an 8.07(b) instruction is the law applicable [**8] to this case or an unrequested defensive issue. The State

argues that an 8.07(b) instruction is a defensive issue in this case because defense counsel's theory at trial was that Appellant never sexually assaulted the victim, not that he only did so only before turning seventeen. [7] In other words, the State suggests that activating *8.07(b)* and directing attention away from Appellant's pre-seventeen conduct would have contravened the defense's theory that Appellant was innocent at every age.

> 7 To support this reading of the defendant's theory of the case, the State cites to defense counsel's closing argument, where counsel stated, "the State simply has not met its burden of proof to you that Tracy Taylor committed these offenses."

A feature of a defensive issue is that it is a strategic decision "generally left to the lawyer and the client." *Posey, 966 S.W.2d at 63*. However, the applicability of *Section 8.07(b)* is not contingent upon any party's theory of the case. It is not within the defendant's (or counsel's) discretion to decide whether or not he may be prosecuted for or convicted of offenses committed before turning seventeen. Even if the defense wanted to avoid a *legally* innocent [**9] argument, that does not change the fact that the jury in this case received evidence upon which they were statutorily prohibited from convicting Appellant.

Due to the repeated testimony regarding Appellant's pre-seventeen conduct, the absence of an 8.07(b) instruction in the jury charges is problematic. Further complicating matters is an instruction that *was* included:

> You are further instructed that the State is not bound by the specific date which the offense, if any, is alleged in [*488] the indictment to have been committed, [8] but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations. The limitation period applicable to the offense of aggravated sexual assault of a child is ten years from the date of the 18th birthday of the victim of the offense.

With this paragraph, the jury was instructed that it could ignore the dates cited in the indictments and could convict Appellant for any offense committed prior to the

Page 4

332 S.W.3d 483, *488; 2011 Tex. Crim. App. LEXIS 326, **9

victim's twenty-eighth birthday, which will fall in 2018.

> 8 The dates alleged were the first, fifteenth, and thirtieth of September 2002 (all after Appellant's seventeenth birthday).

We noted **[\*\*10]** a similar problem in *Alberty v. State, 250 S.W.3d 115, 116 (Tex. Crim. App. 2008)*, in which indictments alleged that the defendant, as an adult, sexually assaulted a child. However, testimony described incidents of assault dating from the time the defendant was thirteen. *Id*. The jury charges in that case featured the following instruction, to which the defendant made no objection:

> You are instructed that the State is not required to prove the exact date alleged in the indictment. The term "on or about the [respective date]" means any date prior to the date of the filing of the indictment, August 27, 2003, and within the Statute of Limitations. The Statute of Limitations for this type of alleged offense is 10 years past the child's 18th birthday. [9]

*Id. at 117*. On appeal, the defendant asserted that the jury charges were erroneous because "they instructed the jury that they could convict appellant of any offense anterior to presentment of the indictment and within the statutes of limitations, when in fact he could only be convicted of offenses occurring on or after his seventeenth birthday, July 7, 2001." *Id*. This issue, highlighting the tension between *8.07(b)* and the statute-of-limitations **[\*\*11]** instruction, was misconstrued by the court of appeals in *Alberty* as a jurisdictional complaint. *Id*. We reversed and remanded the case for resolution of the jury-charge issue. *Id. at 118*. On remand, the court of appeals concluded that the jury charges were erroneous because the instruction received by the jurors contravened *Section 8.07(b)*. *Alberty v. State, No. 05-05-01687-CR, No. 05-05-01688-CR, 2008 Tex. App. LEXIS 5252, \*8-9 (Tex. App.--Dallas July 16, 2008, no pet.)* (not designated for publication). [10]

> 9 Arguably, the statute-of-limitations instruction in *Alberty* was more injurious than the instruction featured in Appellant's jury charges because *Alberty*'s explicitly stated that the offense could have occurred on "any date prior" to the filing of the indictment. While the instruction in

Appellant's charges established a certain future chronological limitation--the victim's twenty-eighth birthday--the past chronological limitation was more vague; it simply provided that the State was not bound by the specific dates alleged in the indictments. *Alberty*'s instruction more blatantly contravened *Section 8.07(b)*'s prohibition of convictions based upon juvenile conduct.

> 10 The court of appeals **[\*\*12]** in *Alberty* then proceeded, under *Almanza v. State* (discussed *infra*), to determine that the defendant was egregiously harmed. *Alberty, 2008 Tex. App. LEXIS 5252*.

We, too, conclude that a jury charge is erroneous if it presents the jury with a much broader chronological perimeter than is permitted by law. The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Delgado v. State, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)*. This is an "absolute sua sponte duty," and, **[\*489]** in this case, the trial judge had a *sua sponte* duty to provide an 8.07(b) instruction. *Id*. Although the jury instruction here did not specifically refer to "any offense anterior to the presentment of the indictment" as did the charge in *Alberty*, it did not limit the jury's consideration of such. The absence of an 8.07(b) instruction, combined with the evidence of Appellant's conduct as a juvenile and the instruction that the jurors did receive--that "a conviction may be had" for any offense committed before the victim's twenty-eighth birthday--ultimately resulted in inaccurate charges that omitted an important portion of the law applicable to the case. Therefore, we find a **[\*\*13]** violation of *Article 36.14* and must proceed to a second step of analysis.

## IV. ARTICLE 36.19 AND *ALMANZA*

After finding error in the court's charges, we must next consider whether Appellant was harmed by the error. *Alberty, 250 S.W.3d at 119*. *Article 36.19* establishes the standard for reversal on appeal when the requirements of *Article 36.14* [11] have been disregarded: "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *TEX. CODE CRIM. PROC. ANN. art. 36.19*.

> 11 *Article 36.19* addresses appellate review for a

Page 5

332 S.W.3d 483, *489; 2011 Tex. Crim. App. LEXIS 326, **13

group of statutes, not just *Article 36.14*. The other articles to which this provision applies are *36.15*, *36.16*, *36.17*, and *36.18*. TEX. CODE CRIM. PROC. ANN. art. 36.19.

In *Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985)* (op. on reh'g), we construed *Article 36.19* as presenting two distinct standards for jury-charge error, the application of each determined by whether the defendant objected at trial. [12]

12 Note that *Almanza* does not apply unless the appellate court first finds a violation of *Article 36.14* (or any **[**14]** of the other articles referenced in *Article 36.19*). *Posey, 966 S.W.2d at 60*. "Neither 'harm' standard set out in *Article 36.19* as construed by *Almanza* applies unless an appellate court first finds 'error' in the jury charge." *Id*.

If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error.

. . .

On the other hand, if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"--in short "egregious harm."

*Id. at 171*. Because Appellant did not object to the jury-charge error at trial, resolution of the instant case requires an egregious harm analysis, and we do not believe that egregious harm resulted from the charge error in this case.

As we have stated, "[e]gregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996)*. In **[**15]** determining whether Appellant was deprived of a fair and impartial trial, we review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza, 686 S.W.2d at 171*. We will examine "any . . . **[*490]** part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id. at 174*. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Id. at 172*; *see Hutch, 922 S.W.2d at 171*.

### A. J.G.'s Testimony

J.G. testified that she began staying with Appellant's family at the age of eight (when Appellant was 13 years old). J.G's father paid Appellant's twin sister, Sheena, to babysit his daughter until he was able to pick her up after school, normally around 6:00 p.m. J.G. explained that Appellant initially treated her like an "annoying little sister," but this soon progressed such that he would be "mean" and make J.G. **[**16]** feel "uncomfortable." Referring to the acts of molestation, J.G. testified that "[i]n the beginning -- like when I first came to move down here, it didn't happen as much. Then as the years progressed, it progressed, what he did."

The first instance that J.G. could remember when she felt "uncomfortable" happened in Appellant's mother's bedroom. J.G. could not recall her age at the time but did remember that, other than J.G. and Appellant, only Appellant's sick grandmother was home. Appellant asked J.G. if she wanted to play "Doctor." Appellant proceeded to roll a new roller paint brush up and down her leg. Then he took off her "bottoms" and put the handle of the brush inside of her vagina. Appellant stopped when his grandmother threw a shoe at the bedroom door. J.G. also recalled an occurrence months later when Appellant instructed her to put a CoCoa Puff in her vagina and leave it there. J.G. pulled out the cereal when Appellant left the room.

In addition, J.G. described an incident that took place when she was in the fifth grade. She stated that she knew it occurred shortly after she began going to Appellant's house because she remembered the navy pants that she was wearing then. J.G. **[**17]** testified that, when no one else was home, Appellant told her to go into the bathroom. There, he instructed her to stand on the toilet and pull down her pants, and he licked her vagina. Eventually, Appellant took J.G. into his bedroom, told

Page 6

332 S.W.3d 483, *490; 2011 Tex. Crim. App. LEXIS 326, **17

her to take off all of her clothes, and "put his penis in [her] vagina."

Appellant began asking J.G. for oral sex "a lot," and they had vaginal and anal sex "a lot." In fact, J.G. testified that "something" would happen nearly every time she went over to the house. She could remember some instances clearly while others were only recalled in flashes. Among the more vivid recollections were the times when Appellant instructed J.G. to put various things in her vagina (e.g., the top of a lava lamp, the handles of a broom and a hammer, an ice cube, a bar of soap, and a vibrator), and he would often attempt to push the objects in farther.

This type of abuse continued for years. J.G. testified that the "worst" years were between sixth grade (when J.G. was 10 and 11 and Appellant was 15 and 16) and eighth grade (when J.G. was 12 and 13 and Appellant was 17 and 18). She also asserted that Appellant "did it a lot" when she was in the seventh, eighth, and ninth [**18] grades, typically immediately after school. When J.G. would object to Appellant's demands, he would threaten to tell her father about the things that she had done, such as sneaking clothes into school during the fifth and sixth grades because her father thought they were too tight or too short.

[*491] The instances of abuse were not happening as much toward the end. J.G. claimed that about the time that Appellant started dating his future wife, she began to say "No" more often. J.G. stated that the molestation stopped when she turned 15 (at which time Appellant was 20 years old), but she emphasized that it occurred every day before that. In July 2006, the summer before she was to enter the eleventh grade, J.G. traveled to North Carolina with Appellant and his family to visit their relatives. During the trip, J.G. told Appellant's wife and sister-in-law about the abuse.

### B. Other Testimony

During its case-in-chief, the State called several other witnesses to testify. J.G.'s father testified that he worked a lot, so J.G. would stay at Appellant's home during the day. She began spending time there in October 1998 (when she was eight years old), but her father was unaware of any abuse until J.G.'s [**19] outcry in July 2006. J.G.'s godmother attested similarly, stating that J.G. began staying over at Appellant's home when she was eight years old. She became aware of the sexual abuse

when the family returned from North Carolina, at which time she took J.G. to the police station to file a report.

The deputy from the Child Abuse Investigation Unit who was assigned to J.G.'s case took the stand, too. Although he did not speak directly with J.G. during the course of the investigation, the deputy watched, via video, the interview between J.G. and a forensic interviewer. The deputy believed J.G.'s behavior to be consistent with other cases that he had seen involving sexual abuse. He also explained that a delayed outcry, one taking place some time after the initial abuse, was not unusual. Subsequently, a psychologist and a professional counselor with whom J.G. interacted at the Children's Assessment Center testified that J.G.'s behavior was consistent with years of sexual abuse but on cross-examination acknowledged that the same symptoms occur in children that were not sexually abused.

The pediatrician at the Children's Assessment Center who performed J.G.'s medical examination was called to [**20] the stand next. She explained that J.G. seemed emotionally distraught and complained of headaches and blood in her stool. A physical examination showed that J.G. was healthy, with no signs of trauma. The doctor asserted that a normal exam is the most common finding in children who have been sexually abused because the vagina heals quickly and it is not uncommon for the hymen to remain intact. During the examination of J.G.'s anus, the doctor discovered a hemorrhoid but no bleeding. On cross-examination, the doctor acknowledged that the physical examination results concerning J.G.'s vagina and anus were also consistent with someone who had not been sexually assaulted. The physician's report indicated that Appellant touched J.G. inappropriately for the first time when the victim was seven (and Appellant would have been 12 years old) and the abuse continued until about six weeks before the exam (when Appellant was 20 years old).

In Appellant's case-in-chief, several witnesses testified and generally maintained that Appellant was never left alone with J.G., thereby suggesting that Appellant would not have had the opportunity to molest J.G. Appellant's mother testified that J.G. was never [**21] left alone with Appellant, but on cross-examination, she admitted that she worked long hours. Sheena asserted that she was paid to take care of J.G., so during those eight years, she was watching her all

Page 7

332 S.W.3d 483, *491; 2011 Tex. Crim. App. LEXIS 326, **21

of the time and never left her alone with Appellant. Sheena and her [*492] husband explained that Appellant spent time at the library after school playing card games and Game Boy, and by the time he would return home, J.G.'s dad would have already picked her up. A friend who stayed in the family's home during September 2002 (when Appellant was 17) maintained that she never saw Appellant and J.G. together. Sheena's husband, who moved into Sheena's room in September 2002 and remained there for three years, stated the same.

In its rebuttal, the State called Appellant's sister-in-law. She thought that she had seen Appellant and J.G. alone before, but she could not be sure. She also explained that after J.G. confided in her about the molestation, she was worried about J.G. returning to Texas in the same car as Appellant. The State also called Appellant's wife, who testified outside of the jury's presence. She stated that she met Appellant when he was 18 years old, and she was in disbelief when [**22] she heard J.G.'s outcry because she had never seen Appellant alone with J.G.

### C. Arguments of Counsel

The defense's theory was that Appellant never molested J.G. [13] During closing arguments, Appellant argued that the evidence was insufficient to prove beyond a reasonable doubt that he ever molested J.G. Appellant highlighted the testimony of several witnesses that he was never alone with J.G. during the eight-year period when the abuse allegedly occurred. He also indicated that J.G.'s emotional and physical symptoms could logically occur for reasons other than sexual abuse.

> 13   This was made clear in one of Appellant's first objections at trial. Outside of the jury's presence, Appellant suggested that J.G. was making up the allegations against him--J.G. was allegedly molested before she moved in with her father, and that is where "she got the idea to start saying she was molested by [Appellant]." The allegations of prior abuse were not developed at trial.

In contrast, the State's closing statement stressed the consistency of J.G.'s testimony, including that the sexual abuse began when she was in the fifth grade and continued until she turned fifteen. The State noted that the abuse started [**23] off slow but increased in frequency; in fact, the abuse occurred so often that one incident merged into another in J.G.'s recollection. The State referred to the initial abuse that occurred when J.G. was in the fifth and sixth grades (before Appellant was 17 years old). However, it also highlighted that some of the "worst" molestation occurred when J.G. was in the sixth, seventh, eighth grades, as well as part of the ninth grade. The State further pointed out that Appellant was 17, 18, and 19 years old when J.G. was in the seventh, eighth, and ninth grades, and by doing so, the State emphasized an age range for Appellant that complied with *Section 8.07(b)*.

### D. Jury Charge

The jury charge erroneously instructed the jury that a conviction could be had for offenses "committed at any time within the period of limitations," which was "ten years from the date of the 18th birthday of the victim of the offense." The State suggests that "[t]here is no language in the jury instruction suggesting the consideration of dates before the presentment of the indictment" and argues that (the jury charge instruction focuses on looking forward in time "[J.G.'s] eighteenth birthday and beyond)." But we presume [**24] that the jury understood and followed the court's charges absent evidence to the contrary. *Hutch, 922 S.W.2d at 172*. Therefore, the jury charge authorized the jury to convict, in part, based on acts committed [*493] before Appellant's seventeenth birthday; however, it also allowed the jury to consider acts that occurred after his seventeenth birthday but before the limitations period expired.

Taking the record as a whole, we believe that egregious harm did not result from the jury-charge error. The defensive theory was that no sexual abuse occurred at any time. It is unlikely that the jury believed that Appellant sexually assaulted the victim before he turned 17 years old but not after. In this case, the jury either believed Appellant or believed the victim.

This case can be distinguished from *Hutch* in which we held that egregious harm resulted from a charge error. There, "the instruction was 180 degrees opposite of what is should have been." *Id. at 172*. We explained that "we must presume the jury followed the erroneous instruction which authorized the stop if appellant *was* wearing a seat belt. In fact the opposite is true; such a stop would have been *illegal*. Under the erroneous instruction, [**25] the only way the jury could have convicted was by using illegally obtained evidence." *Id.*

Page 8

332 S.W.3d 483, *493; 2011 Tex. Crim. App. LEXIS 326, **25

Here, the error was the omission of an instruction, rather than the presentation to the jury of an erroneous instruction. In contrast to *Hutch*, the jury in this case could have convicted Appellant based upon evidence presented, even if the proper instruction had been given and Appellant's pre-seventeen acts were disregarded by the jury. The evidence showed an eight-year pattern of escalating sexual abuse of J.G. by Appellant. Appellant turned 17 years old midway through the abusive period, meaning that he is subject to prosecution for his conduct beginning on that birthday or March 25, 2002, and evidence of molestation that occurred after that date was introduced at trial. For example, although J.G. described with more detail the instances that occurred during Appellant's juvenile years, she also described abuse that occurred when Appellant was 17, 18, 19, and 20 years old. The State emphasized this in its closing argument.

Accordingly, we conclude that Appellant was not denied a fair and impartial trial and was, therefore, not egregiously harmed. *TEX. CODE CRIM. PROC. ANN. art.* *36.19.*

## V.  [**26] CONCLUSION

*Section 8.07(b)* is the law applicable to this case and therefore subject to *sua sponte* submission. Appellant was not required to make an objection or request to have this instruction included in the jury charges. *See Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000).* The court of appeals was correct to conclude that the trial court erroneously failed to instruct the jury on *Section 8.07(b)*. However, the court of appeals erred in concluding that the error resulted in egregious harm. We reverse the court of appeals and remand to the court of appeals to address the remaining issues.

Meyers, J.

Delivered: March 9, 2011

Publish



**WILBERT JAMES TEAL, Appellant v. THE STATE OF TEXAS**

**NO. PD-0689-06**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*230 S.W.3d 172*; *2007 Tex. Crim. App. LEXIS 316*

**March 7, 2007, Delivered**

**NOTICE:** **[**1]** PUBLISH

**SUBSEQUENT HISTORY:** On remand at *Teal v. State, 2007 Tex. App. LEXIS 9322 (Tex. App. Beaumont, Nov. 28, 2007)*

**PRIOR HISTORY:** ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE NINTH DISTRICT COURT OF APPEALS ANGELINA COUNTY.
*Teal v. State, 187 S.W.3d 80, 2006 Tex. App. LEXIS 1773 (Tex. App. Beaumont, 2006)*

**COUNSEL:** For APPELLANT: Bill Burnett, Coldspring, TX.

For STATE: Dale Summa, ASSISTANT DISTRICT ATTORNEY, Lufkin, TX.

**JUDGES:** COCHRAN, J., delivered the opinion of the Court, in which MEYERS, PRICE, KEASLER and HOLCOMB, JJ., joined. KELLER, P.J., filed a concurring opinion in which WOMACK and HERVEY, JJ., joined. JOHNSON, J., concurred.

**OPINION BY:** COCHRAN

**OPINION**

[*173] Appellant was indicted for the offense of hindering apprehension. [1] The indictment failed to allege that appellant knew that Curtis Brown, the person whose apprehension appellant was hindering, was a fugitive for Failure to Register as a Sex Offender. The court of appeals held that the district court never acquired subject-matter jurisdiction to try the case because the indictment alleged only a misdemeanor. [2] We granted the State's Petition for Discretionary Review to determine whether "the court of appeals erred in holding that the indictment presented in this case was insufficient to vest the district court with subject-matter jurisdiction." We hold that, under *Studer v. State*, [3] the indictment sufficed to vest jurisdiction in the district court. Therefore, we vacate the judgment of the court of appeals and remand the case to that [**2] court to address appellant's remaining claims.

1 *TEX. PENAL CODE § 38.05.*
2 *Teal v. State, 187 S.W.3d 80, 83 (Tex. App.--Beaumont 2006).*
3 *799 S.W.2d 263 (Tex. Crim. App. 1990).*

I.

On June 8, 2004, Lufkin police received a Crimestopper's tip that a fugitive, Curtis Brown, was staying at appellant's house. When police officers arrived at his house, appellant was sitting on the front porch with his front door open. Officer Burfine told appellant that they were looking for Brown, a fugitive with outstanding parole violator and sex offender warrants. He informed appellant that both of these were [*174] felony warrants. Officer Burfine told appellant that they had information

Page 2

230 S.W.3d 172, *174; 2007 Tex. Crim. App. LEXIS 316, **2

that Brown was in the house. Appellant said that he had seen Brown the night before, but that he had not seen Brown that day. He repeatedly denied that Brown was in the house, and he refused to allow the police to enter his house.

Meanwhile, Officer Smith heard noises from the rear [**3] of the house, so he went to check and discovered Brown attempting to flee. Officer Smith arrested Brown. The officers also found another man who had an outstanding sexual assault warrant when they searched appellant's house.

Appellant was indicted for the offense of hindering apprehension. The indictment alleged that appellant

> . . . then and there intentionally, with intent to hinder the arrest, prosecution, or punishment of Curtis Brown for the offense of Failure to Comply with Registration as a Sex Offender, did harbor or conceal Curtis Brown by stating to peace officers that Curtis Brown was not present at said residence occupied by defendant at a time when Curtis Brown was then and there present . . . .

As soon as the jury was empaneled, appellant objected to the indictment and argued that the district court did not have jurisdiction because the indictment alleged only a misdemeanor, not a felony. [4] The trial court overruled his objection. After hearing the evidence, the jury convicted appellant and sentenced him to two years in prison.

> 4     The misdemeanor offense of hindering apprehension becomes a felony when the person who is being harbored "is under arrest for, charged with, or convicted of a felony . . and the person charged under this section knew that the person they harbored . . . is under arrest for, charged with, or convicted of a felony[.]" *TEX. PENAL CODE ANN. § 38.05(c).*

[**4] On appeal, appellant argued that the evidence was legally and factually insufficient and that the jury instructions were erroneous. [5] The court of appeals, however, *sua sponte* addressed the issue of whether the trial court had subject matter jurisdiction. A two-justice majority of the court of appeals stated that the indictment failed to allege "that Teal had *knowledge* of Brown's felony fugitive status so as to facially charge a third

degree felony under *section 38.05*, and vest the district court with subject-matter jurisdiction." [6] Because the charging instrument did not charge an offense that fell within the district court's jurisdiction, the court of appeals concluded that the district court should have transferred the indictment to a county court with misdemeanor jurisdiction. [7] Justice Gaultney dissented and stated that the indictment did vest the district court with jurisdiction. [8] Relying on the Texas Constitution and this Court's decision in *Studer v. State*, Justice Gaultney concluded that the indictment was valid because "[a]n indictment vests the court with jurisdiction even if it fails to allege an element of the offense." [9]

> 5   *Teal, 187 S.W.3d at 81.*
> [**5]
> 6   *Id. at 82.*
> 7   *Id. at 83.*
> 8   *Id.* (Gaultney, J., dissenting).
> 9   *Id.* (Gaultney, J., dissenting).

## II.

The Texas Constitution requires that, unless waived by the defendant, the State must obtain a grand jury indictment in a felony case. [10] Absent an indictment or valid waiver, a district court does not [*175] have jurisdiction over that case. [11] An indictment also provides a defendant with notice of the offense and allows him to prepare a defense. [12] Further, the "constitutional guarantee is intended to provide the accused an impartial body which can act as a screen between the rights of the accused and the prosecuting power of the State." [13]

> 10   *TEX. CONST. art. I, § 10.*
> 11   *Cook v. State, 902 S.W.2d 471, 475-76 (Tex. Crim. App. 1995)* (collecting cases and stating, "Jurisdiction vests only upon the filing of a valid indictment in the appropriate court.").
> 12   *Id.*
> 13   Brian A. Kilpatrick, Comment, *The Constitutional Right to Indictment by a Grand Jury: Does It Survive after* Studer v. State *and the 1985 Constitutional and Statutory Amendments*?, 44 BAYLOR L. REV. 345, 345 (1992); *see also Riney v. State, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000)* (noting that indictments are used to "protect[] citizens against arbitrary accusations by the government.").

[**6] Before 1985, defects of form and defects of

Page 3

230 S.W.3d 172, *175; 2007 Tex. Crim. App. LEXIS 316, **6

substance in an indictment had very different results. [14] Failure to object to a defect of form waived any error on appeal, but the failure to object to a defect of substance did not waive error on appeal. [15] The reasoning was that an indictment that contained a substantive defect was "void" and therefore insufficient to invoke the jurisdiction of the court. Under this reasoning, a defendant could attack a felony conviction based on a substantively defective indictment on appeal, even though he had not objected at trial. [16] Defendants could "lie behind the log," and either plead guilty or take their chances at trial and, if convicted, then raise a claim of a "void" indictment in a later appeal or application for habeas corpus relief. [17] Numerous decisions from this Court exhaustively debated the fine technical distinctions between defects of form and those of substance, and numerous decisions from this Court reversed convictions years after the fact for **[*176]** defects of substance in the indictment. [18]

14 *See American Plant Food, Corp. v. State, 508 S.W.2d 598, 602 (Tex. Crim. App. 1974)* (stating, "This distinction between an objection to the charge based on substance and one based on form, subtle though it be, is well founded in reason, in justice, and in the logic of the Code of Criminal Procedure.").

**[**7]**

15 *See id. at 603* ("If the charge alleges an offense was committed by the defendant, then it is sufficient in law to support a verdict of guilty if one be rendered thereon. If it does not so allege, then it is utterly insufficient and any conviction based thereon is void. A void conviction may be challenged at any time and thus an exception to the substance of the State's pleading . . . may be raised for the first time on appeal.") (footnote omitted).

16 *See Studer, 799 S.W.2d at 266-68* (noting, "For more than a century cases have come from this Court holding that a defect in the 'substance' of a charging instrument may be raised for the first time on appeal for it renders the charging instrument 'fundamentally defective.'"). Some of these indictment problems involved the failure to allege a specific element of the offense. *See, e.g., Standley v. State, 517 S.W.2d 538, 540-41 (Tex. Crim. App. 1975)*. Some errors concerned the specificity of the indictment. *See, e.g., Chance v. State, 563 S.W.2d 812, 813 (Tex. Crim. App.*

*1978)* (op. on reh'g) (even though indictment alleged that defendant supervised, controlled, and managed prostitution ring, it was fundamentally defective because it did not allege that he "knowingly" did so); *see also* David Weiner, Comment, *Particularity and Precision in Texas Indictments and Informations: What Is Fundamental Defect*, 10 ST. MARY'S L.J. 281, 282-84 (1978-1979).

**[**8]**

17 Robert R. Barton, *Since 1985, Can an Indictment or Information Be "Fundamentally" Defective for Failing to Charge an Offense?, 25 ST. MARY'S L.J. 217, 222-224 (1993)*. "Being void, a judgment of conviction entered on an indictment or information containing such a defect of substance could be attacked by the defendant at any time, either directly for the first time on appeal or collaterally by postconviction application for writ of habeas corpus." *Id. at 223*.

18 *Studer* cited several cases that demonstrate the number and variety of convictions reversed for indictment errors. See, e.g., *Carpenter v. State, 551 S.W.2d 724, 725-26 (Tex. Crim. App. 1977)* ("Hence, a false imprisonment indictment which alleges mere restraint does not invoke the jurisdiction of the district court, unless the indictment also sets out the added penalty allegations of *Section 20.02(c)*. . . . Clearly, the indictment in this case does not allege that the appellant recklessly exposed the complainant to a substantial risk of serious bodily injury; felony false imprisonment has not been alleged."); *Ex parte Winton, 549 S.W.2d 751 (Tex. Crim. App. 1977)* (indictment defective for failure to allege a culpable mental state). *See generally Pospishel v. State, 95 Tex. Crim. 625, 255 S.W. 738 (1923)* (op. on reh'g); *Williams v. State, 12 Tex. Ct. App. 395 (1882)*; *White v. State, 1 Tex. Ct. App. 211 (1876). See also Fisher v. State, 887 S.W.2d 49, 55 n.8 (Tex. Crim. App. 1994)* (detailing the history of indictment dismissals pre-*Studer*: "Some other defects of substance, in addition to a missing element, that were recognized prior to the 1985 amendments included failure to allege date of offense, culpable mental state, victim's name, enhancement allegations, amount of a controlled substance, and manner and means of committing the offense where it is the manner and means that renders the act criminal.") (collecting cases).

Page 4

230 S.W.3d 172, *176; 2007 Tex. Crim. App. LEXIS 316, **8

[**9] In 1985, the citizens of Texas and their legislature resoundingly rejected this hypertechnical case law both by Constitutional amendment and by statute. The voters amended the Texas Constitution to include the definition of an indictment. An indictment, as now defined by the Texas Constitution, is

a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments, and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information invests the court with jurisdiction of the cause. [19]

19  *TEX. CONST. art. V § 12(b)*; *see also TEX. CODE CRIM. PROC. art. 21.01* (defining indictment as "the written statement of grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense"); *see generally Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990)* (detailing the legislative history of the constitutional amendment and changes to the Code of Criminal Procedure).

[**10] As part of the same reform package, the legislature amended several provisions of the Code of Criminal Procedure to ensure that indictment defects could be objected to and repaired pretrial, but that these defects would not invalidate an otherwise valid conviction if not raised before trial. For example, the implementing legislation added *section (b) to article 1.14*:

If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the

objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code. [20]

Additionally, the legislature amended *article 28.01* to ensure that the State had ample opportunity to repair indictment defects and that the defendant received the requisite notice of indictment changes, as well as an opportunity to respond to them:

[*177] (a) After notice [**11] to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced. [21]

The legislature's purpose in amending the constitution and the statutes was to change the focus from "whether a defect is fundamental [*i.e.* a defect of substance or not]" to "whether the defendant brought the defect to the court's attention." [22] And the legislature intended the constitutional provision and statutes to work together. That is, indictments charging a person with committing [**12] an offense, once presented, invoke the jurisdiction of the trial court and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance. [23] The 1985 statutes clearly mandate that defendants must object to errors in the form or

Page 5

230 S.W.3d 172, *177; 2007 Tex. Crim. App. LEXIS 316, **12

substance of an indictment "before the date on which the trial on the merits commences[.]" [24] Thus, Texas law now requires the defendant to object to any error in the indictment before the day of trial and certainly before the jury is empaneled.

20 *TEX. CODE CRIM. PROC. art. 1.14(b).*

21 *TEX. CODE CRIM. PROC. art. 28.10.*

22 Brian A. Kilpatrick, *The Constitutional Right to Indictment by a Grand Jury: Does It Survive after* Studer v. State *and the 1985 Constitutional and Statutory Amendments*, 44 BAYLOR L. REV. 345, 350 (1992).

23 *Studer, 799 S.W.2d at 268.*

24 *TEX. CODE CRIM. PROC. art. 1.14(b).* Also, *art. 1.14(b)* and *art. 28.10* are read together for the proposition that "[i]f the defendant fails to raise a substance defect prior to trial, he or she waives that right; if the defect is raised, the State can then amend the indictment to include the missing element." Kilpatrick, *supra*, note 22 at 355.

[**13] This Court's first interpretation of the indictment reform legislation did not come "clad, so to speak, in sheep's clothing." Instead this "wolf came as a wolf." [25] The wolf was *Studer*, and this Court was clear: raise indictment defects before the date of trial. In *Studer*, the defendant was charged by information with indecent exposure. [26] He pled nolo contendere, and, on direct appeal, despite having failed to object in the trial court, claimed that the information was fatally defective. [27] The defendant complained "that the information [*178] was defective for failing to 'allege, with reasonable certainty, the act or acts relied upon to constitute recklessness[.]'" [28] He argued that the trial court therefore never obtained jurisdiction. [29] In *Studer,* we addressed the legislative history and purpose of the constitutional amendment [30] and rejected the defendant's "fatally flawed indictment" claim:

> Clearly both the House and Senate believed that all defects in a charging instrument were waived if not raised by a defendant before trial. Clearly the perceived evil that they were correcting was the raising of indictment defects for the first time after a trial and [**14] conviction and the subsequent reversal of that conviction because of that defect. [31]

We also concluded that the 1985 constitutional amendment made the specifics of an indictment or information statutory requirements, not constitutional requirements. [32] Thus, all substantive defects in indictments are waiveable under the statutes and these defects do not render the indictment "void." [33]

25 *Morrison v. Olson, 487 U.S. 654, 699, 108 S. Ct. 2597, 101 L. Ed. 2d 569 (1988)* (Scalia, J. dissenting). *See also Fisher v. State, 887 S.W.2d 49, 55 (Tex. Crim. App. 1994)* ("Expressing frustration over the ability of a defendant to raise substantive defects in the indictment for the first time on appeal, the 69th Legislature submitted for approval to the voters an amendment to *article V, § 12 of the Texas Constitution* which would give the legislature authority to regulate practices and procedures relating to the use of indictments and informations. The proposed amendment was approved by the voters, and the legislature accordingly passed amendments to the Texas Code of Criminal Procedure, all effective December 1, 1985.") (footnote omitted).

[**15]

26 *Studer, 799 S.W.2d at 264*.

27 *Id. at 264-65*. The information alleged that the defendant

> did unlawfully then and there intentionally and knowingly expose his genitals to R.E. Bishop, hereinafter called complainant, with intent to arouse and gratify the sexual desire of the said [defendant], and the [defendant] acted recklessly and in conscious disregard of whether another person was present who would be offended and alarmed by such act .
> . . .

*Id. at 265.*

28 *Id.*

29 *Id.*

30 *See id. at 267-71* (setting out the history of appellate reversals for indictment flaws and citing comments by Senator Ike Harris: "What this basically does . . . it's a bill that deals with that problem that has plagued the criminal justice

Page 6

230 S.W.3d 172, *178; 2007 Tex. Crim. App. LEXIS 316, **15

system and the Court of Criminal Appeals over a number of years, that involves a defective indictment which a defense goes to trial upon, makes no objection, then raises on appeal for the first time, then the court reverses, based upon that defect in the indictment and the lower court has never had the opportunity to rule upon that question. There are a number of cases that have been reversed on those technicalities."). *See also id. at 274-284* (appendices containing the House Legislative report and the Texas Legislative Council report on the proposed constitutional amendment).

[**16]

31  *Id. at 270-71.*

32  *Id. at 272.*

33  *Id.* (stating, "In sum, the wording of *Article V, § 12(b)*, that provides 'an indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense; an information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense,' abolishes the former prerequisites to which the referred to charging instruments must adhere, lest they fail as charging instruments, at least from the standpoint of *Art. V, Section 12.*"). We noted that the omission of an element of the offense was "still a defect of substance in an indictment, [so] it naturally follows that the indictment is still an indictment despite the omission of that element." *Id. at 268.*

In the five years after *Studer*, this Court addressed indictment defects and *Studer* related issues approximately thirty times. Those cases consistently reiterated the same proposition: "In *Studer . . .* we interpreted the amendments [**17] to *art. V, § 12(b)* and *art. 1.14* and held a defect in a charging instrument is waived unless raised prior to trial." [34]

34  *Ex parte Matthews, 873 S.W.2d 40, 41 (Tex. Crim. App. 1994). See, e.g., Fisher v. State, 887 S.W.2d 49, 60-61 (Tex. Crim. App. 1994)* (addressing whether an indictment is facially incomplete and analyzing the sufficiency of the evidence in relation to that indictment); *State v. Yount, 853 S.W.2d 6, 8-9 (Tex. Crim. App. 1993)* (considering whether an indictment is sufficient if it indicates an offense date that is barred by the statute of limitations, and holding that "jurisdiction was conferred upon the trial court by the presentment of the charging instrument, even if the charging instrument was flawed. . . . If the defendant failed to direct the trial court's attention to the defects in the charging instrument before trial, the defendant would be precluded from raising those defects 'on appeal or in any postconviction proceeding.' Therefore, an indictment which charges the commission of an offense barred by limitations still confers jurisdiction upon the trial court, such that the defendant must bring the defect to the attention of the trial court in order to preserve any error."); *Ex parte Morris, 800 S.W.2d 225, 227 (Tex. Crim. App. 1990)* ("In the case at bar, the indictment in question clearly fails to allege a constituent element of the offense of forgery, namely, that the writing purported to be the act of another 'who did not authorize the act.' . . . However, the charging instrument was issued by the grand jury, filed with the district clerk and purports to charge applicant with the primary offense of forgery. Pursuant to the rationale in *Studer* and *Gibson*, this instrument is an indictment as contemplated by *Art. V, § 12(b). . . . Article 1.14(b)* prohibits applicant from raising the defect in the indictment for the first time in a postconviction proceeding."); *Rodriguez v. State, 799 S.W.2d 301, 303 (Tex. Crim. App. 1990)* (in evading arrest information, "[t]here [was] no allegation that appellant knew the complainant was 'a peace officer attempting to arrest him.'. . . Thus, the information failed to allege one element of the offense of evading arrest. The failure of a charging instrument to allege an element of an offense is a substance defect. . . . Clearly then, the information in this cause suffered from a defect of substance by failing to allege appellant knew the complainant was a peace officer who was attempting to arrest him. But the information in this cause was, 'on its face,' an information. Thus, the information was not 'fundamentally defective', and it did invest the trial court with jurisdiction. We find, therefore, that appellant has waived this defect under *Art. 1.14(b)* because of his failure to object to this defect 'before the date on which the trial on the merits commenced.'"); *Ex parte Gibson, 800 S.W.2d 548 (Tex. Crim. App. 1990)* (holding that defects, errors, and irregularities of

Page 7

230 S.W.3d 172, *178; 2007 Tex. Crim. App. LEXIS 316, **17

either form or substance in an indictment or information must be raised by pretrial objection or are waived in postconviction proceedings; indictment that failed to allege year of alleged offense contained a substantive defect, but because defendant failed to object to this defect pretrial, he could not raise it in a postconviction proceeding).

[**18] The "fatally flawed indictment" issue [*179] was raised again in *Cook v. State*, [35] in which the charging instrument did not charge "a person." No person was alleged to have committed the offense. This was too much. We noted in *Cook* that the 1985 constitutional amendment defined an indictment: "To constitute an indictment, the charging instrument must charge: (1) a person, and (2) the commission of an offense. It is clear, however, that if the charging instrument fails to charge a person, then it is not an indictment as required by *art. V, § 12(b)* and *art. I, § 10*." [36] It was this premise, that the Constitution expressly required that *a person* be charged with an offense, that led us to conclude that "[i]f the charging instrument fails to charge 'a person' then it is not an indictment and does not vest the trial court with jurisdiction. Moreover, because a valid indictment is essential for jurisdiction, it is not subject to waiver." [37] Accordingly, *Cook* held that, because the charging instrument failed to charge a person, it did not meet one of the two requirements of an indictment, and therefore, it was not an indictment at all and did not vest any trial court with [**19] jurisdiction. [38]

35 *902 S.W.2d 471 (Tex. Crim. App. 1995).*
36 *Id. at 477.*
37 *Id. at 480* (footnote omitted).
38 *Id.*

*Studer* and *Cook* are "book-end" cases. *Studer* held that the defendant must object to any indictment defects before the date of trial or forfeit any complaint about its sufficiency thereafter. *Cook* held that the Texas Constitution requires that an indictment allege that (1) a person, (2) committed an offense. Without both of those elements the charging instrument is not an indictment and does not vest the district court with jurisdiction.

[*180] The proper test to determine if a charging instrument alleges "an offense" is whether the allegations in it are clear enough that one can identify the offense alleged. If they are, then the indictment is sufficient to confer subject matter jurisdiction. [39] Stated another way:

Can the trial court (and appellate courts who give deference to the trial court's assessment) and the [**20] defendant identify what penal code provision is alleged and is that penal code provision one that vests jurisdiction in the trial court? With this background, we turn to the present case.

39 *Cook, 902 S.W.2d at 481* (Maloney, J., concurring).

III.

Appellant alleges that the present indictment was missing one of the elements that raises the offense of Hindering Apprehension from a misdemeanor to a felony:

In order for the State to prosecute Appellant for the third degree felony offense of hindering apprehension in district court the State had to additionally allege and prove that the person, in the present case Curtis Brown, who was allegedly being harbored or assisted was facing arrest, charge or had been convicted of a felony and that Appellant had knowledge that the person (Curtis Brown) who he was allegedly harboring or assisting had been convicted of a felony. [40]

40 Appellant's Brief at 7.

[**21] Appellant further argues that "[e]ven though the indictment in the instant case did state that Curtis Brown did have felony fugitive status for failure to comply with Registration as a Sex Offender it failed to additionally allege that Appellant had knowledge of Curtis Brown's *felony* fugitive status." [41] Thus, appellant contends that the indictment was defective because it did not explicitly state that appellant knew that Curtis Brown was a felon. This defect, he contends, was jurisdictional and thus it "may be raised at any time [because] . . . . [j]urisdiction is a systemic requirement that cannot be waived or conferred by consent and which may be considered at any time." [42]

41 *Id.*
42 *Id. at 9.*

Page 8

230 S.W.3d 172, *180; 2007 Tex. Crim. App. LEXIS 316, **21

The State responds that it did allege that appellant was harboring a fugitive, and "it is clear that the State intended to prosecute the defendant for the felony offense of Hindering Apprehension, by including the language 'with intent to hinder the arrest, prosecution, or punishment of Curtis [**22] Brown for the offense of Failure to Comply with Registration as a Sex Offender." 43 This offense is itself a felony, which, the State argues, clearly indicates its intent to prosecute appellant for the felony offense of Hindering Apprehension. 44

43 State's Brief at 14.

44 *Id. at 14-15*. Ample evidence at trial showed that appellant had knowledge of Brown's felony status: Officer Burfine testified that he told Appellant that (1) the police were looking for Curtis Brown, (2) Curtis Brown was a fugitive, (3) Curtis Brown had an outstanding parole warrant and a sex offender violation warrant, and (4) both were felony warrants.

After *Studer* and *Cook*, courts must now look to the indictment as a whole, not to its specific formal requisites. Constitutionally, district courts have jurisdiction over a felony when an indictment charging a person with an offense is signed by the grand jury foreman and presented to the [*181] district court. In *Duron v. State*, 45 this Court held that "a written instrument [**23] is an indictment or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective." 46 We stated that

> all that *Studer* and *Cook* require to satisfy the mandate of *Art. V, § 12* [is] that an indictment charge "the commission of an offense." This is true whether an indictment fails to allege one element of an offense or whether it contains additional information that may indicate innocence. 47

45 *956 S.W.2d 547, 551 (Tex. Crim. App. 1997)*.

46 *Id. at 550-51*; *see also Ramirez v. State, 105 S.W.3d 628, 629-30 (Tex. Crim. App. 2003)* ("The appellant filed a motion to dismiss the complaint based on the fact that her name was incorrectly set out. . . . In this case, the appellant did not object to the information. If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity, and he may not raise the objection on appeal or in any other postconviction proceeding.").

[**24]

47 *Id. at 551* (concluding that "there is no doubt that the State intended to accuse appellant of indecency with a child," thus indictment sufficient).

Implicit within both *Studer* and *Cook* is that "the offense" charged must be one for which the trial court has subject-matter jurisdiction. Although the "indictment" provision of the constitution explicitly speaks only of the two requirements of "a person" and "an offense," the constitution also sets out the subject-matter jurisdiction of Texas courts. 48 An indictment must also satisfy the constitutional requirement of subject-matter jurisdiction over "an offense."

48 *See TEX. CONST. Art. V, § 1*; *see Davis v. State, 956 S.W.2d 555, 557-59 (Tex. Crim. App. 1997)* (discussing tendency to confuse jurisdiction of the court with authority of the judge). *See TEX. CONST. Art. V, § 8* (setting out jurisdiction of district courts); *TEX. CODE CRIM. PROC. art. 4.05* ("District courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony, of all misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under *Article 4.17* of this code.").

[**25] Thus, the complete test for the constitutional sufficiency of a particular charging instrument goes slightly further than that expressly set out in *Studer* and *Cook*: Can the district court and the defendant determine, from the face of the indictment, that the indictment intends to charge a felony or other offense for which a district court has jurisdiction? Suppose, for example, that a named person is indicted for the offense of speeding. The constitutional requirements of an indictment are met-- a named person and an offense-- but district courts do not have subject-matter jurisdiction over speeding offenses, regardless of how "perfect" the wording of the charging instrument might be. Thus, the indictment,

Page 9

230 S.W.3d 172, *181; 2007 Tex. Crim. App. LEXIS 316, **25

despite whatever substantive defects it contains, must be capable of being construed as intending to charge a felony (or a misdemeanor for which the district court has jurisdiction).

The element that was missing in this indictment was whether appellant knew that Brown was a felony fugitive. This is one of the two *mens rea* requirements for Hindering Apprehension. [49] We have previously **[*182]** upheld the validity of the indictment in several cases, including *Studer* itself, **[**26]** in which the *mens rea* allegation was missing or defective. [50] In this case, the indictment, as a whole, was sufficient to vest the district court with subject-matter jurisdiction and give the defendant notice that the State intended to prosecute him for a felony offense. It alleged whom appellant was hiding (Brown); it stated the offense Brown was hiding from (a felony); it alleged that appellant told police that Brown was not present. Because Brown was alleged to be a fugitive "for the offense of Failure to Comply with Registration as a Sex Offender" which is a felony, the district court could conclude, from the face of the charging instrument, that the State intended to charge a felony hindering apprehension offense. It certainly was a defective indictment because it omitted one of the two elements that raise hindering apprehension from a misdemeanor to a felony, but it was nonetheless sufficient to vest jurisdiction--it charged "an offense" and one could fairly conclude from the face of the charging instrument that the State intended to charge a felony offense. If appellant was confused about whether the State did or intended to charge him with a felony, he could have and should **[**27]** have objected to the defective indictment before the date of trial. [51]

49   Under *section 38.05*, the State must prove that the defendant (1) intended to hinder the arrest of the fugitive, and (2) knew the person was a fugitive. To raise to offense from a misdemeanor to a felony, the State must prove that the defendant (1) intended to hinder the arrest of a *felony* fugitive, and (2) knew the person was a *felony* fugitive. *TEX. PENAL CODE § 38.05(c)*.

50   *See, e.g., State v. Oliver, 808 S.W.2d 492, 493-94 (Tex. Crim. App. 1991)* (indictment that failed to allege culpable mental state in possession of controlled substance case is still an "indictment" conferring jurisdiction); *Rodriguez v. State, 799 S.W.2d 301, 302-03 (Tex. Crim. App. 1990)* (indictment did not allege that appellant

intentionally attempted to evade arrest; defect waived because defendant did not object before trial); *Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990)* (indictment failed to set out the acts constituting the *mens rea* element of recklessness).

**[**28]**

51   Appellant was indicted on August 12, 2004, and trial did not occur until March 23, 2005, over seven months later. Appellant said nothing about the sufficiency of the indictment during those seven months. Because this indictment was presented to a district court with felony jurisdiction, it is logical to assume that appellant prepared for a *felony* trial in district court, not a misdemeanor trial in county court.

Appellant did not object to the substance of the indictment until right *after* the jury had been empaneled. His failure to make a timely objection before the date of trial was exactly the type of action that the citizens of Texas summarily rejected in voting for the 1985 constitutional amendment and the Texas Legislature prohibited in enacting the 1985 enabling statutes. [52] Appellant forfeited any right to object to indictment defects thereafter, and the court of appeals should not have *sua sponte* reversed appellant's conviction on this basis. Therefore, we vacate the judgment of the court of appeals and remand the case to that court to address appellant's original complaints **[**29]** of legal and factual sufficiency and jury charge error.

52   *See* Brian A. Kilpatrick, *The Constitutional Right to Indictment by a Grand Jury: Does It Survive after* Studer v. State *and the 1985 Constitutional and Statutory Amendments*, 44 BAYLOR L. REV. 345, 348 (1992) (stating that "[t]he existence of the fundamental defect doctrine was problematic because it encouraged "sandbagging" techniques by defendants. In other words, when the defendant's counsel discovered a fundamental defect in the charging instrument, withholding such information was usually in the defendant's best interest. Only upon losing the trial would the defect be brought to the appellate court's attention.").

Delivered: March 7, 2007

Publish

Page 10

230 S.W.3d 172, *; 2007 Tex. Crim. App. LEXIS 316, **29

**CONCUR BY:** KELLER

**CONCUR**

[*183] *Article 1.14* provides that a defendant forfeits appellate review if he "does not object to a defect, error, or irregularity of form or substance in an indictment . . . before the date on which the trial on the merits commences." [1] The statute essentially [**30] dictates a three-step process for reviewing appellate complaints relating to indictments: (1) Is there an indictment? (2) If so, is the indictment defective, erroneous, or irregular in some respect? (3) If so, did the defendant lodge a timely objection to the defect, error, or irregularity? The Court treats the issue before us as a step (1) inquiry, but I believe that the pivotal issue is actually a step (2) inquiry.

> 1 *TEX. CODE CRIM. PROC., Art. 1.14(b).*

**1. Is there an indictment?**

According to the Texas Constitution, an indictment is "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." [2] In *Cook v. State*, we held that this language literally required a "person" to be named as the perpetrator in the written instrument in order for that instrument to qualify as an indictment. [3] In *Duron v. State*, we addressed the requirement that an indictment charge an "offense." [4] We held that an "offense" is charged [**31] if the written instrument "accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute." [5] If the written instrument purporting to be an indictment does not in fact qualify as an "indictment," then the defendant is exempted from the usual requirement that he object to defects in the indictment before the date of trial. [6]

> 2 *TEX. CONST., Art. V, § 12(b).*
> 3 *902 S.W.2d 471, 480 (Tex. Crim. App. 1995).*
> 4 *956 S.W.2d 547, 551 (Tex. Crim. App. 1997).*
> 5 *Id.*
> 6 *Id. at 550* (citing *Cook, 902 S.W.2d at 478*).

*Duron*'s standard for determining when an "offense" is alleged can be understood through the following example. Suppose the purported indictment alleged only the name of the perpetrator and a culpable mental state: *e.g.* "John Smith intentionally." Any number of criminal offenses could contain those allegations. Under *Duron*, this simply would not [**32] be enough information to allege an offense.

But even under appellant's reasoning, the indictment in the present case alleges an offense: it at *least* alleges the *misdemeanor* offense of hindering apprehension. [7] That is an offense that is insufficient to invoke the district court's jurisdiction, but it is an offense nonetheless. The State, of course, contends that the indictment alleges more than that, charging the felony offense of hindering apprehension. But the fact that an offense of some sort is alleged is not in dispute. Therefore, under the Texas constitution, the written instrument in this case is, indisputably, an indictment.

> 7 *See TEX. PEN. CODE § 38.05(a), (c).*

**2. Is the indictment defective?**

The real question in this case is what kind of offense is being charged in the indictment? That question brings us to step (2) of the inquiry, whether the indictment is defective, erroneous, or irregular. Even when an indictment is error-free, a defendant can raise [**33] a claim that he was convicted of an offense that was not authorized by the facially complete indictment. [8] [*184] Under those circumstances, the defendant can argue persuasively that the indictment was not defective, and thus, there was nothing to object to prior to trial. In that situation, there is no *indictment* error; rather, there is error in charging the jury or in rendering judgment on an offense that the indictment does not authorize. If, for example, an indictment contains allegations necessary to establish the offense of robbery but contains no additional allegations that would suggest the greater offense of aggravated robbery, [9] then there may be no error in the indictment but error would occur at trial if the prosecution were permitted to pursue an aggravated robbery conviction. A defendant must preserve such a complaint by objecting at trial. [10]

> 8 *Sutton v. State, 899 S.W.2d 682, 686 (Tex. Crim. App. 1995).*
> 9 *Compare TEX. PEN. CODE § 29.02* with *§ 29.03.*
> 10 If the error is considered to be in the jury charge, then even without an objection, the error would be subject to the *Almanza* "egregious harm" standard.

Page 11

230 S.W.3d 172, *184; 2007 Tex. Crim. App. LEXIS 316, **33

[**34] In appellant's case, however, we are not confronted with a facially complete indictment alleging the misdemeanor offense of hindering apprehension. The misdemeanor offense of hindering apprehension does not require proof that the fugitive committed a felony offense, but the felony offense of hindering apprehension does. [11] The indictment in this case contains an additional allegation that suggests the greater offense of felony hindering apprehension: that the harbored fugitive was wanted for the offense of "failure to comply with registration as a sex offender," which is a felony offense. Consequently, we have an incomplete indictment alleging the felony offense of hindering apprehension, so the indictment was defective, and appellant was required by statute to lodge a pretrial objection to preserve error on appeal. [12]

11 *See § 38.05(a), (c).*

12 *See Studer v. State, 799 S.W.2d 263 (Tex. Crim. App. 1990).* I also believe that when the lesser and greater offenses straddle the misdemeanor-felony divide, an indictment could

be incomplete if it appears to allege only a misdemeanor but was filed in district court, and the misdemeanor is not one of those few that are sufficient to invoke the district court's jurisdiction. Under those circumstances, the State's filing of the indictment in district court evidences its intent to prosecute a felony offense, and a felony offense exists to which the allegations in the indictment might reasonably pertain. Of course, where a misdemeanor is not related to any felony offense for which a district court would have jurisdiction, such as in the "speeding" example given by the Court, then an indictment alleging such an offense would not be capable of conferring such jurisdiction.

[**35] I concur in the Court's judgment.

Date filed: March 7, 2007

Publish